IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LLOYD BELL, individually and     )
as Executor of the Estate of     )
Betty Whitley Bell, Deceased,    )
                                 )
            Plaintiff,            )
                                 )
     v.                          )          1:17CV111
                                 )
AMERICAN INTERNATIONAL           )
INDUSTRIES, et al.,              )
                                 )
            Defendants.          )


**<u>MEMORANDUM OPINION AND ORDER</u>**

**OSTEEN, JR., District Judge**

Presently before the court is Defendant American
International Industries' ("Defendant AII's") Motion to Dismiss
Plaintiff's Claims for Willful and Wanton Conduct, Malice,
Conspiracy, and Punitive Damages. (Doc. 45.) Defendant AII filed
a brief in support of its motion, (Doc. 46), Plaintiff Lloyd
Bell ("Bell") filed a Response in Opposition, (Doc. 52), and
Defendant AII filed a reply, (Doc. 53). This matter is ripe for
resolution, and for the reasons stated herein, this court will
grant in part and deny in part Defendant AII's Motion to
Dismiss. Additionally, this court will deny Bell's request to
amend his Complaint.

# I.  PARTIES AND FACTUAL BACKGROUND

At this stage in the case, the facts are presented in the light most favorable to Plaintiff. See Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). Plaintiff Lloyd Bell is the executor of the estate of his wife, Betty Whitley Bell ("decedent"). (Am. Civil Action Compl. ("Am. Compl.") (Doc. 44) at 1.) Decedent was exposed to asbestos by way of her personal use of talcum power products, her beauty school education, and her employment as a hairdresser. (Id. ¶ 9.) Decedent "was diagnosed with mesothelioma on or about June 18, 2015." (Id. ¶ 8.) On June 3, 2017, decedent died. (Mot. by Executor to be Substituted for Deceased Pl., Ex. A, Death Certificate (Doc. 39-2) at 2.) The proximate cause of decedent's death was mesothelioma. (Am. Compl. (Doc. 44) ¶ 73.)

Defendants manufactured, designed, distributed, sold, and supplied asbestos-containing products. (Id. ¶ 11.) Bell alleges that:

> Decedent's illness, disability, and death were a direct and proximate result of the negligence, recklessness and willfulness of the defendants, jointly and severally . . . defendants knew, or in the exercise of ordinary care, should have known, that the asbestos, asbestos-containing materials and/or asbestos containing equipment were deleterious, poisonous and highly harmful to the decedent's body, lungs, respiratory system, skin and health . . . .

(Id. ¶ 73.)

Bell alleges six causes of action against Defendants in the operative Complaint: (1) negligence; (2) product liability; (3) breach of implied warranty; (4) willful and wanton conduct; (5) failure to warn; and (6) wrongful death. (Id. ¶¶ 16-59, 70-78.) Bell seeks recovery for (1) loss of consortium and (2) compensatory and punitive damages. (Id. ¶¶ 65-69.)

## II.   **LEGAL STANDARD**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Iqbal, 556 U.S. at 678 (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). To be facially plausible, a claim must "plead[] factual content that allows the court to draw the reasonable inference that the defendant is liable" and must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." Id. (citing Twombly, 550 U.S. at 556). When ruling on a motion to dismiss, a court must accept the complaint's factual allegations as true. Id. Further, "the complaint, including all reasonable inferences therefrom, [is] liberally construed in the plaintiff's favor." Estate of Williams-Moore v. All. One Receivables Mgmt., Inc., 335 F. Supp. 2d 636, 646 (M.D.N.C. 2004) (citation omitted).

Nevertheless, sufficient factual allegations must "raise a right to relief above the speculative level" so as to "nudge[]

the[] claims across the line from conceivable to plausible[.]"
Twombly, 550 U.S. at 555, 570; see Iqbal, 556 U.S. at 680. A
court cannot "ignore a clear failure in the pleadings to allege
any facts which set forth a claim." Estate of Williams-Moore,
335 F. Supp. 2d at 646. Consequently, even given the deferential
standard allocated to pleadings at the motion to dismiss stage,
a court will not accept mere legal conclusions as true and
"[t]hreadbare recitals of the elements of a cause of action,
supported by mere conclusory statements, [will] not suffice."
Iqbal, 556 U.S. at 678 (citation omitted).

## III. **ANALYSIS**

Defendant AII makes two primary arguments within its Motion
to Dismiss. (Mem. in Supp. of Suppl. Mot. in Supp. of American
International Industries' 12(b)(6) Mot. to Dismiss Pl.'s Claims
for Willful and Wanton Conduct, Malice, Conspiracy and Punitive
Damages ("Def.'s Mem.") (Doc. 46) at 13.) First, Defendant AII
argues that Bell has failed to state a claim for punitive
damages. (Id. at 6-8.) Second, Defendant AII argues that Bell
has failed to state a claim for civil conspiracy. (Id. at 8-10.)

In response, Bell contends that Defendant AII's Motion to
Dismiss is untimely as Bell's original complaint was filed in
late 2015 in New Jersey State Court and Defendant did not raise
12(b)(6) arguments at that time. (Pl.'s Mem. in Opp'n to
American International Industries' 12(b)(6) Suppl. Mot. to

Dismiss Pl.'s Claims for Willful and Wanton Conduct, Malice, Conspiracy, and Punitive Damages ("Pl.'s Mem.") (Doc. 52) at 3.) This court will take up each issue in turn.

### A. Jurisdiction

While jurisdiction has not been challenged in the existing motions, the existence of jurisdiction is a "question the court is bound to ask and answer for itself[.]" Mansfield, C. & L.M. Ry. Co. v. Swan, 111 U.S. 379, 382 (1884). This court has jurisdiction in the present case pursuant to 28 U.S.C. § 1332, as there is both complete diversity and an amount in controversy in excess of $75,000.

### B. Timeliness of Motion to Dismiss

Bell contends that because Defendant AII did not raise 12(b)(6) arguments during prior litigation before the New Jersey state court, and because the present action should be considered an amended complaint of the previously filed state action, the present 12(b)(6) motion should be disregarded as untimely. (Pl.'s Mem. (Doc. 52) at 4.) In support of this argument, Plaintiff cites to two non-binding district court cases. (Id. at 3 (citing Jaeger v. Howmedica Osteonics Corp, Case No. 15-cv-00164-HSG, 2016 WL 520985, at *11 (N.D. Cal. Feb. 10, 2016); Northstar Fin. Advisors Inc. v. Schwab Invs., 135 F. Supp. 3d 1059 (N.D. Cal. 2015)).) Both of these cases are factually distinct. First, Jaeger found a Rule 12(b)(6) motion to be

untimely where the defendant answered the original complaint in a different federal district court prior to the case being transferred. 2016 WL 520985, at *3, *11. Second, <u>Northstar</u> found a defendant's preclusion argument untimely where, in a series of motions to dismiss before the same federal district court, the defendant did not re-assert this argument and then later sought to revive it. 135 F. Supp. 3d at 1070.

In the present case, Bell's earlier complaint filed in New Jersey state court was dismissed with prejudice.[1] (<u>See</u> Pls.' Mem. in Opp'n to American International Industries' 12(b)(6) Mot. to Dismiss Pls.' Claims for Willful and Wanton Conduct, Malice, Conspiracy, and Punitive Damages ("Pls.' First Mem."), Ex. G, Order Granting American International Industries' Mot. to Dismiss (Doc. 33-7) at 2.) This dismissal was "based on forum non conveniens and [was] conditioned upon accepting in personam

---

[1] Neither party has addressed whether res judicata might apply in this case. "[A]s a general matter, a district court should not sua sponte consider an affirmative defense that the defendant has the burden of raising. Res judicata is such a defense." <u>Clodfelter v. Republic of Sudan</u>, 720 F.3d 199, 208-09 (4th Cir. 2013) (citations omitted).

jurisdiction in the alternate forum."[2] (Id.) Bell then filed a

Complaint in this court, (Complaint ("Compl.") (Doc. 1)), which

Defendant AII timely moved to dismiss, (Mot. to Dismiss (Doc.

29)). Bell then filed an Amended Complaint, (Am. Compl. (Doc.

44)), to which Defendant AII likewise moved to dismiss, (Supp'l

Mot. to Dismiss (Doc. 45)). The operative Complaint before this

court stands as a separate case from the prior action in New

Jersey state court, not merely an amendment of the complaint

previously before the state court. This case was neither removed

from state court nor transferred from another federal district

court. Instead, the New Jersey action was dismissed with

prejudice, meaning the prior action ceased and is properly

considered a separate proceeding from the case presently before

this court. See Vasquez v. YII Shipping Co., 692 F.3d 1192,

1199-1200 (11th Cir. 2012) (considering a state court dismissal

with prejudice on forum non conveniens grounds and holding that

the dismissal did not bar the plaintiff from bringing the same

---

[2] Unlike the federal doctrine of forum non conveniens, which
only applies in cases where the alternative forum is abroad,
Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp., 549 U.S.
422, 430 (2007), under New Jersey law, forum non conveniens can
apply where the alternative forum is domestic, Civic S. Factors
Corp. v. Bonat, 65 N.J. 329, 333, 322 A.2d 436, 438 (1974). The
doctrine "comes into play 'where a weighing of all of the many
relevant factors, of which residence is but part, decisively
establishes that there is available another forum where trial
will best serve the convenience of the parties and the ends of
justice.'" Bonat, 65 N.J. at 333, 322 A.2d at 438 (citation
omitted).

claims in federal court and considering the state and federal
court actions as separate proceedings). Bell's filing of his
Complaint in this court marked the beginning of this case.
Defendant AII filed the present Motion to Dismiss, (Supp'l Mot.
to Dismiss (Doc. 45)), as to the currently operative Complaint,
(Am. Compl. (Doc. 44)), and has not filed a responsive pleading.
The Rule 12(b)(6) defenses raised in Defendant AII's motion are
timely and have not been waived. <u>See generally</u> Fed. R. Civ. P.
12(b), (h)(2). This court will proceed to consider the motion on
its merits.

> ### C. <u>Punitive Damages</u>

Bell seeks punitive damages from all Defendants in this
case. (Am. Compl. (Doc. 44) at 1, 19.) Defendant AII contends
that Bell has failed to state a claim for punitive damages under
North Carolina law. (Def.'s Mem. (Doc. 46) at 2.) "In North
Carolina, punitive damages are awarded 'to punish a defendant
for egregiously wrongful acts and to deter the defendant and
others from committing similar wrongful acts.'" <u>Folmar v.
Harris</u>, 650 F. App'x 818, 823-24 (4th Cir. 2016) (citing N.C.
Gen. Stat. § 1D-1). In order for punitive damages to be awarded
under North Carolina law, the defendant must be found liable for
compensatory damages and an aggravating factor of fraud, malice,
or willful or wanton conduct must be present and related to the
relevant injury. N.C. Gen. Stat. § 1D-15(a). When punitive

damages are sought from corporate defendants, "the officers,
directors, or managers of the corporation" must have
"participated in or condoned the conduct constituting the
aggravating factor giving rise to punitive damages." <u>Id.</u>
§ 1D-15(c).

With respect to the aggravating factors necessary to
support punitive damages, Bell claims entitlement to punitive
damages based upon Defendant's alleged willful or wanton
conduct.[3] (<u>See</u> Pl.'s Mem. (Doc. 52) at 7.) The relevant statutory
scheme defines "[w]illful or wanton conduct" as "the conscious
and intentional disregard of and indifference to the rights and
safety of others, which the defendant knows or should know is
reasonably likely to result in injury, damage, or other harm."
N.C. Gen. Stat. § 1D-5(7). The statute goes on to state
"'[w]illful or wanton conduct' means more than gross
negligence." <u>Id.</u>

With respect to the alleged aggravating factor of willful
or wanton conduct, Defendant AII urges that "[w]hether AII was

---

[3] Bell also asserts that Defendants engaged in malicious
conduct. (<u>See</u> Pl.'s Mem. (Doc. 52) at 7.) "Malice" is defined
as: "a sense of personal ill will toward the claimant that
activated or incited the defendant to perform the act or
undertake the conduct that resulted in harm to the claimant."
N.C. Gen. Stat. § 1D-5(5). Because this court concludes that
Defendant AII's Motion to Dismiss should be denied as to Bell's
punitive damages claim, as a claim is stated with respect to
willful and wanton conduct, it will not reach this issue.

grossly negligent is irrelevant to Plaintiff's claim." (Def.'s
Mem. (Doc. 46) at 7.) The North Carolina Supreme Court "has
often used the terms 'willful and wanton conduct' and 'gross
negligence' interchangeably to describe conduct that falls
somewhere between ordinary negligence and intentional conduct."
F.D.I.C. ex rel. Co-op. Bank v. Rippy, 799 F.3d 301, 314 (4th
Cir. 2015) (quoting Yancey v. Lea, 354 N.C. 48, 52, 550 S.E.2d
155, 157 (2001)). In the context of determining whether punitive
damages are available, however, "'[w]illful or wanton conduct'
means more than gross negligence." N.C. Gen. Stat. § 1D-5(7);
Rippy, 799 F.3d at 315 ("[T]o the extent that the enactment
of N.C.G.S. § 1D-5(7) signaled the abrogation of the common law
definition of gross negligence, it did so only in the context of
cases where a plaintiff seeks punitive damages.").

In a recent opinion, an Eastern District of North Carolina
court considered "the distinction, instituted by N.C. Gen. Stat.
§ 1D-5(7), between gross negligence and willful or wanton
conduct as it applies to determining availability of punitive
damages." Justice v. Greyhound Lines, Inc., No. 5:16-CV-132-FL,
2018 WL 1570804, at *4 (E.D.N.C. Mar. 30, 2018). The Justice
court started its inquiry by considering the traditional
definition of "gross negligence":

> Under North Carolina law, "gross negligence" is
> defined as willful or wanton conduct "done with
> conscious or reckless disregard for the rights and

safety of others." <u>F.D.I.C. ex rel. Co-op. Bank v.
Rippy</u>, 799 F.3d 301, 314 (4th Cir. 2015) (citing
<u>Yancey v. Lea</u>, 354 N.C. 48, 52 (2001)). An act is
willful "when it is done purposely and deliberately in
violation of law or when it is done knowingly and of
set purpose, or when the mere will has free play,
without yielding to reason." <u>Foster v. Hyman</u>, 197 N.C.
189, 191 (1929) (internal citations omitted).
Similarly, "[a]n act is wanton when it is done of
wicked purpose, or when done needlessly, manifesting a
reckless indifference to the rights of others."
<u>Yancey</u>, 354 N.C. at 52 (quoting <u>Foster</u>, 197 N.C. at
191). However, gross negligence only requires a
willful or wanton <u>act</u>, as opposed to a willful <u>injury</u>,
the latter of which is the defining feature of an
intentional tort. See Yancey, 354 N.C. at 53 ("An act
or conduct moves beyond the realm of negligence when
the <u>injury or damage</u> itself is intentional.").

　　　　In other words, "North Carolina law . . .
require[s] a showing of intentional wrongdoing in
order to sustain a claim of gross negligence." <u>Rippy</u>,
799 F.3d at 314. On the one hand, a claim of simple,
or "ordinary" negligence rests on the assumption that
the defendant "should have known the probable
consequences of his act." <u>Akzona, Inc. v. S. Ry. Co.</u>,
314 N.C. 488, 496 (1985); <u>accord Ray v. N.C. Dep't of
Transp.</u>, 366 N.C. 1, 13 (2012). On the other hand,
gross negligence "rests on the assumption that [the
defendant] knew the probable consequences [of his
act], but was recklessly, wantonly or intentionally
indifferent to the results." <u>Akzona</u>, 314 N.C. at 496
(quoting <u>Wagoner v. N.C. R.R. Co.</u>, 238 N.C. 162, 168
(1953)); <u>accord Ray</u>, 366 N.C. at 13. Thus, a claim for
"gross negligence" will lie where the defendant either
deliberately or recklessly shirked his known duty.

<u>Id.</u> (citing <u>Garcia v. United States</u>, No. 4:15-CV-88-FL, 2016 WL

916432 (E.D.N.C. Mar. 10, 2016)). The <u>Justice</u> court then went on

to build upon this understanding of gross negligence to

persuasively explain how willful and wanton conduct is something

more:

To avoid circularity in defining willful or wanton conduct for purposes of determining availability of punitive damages, it is necessary to disregard any references to the terms "willful" or "wanton" where those terms appear within the quoted definition of gross negligence. See Yancey[,] 354 N.C. at 52; Foster, 197 N.C. at 191. Stripped of such references, the notion of "gross negligence" that remains is an intentional act of conduct that works a breach of a known duty. See Akzone, 314 N.C. at 496. Accordingly, willful or wanton conduct is "more" than gross negligence in the sense that willful or wanton conduct requires, in addition to breach of a known duty, an aggravating factor. Indeed, N.C. Gen. Stat. § 1D-5(7) specifies that the pertinent aggravating factor is the state of mind described in the statute as "conscious and intentional disregard of and indifference to the rights and safety of others." In this manner, willful or wanton conduct lies between, on one hand, gross negligence, and, on the other, an intentional tort where the tortfeasor intends injury. Yancey, 354 N.C. at 53. Finally, where the case law defining gross negligence outside the context of punitive damages invokes various terms of disapprobation to describe willful or wanton conduct, such as "recklessness," "deliberate violation of law," "free play of the will," and "wicked purpose," see e.g., Yancey, 354 N.C. at 52; Foster, 197 N.C. at 191, to any extent those terms mean something other than "conscious and intentional disregard of and indifference to the rights and safety of others[,]" they do not survive application of N.C. Gen. Stat. § 1D-5(7) as part of any analysis relevant to determining availability of punitive damages.

Id. Having found the above explanation of the current state of

North Carolina law persuasive, the narrow inquiry before this

court is whether Bell has sufficiently and plausibly pled that

the officers, directors, or managers of Defendant AII

participated in or condoned the conscious and intentional

disregard of and indifference to the rights and safety of others.

Looking to the operative Complaint, Bell contends primarily that Defendants "have known or should have known[4] since at least 1929 of medical and scientific data which clearly indicates that Defendants' asbestos-containing products were hazardous to the health and safety" of consumers and that Defendants "ignored and failed to act upon said medical and scientific data[.]" (Am. Compl. (Doc. 44) ¶ 47.) Bell's Complaint outlines the following as intentional, willful and wanton conduct:

> (a) failure to warn prior users, bystanders and household members when the Defendants had knowledge of the need for monitoring due to prior exposure;
> (b) failure to issue recall type letters to prior users, bystanders and household members;
> (c) frustrating the publication of articles and literature from the 1930's through at least 1976;
> (d) rejection by top management of advice of corporate officials to warn of the hazards of Defendants' asbestos-containing products; such rejection being motivated by the possibility of adverse effects on profits; and
> (e) delaying the use of and/or providing intentionally inadequate warnings on Defendants' asbestos-containing products.

(Id. ¶ 48.)

---

[4] Because Bell alleges that Defendants knew their "asbestos-containing products were hazardous" and this court finds the pleadings sufficient as to Bell's punitive damages claim with respect to this allegation, this court makes no finding as to the sufficiency of the pleadings with respect to the allegation that Defendants "should have known."

Defendant AII contends that Bell's Complaint amounts to generic allegations which inappropriately refer to "all Defendants." (American International Industries' Reply in Supp. of Rule 12(b)(6) Mot. to Dismiss Pl.'s Claims for Willful and Wanton Conduct, Malice, Conspiracy, and Punitive Damages ("Def.'s Reply") (Doc. 53) at 3-4 ("It is not clear from Plaintiff's complaint how any officer, director or manager of AII took part in or condoned in the alleged willful or wanton conduct. Given the number of Defendants and the breadth of the allegations, Plaintiff's claims that vaguely refer to 'all Defendants' do not suffice.").) In support of this position, Defendant AII cites Estrada v. Consolidated Utility Services, Inc., No. 5:10-CV-161-RLV, 2011 WL 2174467, at *2-3 (W.D.N.C. June 2, 2011), where a Western District of North Carolina court dismissed a plaintiff's claims for punitive damages against a corporate defendant. (Def.'s Reply (Doc. 53) at 3-4.) There, the court stated in relevant part "[i]t's not clear from Plaintiff's complaint how Plaintiff intends to support a claim for punitive damages. The complaint does not point to any specific officers, directors, or managers taking part in or condoning any willful or wanton conduct." Estrada, 2011 WL 2174467 at *3.

In contrast, the present Complaint makes clear how Bell intends to support a claim for punitive damages, alleging that top management rejected the advice of corporate officials to

warn of the hazards of Defendants' asbestos-containing products.

(Am. Compl. (Doc. 44) ¶ 48.) Nonetheless, Defendant AII

contends:

> Plaintiff does not allege when such conduct may have
> occurred, the identity or position of "top managers"
> or "corporate officials" involved in the decision-
> making process, or any of the circumstances
> surrounding the allegation. Nor is there any time
> frame on when or where this occurred, or how the
> "advice" of corporate officials or "rejection" by top
> management was communicated.

(Def.'s Mem. (Doc. 46) at 11-12.) Defendant AII further contends

that Bell's Complaint does not "allege a single fact to support

a plausible claim for . . . willful and wanton conduct against

AII." (Def.'s Reply (Doc. 53) at 5.)

This argument overlooks Fourth Circuit precedent as to the

plausibility inquiry within 12(b)(6) motions:

> The plausibility standard is not a probability
> requirement, but "asks for more than a sheer
> possibility that a defendant has acted unlawfully."
> Although it is true that "the complaint must contain
> sufficient facts to state a claim that is plausible on
> its face, it nevertheless need only give the defendant
> fair notice of what the claim is and the grounds on
> which it rests." Thus, we have emphasized that "a
> complaint is to be construed liberally so as to do
> substantial justice."

Hall v. DIRECTV, LLC, 846 F.3d 757, 765 (4th Cir. 2017)

(citations omitted), cert. denied, ____ U.S. ____, 138 S. Ct.

635 (2018). Drawing all reasonable inferences in favor of

Plaintiff, Bell's Complaint plausibly alleges that Defendant

AII's management engaged in willful or wanton conduct sufficient

to sustain a claim for punitive damages. Defendant AII's Motion to Dismiss will accordingly be denied as to Bell's punitive damages claim.

## D. Civil Conspiracy

Next, Defendant AII claims that Bell has failed to state a claim for civil conspiracy.[5] (Def.'s Mem. (Doc. 46) at 8.) AII contends that "Plaintiff fails to identify which defendants purportedly acted in concert and fails to allege that there was an agreement with AII." (Id. at 9.) Bell asserts that, while the Complaint does not use the word "agreement" specifically, it asserts that Defendants: (a) "acted through their duly

---

[5] While Bell does not allege a separate cause of action for conspiracy, the Complaint contains allegations that a conspiracy existed between Defendants. (See, e.g., Am. Compl. (Doc. 44) ¶ 47 (asserting that Defendants acted collectively); id. at 22 (asserting that Plaintiff is entitled to damages as a result of the conspiracy).) Bell, in his response, contends that a claim for civil conspiracy is sufficiently set forth in the Complaint. (Pl.'s Mem. (Doc. 52) at 9.)

"A cause of action for a civil conspiracy under North Carolina law is really an action for damages caused by acts in furtherance of the conspiracy and not for the conspiracy itself." Jackson v. Blue Dolphin Commc'ns of N.C., L.L.C., 226 F. Supp. 2d 785, 791 (W.D.N.C. 2002) (citations omitted); SouthWood v. CCDN, LLC, No. 7:09-CV-81-F, No. 7:09-CV-183-F, 2016 WL 1389596, at *1 n.3 (E.D.N.C. Apr. 7, 2016) ("Rather, [civil conspiracy] is a theory of liability, such that once the elements of a civil conspiracy are established, all conspirators are jointly and severally liable for damages resulting from an act performed by any one of them in furtherance of the conspiracy." (citations omitted)). Thus, the conspiracy allegations contained in the Complaint are considered to the extent they state a theory of liability as to damages resulting from acts in furtherance of a conspiracy.

authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants[,]" (b) "individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, depriving them therefore of the opportunity of free choice as to whether or not to expose themselves to Defendants' asbestos-containing products[,]" (c) "acted willfully and wantonly in their 'rejection by top management of advice of corporate officials to warn of the hazards of Defendants' asbestos-containing products; such rejection being motivated by the possibility of adverse effects on profits[,]'" and (d) "intentionally continued to conceal the dangers of asbestos exposure from 1929 through at least the 1970 's." (Pl.'s Mem. (Doc. 52) at 10 (quoting Am. Compl. (Doc. 44) ¶¶ 10, 47, 48).)

Under North Carolina law, "[a] civil conspiracy requires: (1) an agreement between two or more persons to do a wrongful act; (2) an overt act committed in furtherance of the agreement; and (3) damage to the plaintiff." Champion Pro Consulting Grp., LLC v. Impact Sports Football, LLC, 116 F. Supp. 3d 644, 664 (M.D.N.C. 2015) (citing Nye v. Oates, 96 N.C. App. 343, 347, 385 S.E.2d 529, 531–32 (1989)), aff'd sub nom. 845 F.3d 104 (4th Cir. 2016); see also Dalton v. Camp, 135 N.C. App. 32, 42, 519

S.E.2d 82, 89 (1999). Defendant AII contends that Bell has
failed to plead the first element of civil conspiracy – an
agreement. (Def.'s Reply (Doc. 53) at 6.) While Bell alleges
that Defendants "individually and collectively, ignored and
failed to act upon said medical and scientific data and
conspired to deprive the public and particularly the users of
said medical and scientific data[,]" (Am. Compl. (Doc. 44)
¶ 47), the Complaint does not contain any allegation that an
agreement to do wrongful acts existed between Defendants. Nor do
the other portions of the Complaint to which Bell points support
a liberally construed civil conspiracy claim. Accordingly,
Defendant AII's Motion to Dismiss will be granted with respect
to Bell's civil conspiracy claim.

###### E.    Request to Amend Complaint

Bell, in his response, seeks in the alternative an
opportunity to amend his Complaint pursuant to Federal Rule of
Civil Procedure 15(a)(2) should this court find any of the
above-discussed claims subject to dismissal. (Pl.'s Mem. (Doc.
52) at 11.) Specifically, Bell contends that good cause exists
for such an amendment "given that Plaintiff's claims are
recognized under North Carolina law and [Defendant AII] failed
to raise the issue of improper pleading until after engaging in
considerable litigation." (Id.) To the contrary, Defendant AII
asserts that, during the pendency of the litigation in New

Jersey state court "Plaintiff engaged in significant discovery . . . . Nevertheless, almost two years after Plaintiff first brought suit against AII and after ample discovery, Plaintiff has yet to allege a single fact to support a plausible claim for malice, willful and wanton conduct, conspiracy, or punitive damages." (Def.'s Mem. (Doc. 46) at 14.)

Federal Rule of Civil Procedure 15(a)(2) provides that "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "This directive gives effect to the federal policy in favor of resolving cases on the merits instead of disposing of them on technicalities." Mayfield v. Nat'l Ass'n for Stock Car Auto Racing, Inc., 674 F.3d 369, 379 (4th Cir. 2012) (citation omitted). "This means that a request to amend should only be denied if one of three facts is present: 'the amendment would be prejudicial to the opposing party, there has been bad faith on the part of the moving party, or amendment would be futile.'" Id. (citation omitted); accord United States ex rel. Nathan v. Takeda Pharms. N. Am., Inc., 707 F.3d 451, 461 (4th Cir. 2013).

This court finds that permitting Bell to amend his Complaint, especially in light of the lengthy history of this case, would both be futile and prejudice Defendants. Plaintiff's motion to amend, presumably to cure the civil conspiracy claim

which has been found by this court to be deficient, is not proper. Other than a conclusory statement that Plaintiff's claims are recognized under North Carolina law, Plaintiff fails to proffer or suggest any new or additional facts which would cure the defects found by this court as to the civil conspiracy claim. Plaintiff's Amended Complaint fails to allege any agreement between the alleged co-conspirators and Plaintiff's request to amend fails to allege or suggest any facts that Plaintiff might include to plausibly state a claim.

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing. And while delay alone 'is an insufficient reason to deny a motion to amend,' 'the further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the defendant . . . .'" Mayfield, 674 F.3d at 379 (citations omitted). Further, "[t]he amount of discovery is also a relevant consideration in determining whether prejudice would result from the granting of a 15(a) motion." Id. (citation omitted). In this case, decedent was allegedly exposed to asbestos by way of Defendants' products from approximately the 1950s to 2009. (Am. Compl. (Doc. 44) ¶ 9.) Plaintiff first filed a complaint as to the claims underlying this case in New Jersey state court on November 5, 2015. (Pl.'s Mem. (Doc. 52) at 3.) Plaintiff then filed the first Complaint in this court on February 8, 2017.

(Compl. (Doc. 1) at 1.) Further, some discovery was conducted in New Jersey state court. (See, e.g., Pl.'s First Mem., Ex. B, Tr. of Dep. of Betty W. Bell Vol. 1 (Doc. 33-2); id., Ex. E, AII's Responses to Standard Interrogs. (Doc. 33-5).) Thus, Bell has already enjoyed ample opportunity to amend his Complaint and allowing further amendment would prejudice Defendants. Bell's request to amend his Complaint is accordingly denied.

**IV.  CONCLUSION**

For the reasons set forth herein, **IT IS HEREBY ORDERED** that Defendant AII's Motion to Dismiss, (Doc. 45), is **DENIED** with respect to Bell's punitive damages claim and is **GRANTED** with respect to Bell's civil conspiracy claim.

**IT IS FURTHER ORDERED** that Bell's request to amend his Complaint is **DENIED.**

This the 7th day of June, 2018.

_____
United States District Judge