EXHIBIT C
AMENDED COMPLAINT

UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.: 1:17-cv-00111

| | | |
|---|---|---|
| Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell, Deceased, | : : : | |
| Plaintiff, | : : | |
| vs. | : : | |
| American International Industries Inc. (sued individually and as successor to Pinaud, Inc., Barbara Alice, Inc., Ed. Pinaud, Inc. d/b/a Ed. Pinaud, and Nestle-Le Mur Company), all for the Clubman line of products; | : : : : | |
| Brenntag North America, Inc. (sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.); | : : : : | |
| Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.); | : : : | **JURY TRIAL DEMANDED** |
| Colgate-Palmolive Company; | : | |
| Cyprus Amax Minerals Company (sued individually, doing business as, and as successor to Metropolitan Talc Co. Inc. and Charles Mathieu Inc. and Sierra Talc Company and United Talc Company); | : : : : | |
| Whittaker Clark & Daniels, Inc., | : | |

Defendants.

## AMENDED CIVIL ACTION COMPLAINT

Plaintiff Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell, Deceased, and sue the above-named Defendants for compensatory and punitive damages and allege as follows:

## PARTIES

1.     Plaintiff Lloyd Bell is a citizen and resident of the County of Rowan, State of North Carolina.

1

2. Defendant, **AMERICAN INTERNATIONAL INDUSTRIES INC.** (sued individually and as successor to PINAUD, INC., BARBARA ALICE, INC., ED. PINAUD, INC. d/b/a ED. PINAUD, and NESTLE-LE MUR COMPANY) all for the Clubman line of products, was and is a company incorporated under the laws of the State of Delaware with its principal place of business in California. At all times material hereto, AMERICAN INTERNATIONAL INDUSTRIES INC. (sued individually and as successor to PINAUD, INC., BARBARA ALICE, INC., ED. PINAUD, INC. d/b/a ED. PINAUD, and NESTLE-LE MUR COMPANY) all for the Clubman line of products, developed, manufactured, marketed, distributed and/or sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Clubman talcum powder products. AMERICAN INTERNATIONAL INDUSTRIES INC. (sued individually and as successor to PINAUD, INC., BARBARA ALICE, INC., ED. PINAUD, INC. d/b/a ED. PINAUD, and NESTLE-LE MUR COMPANY), all for the Clubman line of products, has and does business in the State of North Carolina.

3. Defendant, **BRENNTAG NORTH AMERICA, INC.** (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Pennsylvania. At all times material hereto, BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc. BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of North Carolina.

2

4.     Defendant, **BRENNTAG SPECIALTIES, INC.** f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New Jersey. At all times material hereto, BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) was a supplier of asbestos-containing talc. BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.) has and does business in the State of North Carolina.

5.     Defendant, **COLGATE-PALMOLIVE COMPANY** was and is a company incorporated under the laws of the State of Delaware with its principal place of business in New York. At all times material hereto, COLGATE-PALMOLIVE COMPANY developed, manufactured, marketed, distributed and/or sold asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products including, but not limited to, asbestos-containing Cashmere Bouquet talcum powder products. COLGATE-PALMOLIVE COMPANY has and does business in the State of North Carolina.

6.     Defendant, **CYPRUS AMAX MINERALS** COMPANY (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY), was and is a company incorporated under the laws of the State of Delaware with its principal place of business in Arizona. At all times material hereto, CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) was a supplier of asbestos-containing talc. CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as,

3

and as successor to METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY) has and does business in the State of North Carolina.

7.      Defendant, **WHITTAKER CLARK & DANIELS, INC.,** was and is a company incorporated under the laws of the State of New Jersey with its principal place of business in New Jersey.  At all times material hereto, WHITTAKER CLARK & DANIELS, INC. was a supplier of asbestos-containing talc.  WHITTAKER CLARK & DANIELS, INC. has and does business in the State of North Carolina.

8.      Plaintiff brings this action for monetary damages as a result of Decedent Betty Whitley Bell contracting an asbestos-related disease.  Decedent Betty Whitley Bell was diagnosed with mesothelioma on or about June 18, 2015.

9.      Decedent Betty Whitley Bell was wrongfully exposed to and inhaled, ingested or otherwise absorbed asbestos fibers, an inherently dangerous toxic substance, as described below:

(a)      From approximately the 1950s to the late 1980s, Decedent Betty Whitley Bell was exposed to asbestos through her personal, daily use of asbestos-containing Cashmere Bouquet talcum powder products as well as her mother and sisters' daily use of asbestos-containing Cashmere Bouquet talcum powder products. Decedent Betty Whitley Bell was further exposed to asbestos as a student in beauty school from approximately 1975 through 1976, when employed as a hair dresser at a private salon in the 1970s, and as the owner/operator of her own beauty shop – Country Curls – from approximately 1978 to approximately 2009. In this manner, Betty Whitley Bell was exposed to asbestos from asbestos-containing Clubman talcum powder products. The asbestos-containing talc in Cashmere Bouquet and Clubman talcum powder products was supplied by Brenntag North America, Inc.

4

(sued individually and as successor-in-interest to Mineral Pigment Solutions, Inc. and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Brenntag Specialties, Inc. f/k/a Mineral Pigment Solutions, Inc. (sued individually and as successor-in-interest to Whittaker Clark & Daniels, Inc.), Cyprus Amax Minerals Company (sued individually, doing business as, and as successor to Metropolitan Talc Co. Inc. and Charles Mathieu Inc. and Sierra Talc Company and United Talc Company), and Whittaker Clark & Daniels, Inc. Decedent Betty Whitley Bell's regular and frequent use of Cashmere Bouquet talcum powder products and Clubman talcum powder products generated asbestos-containing dust and exposed Decedent Betty Whitley Bell to respirable asbestos fibers.

10. At all times pertinent hereto, the Defendants acted through their duly authorized agents, servants and employees, who were then and there acting in the course and scope of their employment and in furtherance of business of said Defendants.

11. At all material times, the Defendants manufactured, designed, distributed, sold, supplied, and/or otherwise placed into the stream of commerce asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos-containing talc of various kinds and grades, either directly or indirectly to Decedent Betty Whitley Bell's places of employment, and/or used by her and her family members' personally.

## JURISDICTION AND VENUE

12. This Court has personal jurisdiction over the Defendants because the Defendants are duly licensed to do business in the State of North Carolina and/or at all material times are or have been engaged in business in the State of North Carolina. Pursuant to 28 U.S.C.A. §1391, venue is

5

proper in this judicial district because a substantial part of the events or omissions occurred in North Carolina. Further, this Court has jurisdiction over the parties pursuant to 28 U.S.C.A. §1332 because the parties to the suit are completely diverse in that none of the Defendants are citizens of the same state as Plaintiff. The amount in controversy exceeds Seventy Five Thousand Dollars ($75,000.00), exclusive of interest and costs.

13.     Plaintiff has satisfied all conditions precedent to the filing of this action.

14.     All of the named Defendants listed on the caption are foreign corporations who are amenable to jurisdiction in the courts of North Carolina by virtue of their respective conduct of substantial and/or systematic business in North Carolina which subjects them to the jurisdiction of the North Carolina courts pursuant to the North Carolina Long-Arm Statute. Each Defendant corporation does or in the past mined, manufactured, designed, processed, imported, converted, compounded, supplied, installed, replaced, repaired, used, and/or retailed substantial amounts of asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos-containing talc of various kinds and grades, which are or in the past were sold, distributed, and used in North Carolina. As mentioned above, Decedent Betty Whitley Bell was exposed to various asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos-containing talc of various kinds and grades sold and distributed in North Carolina.

15.     All of the named Defendants listed on the caption have consented to this Court exercising personal jurisdiction over the Defendants.

## FIRST CAUSE OF ACTION
## NEGLIGENCE

16.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

17.     At all material times, Defendants are or were miners, milling, manufacturers, distributors, processors, importers, converters, compounders, designers, and/or retailers of asbestos, and/or asbestos-containing products, and/or asbestos-containing talc and/or other finished and unfinished asbestos-containing talcum powder products, and/or raw asbestos-containing talc of various kinds and grades, (hereinafter collectively referred to as "asbestos-containing products").

18.     The Defendants, acting through their agents, servants, and/or employees caused, and have caused in the past, their asbestos-containing products to be placed in the stream of interstate commerce with the result that Defendants' asbestos-containing products came into use by, or were used by others in close proximity to Decedent Betty Whitley Bell.

19.     Throughout the course of her employment, and through her personal use and her family members' use, Decedent Betty Whitley Bell was exposed to Defendants' asbestos-containing products, which exposure directly and proximately caused her to develop an illness known and designated as mesothelioma.

20.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment had a duty to design, manufacture and sell their asbestos-containing products that were not unreasonably dangerous or defective and/or a duty to warn Decedent Betty Whitley Bell and foreseeable users, bystanders, and household members of  the dangers and defects of Defendants' asbestos-containing products, which the Defendants created, knew, or within the exercise of reasonable care, should have known.

7

21.     Decedent Betty Whitley Bell, through her personal use and her family members'
use, and whose livelihood was dependent upon the work that she did, was required to work with
and around asbestos-containing products that were manufactured, processed, designed, distributed,
supplied and/or sold by Defendants, and Decedent Betty Whitley Bell was exposed to Defendant's
asbestos-containing products.  Defendants knew or should have known that persons employed
using their talc and/or talcum powder products and personally using their talc and/or talcum
powder products, such as Decedent Betty Whitley Bell, would be required to and would come into
contact with and would work in close proximity to Defendants' asbestos-containing products, and
fibers from said asbestos-containing products were frequently inhaled and ingested by Decedent
Betty Whitley Bell.

22.     Decedent Betty Whitley Bell sustained injuries caused by no fault of her own and
which could not be avoided through the use of reasonable care.  Decedent Betty Whitley Bell's
development of an asbestos-related disease was directly and proximately caused by the negligence
and carelessness of Defendants in that they manufactured, processed, designed, sold, supplied or
otherwise put asbestos-containing products into the market and into the stream of interstate
commerce while they knew, or in the exercise of ordinary care should have known, that said
asbestos-containing products were deleterious, poisonous, cancer-causing and/or inherently
dangerous and harmful to Decedent Betty Whitley Bell's body, lungs, respiratory system, skin,
health, and general well-being.  Further, Defendants knew or in the exercise of reasonable care
should have known that Decedent Betty Whitley Bell would not know of such danger to her health.

23.     Decedent Betty Whitley Bell's illness and/or disabilities are the direct and proximate
result of the negligence and carelessness of Defendants, jointly and severally, in that, even though
the Defendants knew, or in the exercise of ordinary care should have known that Defendants'
asbestos-containing products were deleterious, poisonous, and highly harmful to Decedent Betty

8

Whitley Bell's body, lungs, respiratory system, skin, and health, Defendants breached their duties and were negligent in the following acts and/or omissions:

(a)  Failed to advise Decedent Betty Whitley Bell of the dangerous characteristics of Defendants' asbestos-containing products;

(b)  Failed or omitted to provide Decedent Betty Whitley Bell with the knowledge as to what would be reasonably safe and sufficient apparel and protective equipment and appliances to reduce exposure to inhalable asbestos fibers, if in truth they were in any way able to protect her from being poisoned and disabled as she was by exposure to Defendants' asbestos-containing products;

(c)  Failed and omitted to place any warnings or sufficient warnings on Defendants' asbestos-containing products to warn users of the dangers to health in coming in contact with said products;

(d)  Failed and omitted to take reasonable precautions or to exercise reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing Defendants' asbestos-containing products;

(e)  Inadequately warned, if in fact they warned at all, persons such as Decedent Betty Whitley Bell of the dangers to their health in coming in contact with and breathing said asbestos fibers from Defendants' asbestos-containing products;

(f)  Did not recommend methods to improve the work environment;

(g)  Did not develop alternative products;

(h)  Continued to use a known cancer-causing product, to-wit:  asbestos; and

(i)  After discovering that asbestos exposure caused a progressive lung disease, the Defendants did not inform Decedent Betty Whitley Bell of the need for monitoring and periodic evaluations up to and including the filing of this Complaint.

24. Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing Defendants' asbestos-containing products into the stream of commerce knew, or in the exercise of reasonable care should have known, about the risks associated with Defendants' asbestos-containing products. The products in question were defective at the time they left the control of the Defendants.

25. Defendants were negligent and breached their duty of due care to Decedent Betty Whitley Bell by taking or failing to take the actions as previously alleged to avoid harm to Decedent Betty Whitley Bell and other foreseeable users, bystanders and household members in light of the reasonably foreseeable dangers caused by the design, manufacture, sale, and distribution of Defendants' asbestos-containing products at issue in the stream of commerce.

26. The hazards posed by exposure to Defendants' asbestos-containing products and the resulting injuries and damages to Decedent Betty Whitley Bell were reasonably foreseeable, or should have been reasonably foreseen by Defendants.

27. As a direct and proximate result of the aforesaid negligent acts and/or omissions by the Defendants, Decedent Betty Whitley Bell developed mesothelioma as a consequence of which, through no fault of her own, she was severely injured, disabled and damaged.

28. As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

**SECOND CAUSE OF ACTION**
**PRODUCT LIABILITY – INADEQUATE DESIGN, FORMULATION AND**
**MANUFACTURE**

32. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

33. At all material times, Defendants were engaged in the manufacture, distribution, design, supply, sale, assembly, production, construction, and/or specification of Defendants' asbestos-containing products.

10

34.     Defendants, acting through their agents, servants, and/or employees, placed in the stream of commerce asbestos-containing products designed, manufactured, distributed, marketed, and/or sold by Defendants that were defective, unsafe and unreasonably dangerous for their intended and/or foreseeable uses with the result that said asbestos-containing products came into use by Decedent Betty Whitley Bell, and fibers from said asbestos-containing products were frequently inhaled and ingested by Decedent Betty Whitley Bell.

35.     Defendants, acting by and through their servants, agents and employees, duly authorized and acting within the scope and authority of their employment, had a duty to design, manufacture and sell Defendants' asbestos-containing products that were not unreasonably dangerous or defective and/or a duty to warn Decedent Betty Whitley Bell and foreseeable users, bystanders and household members of Defendants' asbestos-containing products of the dangers and defects which the Defendants created knew, or within the exercise of reasonable care, should have known.

36.     Defendants acted unreasonably in designing, manufacturing, and formulating their asbestos-containing products to be harmful to Decedent Betty Whitley Bell's body, lungs, respiratory system, skin and health.  Defendants acted unreasonably in the following acts and/or omissions:

    (a)     Failing to adopt a practical, feasible, and otherwise reasonable alternative design that was safer, that could have been reasonably adopted and that would have prevented or substantially reduced the risk of harm to individuals such as Decedent Betty Whitley Bell without substantially impairing the usefulness, practicality or desirability of Defendants' asbestos-containing products; and

(b) Using a design that was so unreasonable that a reasonable person, aware of the relevant facts, would not use or consume Defendants' asbestos-containing products of this design; and

(c) Allowing the use of talc that contains asbestos to be used in the manufacture of the products when said products were supposed to be asbestos-free.

37.     Defendants, at the time of designing, manufacturing, distributing, selling, or otherwise placing their asbestos-containing products into the stream of commerce knew, or in the exercise of reasonable care should have known about the risks associated with said asbestos-containing products.  The products in question were defective at the time they left the control of the Defendants.

38.     Defendant's unreasonable acts in designing and manufacturing the herein aforementioned products distributed, sold and specified by Defendants were a proximate cause of Decedent Betty Whitley Bell's development of mesothelioma, as a consequence of which through no fault of her own, she was severely injured, disabled and damaged.

39.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

### THIRD CAUSE OF ACTION
### BREACH OF IMPLIED WARRANTY

40.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

41.     The Defendants impliedly warranted that their asbestos-containing products were of good and merchantable quality and fit for their intended use.

42.     The implied warranty made by the Defendants that their asbestos-containing products were of good and merchantable quality and fit for the particular intended use was breached and that certain harmful, poisonous, and deleterious matter was given off into the

12

atmosphere of Decedent Betty Whitley Bell while personally using and working with or in the vicinity of said asbestos-containing products.

43.     As a direct and proximate result of the implied warranty of good and merchantable quality and fitness for the particular intended use, Decedent Betty Whitley Bell developed an illness, to-wit: mesothelioma.

44.     As a result of the above, Plaintiff seeks damages as are hereinafter demanded.

<u>**FOURTH CAUSE OF ACTION**</u>
<u>**WILLFUL AND WANTON CONDUCT**</u>

45.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

46.     Decedent Betty Whitley Bell and others in her position personally using and working with and/or in close proximity to Defendants' asbestos-containing products, and the exposure and hazard to each of them in Decedent Betty Whitley Bell's presence as well as others in her position, was known or in the exercise of reasonable care should have been anticipated by the Defendants and each of them.

47.     The Defendants have known or should have known since at least 1929 of medical and scientific data which clearly indicates that Defendants' asbestos-containing products were hazardous to the health and safety of Decedent Betty Whitley Bell and others in the Plaintiff's position, and prompted by pecuniary motives the Defendants, individually and collectively, ignored and failed to act upon said medical and scientific data and conspired to deprive the public and particularly the users of said medical and scientific data, depriving them therefore of the opportunity of free choice as to whether or not to expose themselves to Defendants' asbestos-containing products.  As a result, Decedent Betty Whitley Bell was severely damaged as is set forth below.

48.     The Defendants intentionally continued to conceal the dangers of asbestos exposure from 1929 through at least the 1970's, thus denying Decedent Betty Whitley Bell the knowledge with which to take necessary safety precautions such as periodic x-rays and medical examinations,

13

cessation of smoking, and avoidance of further dust exposure. Specifically, Defendants' intentional, willful and wanton conduct included the following acts and omissions:

(a)     failure to warn prior users, bystanders and household members when the Defendants had knowledge of the need for monitoring due to prior exposure;

(b)     failure to issue recall type letters to prior users, bystanders and household members;

(c)     frustrating the publication of articles and literature from the 1930's through at least 1976;

(d)     rejection by top management of advice of corporate officials to warn of the hazards of Defendants' asbestos-containing products; such rejection being motivated by the possibility of adverse effects on profits; and

(e)     delaying the use of and/or providing intentionally inadequate warnings on Defendants' asbestos-containing products.

49.     The acts and omissions of each of the Defendants as hereinabove set forth were intentional, willful and wanton, and done with willful disregard of the safety of Decedent Betty Whitley Bell and others similarly situated at a time when each of the Defendants had knowledge, or should have had knowledge of the dangerous effect of Defendants' asbestos-containing products upon the body of human beings, including Decedent Betty Whitley Bell and others similarly situated, and even though forewarned by tests, standards, promulgations of rules and regulations, statutes, and ordinances recognized by the Defendants and subscribed to by them, nevertheless placed into the stream of commerce for their own profit this dangerous asbestos material with full knowledge that it was being used and would be used in the future to the detriment of the health of Decedent Betty Whitley Bell and others similarly situated, and Plaintiff is thereby entitled to punitive damages.

14

50. Accordingly, as a result of the Defendants' conduct which was conducted willfully, wantonly and with malice, and was grossly negligent and in total disregard for the health and safety of the users, consumers, and/or household members such as Decedent Betty Whitley Bell, Plaintiff therefore seeks exemplary and punitive damages against Defendants to punish the Defendants for their actions, which were willful, wanton, gross, with malice, and in total disregard of the health and safety of the users and consumers of their products.

## FIFTH CAUSE OF ACTION
## FAILURE TO WARN

51. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

52. At all times material hereto, the Defendants knew or should have known of the harmful effects and/or dangers of working with Defendants' asbestos-containing products and of exposures to inhalable asbestos.

53. Defendants had a pre- and post-sale duty to warn household members of individuals including, but not limited to, Decedent Betty Whitley Bell of the dangers associated with the use and/or inhalation of asbestos dust and fibers.

54. Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products, the Defendants failed to warn and/or inadequately warned Decedent Betty Whitley Bell of the dangers including, but not limited to:

(a) Failing to provide adequate cautions, warnings, and/or hazard statements and/or explanations with Defendants' asbestos-containing products which should have been designed to provide to Decedent Betty Whitley Bell knowledge about the hazards caused by exposure to Defendants' asbestos-containing products and how to eliminate such hazards;

15

(b)     Failing to provide adequate product inserts, informative brochures, employee training literature, posters, and/or other written materials with Defendants' asbestos-containing products which should have been designed to provide to Decedent Betty Whitley Bell knowledge about the hazards caused by exposure to their products and how to eliminate such hazards;

(c)     Failing to conduct on-site personnel training sessions with exposed workers which should have been designed to provide to the workers knowledge about the hazards to them and household members caused by exposure to the Defendants' asbestos-containing products, and how to eliminate the hazards;

(d)     Failing to adequately test and research their products as to the hazards created during their use and failed thereafter to provide the results of such tests and research to exposed persons such as Decedent Betty Whitley Bell;

(e)     Failing to inspect the workplace in which Defendants' asbestos-containing products were being used to determine whether the products being used were deleterious to the health of exposed workers and household members of said workers;

(f)     Failing to design, process and transport Defendants' asbestos-containing products in a manner intended to minimize exposure during personal use and normal working conditions;

(g)     Failing to specify and market Defendants' asbestos-containing products on the express agreement that necessary engineering controls, work practices, and other industrial hygiene controls would be implemented in conjunction with use of Defendants' asbestos-containing products after it was known or should have been known that adequate protective measures were not being implemented;

16

(h)    Failing to recall their defective products or manufacture a reasonably safer alternative;

(i)    Failing to take adequate precautions and industrial hygiene measures to protect exposed workers such as Betty Whitley Bell and her family members, when personally using and/or working with Defendants' asbestos-containing products including, but not limited to, providing protection from dust and fibers emanating from use of Defendants' asbestos-containing products; failing to use local ventilation; failing to provide warnings to Decedent Betty Whitley Bell, her family members, and workers in the facilities at issue, that exposure to dust and fibers from Defendants' asbestos-containing products was hazardous and carcinogenic; failing to adequately clean up debris from the use of said products; failing to use wet down procedures; and/or failing to take other appropriate safety and industrial hygiene measures;

(j)    Otherwise failing to act reasonably under the totality of the circumstances.

55.    Defendants manufactured, processed and/or sold Defendants' asbestos-containing products, and these products were used by Decedent Betty Whitley Bell and her family members personally, and at Decedent Betty Whitley Bell's places of employment, or by workers around her during her employment, and these products were used by Decedent Betty Whitley Bell and her employers. Thus, Defendants had a pre- and post-sale duty to warn individuals and household members personally using, and individuals working at jobsites of the dangers associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products.

56.    Despite Defendants' knowledge of the harm and/or potential harm associated with the use and/or inhalation of dust and fibers from Defendants' asbestos-containing products, the Defendants acted unreasonably in failing to provide adequate warnings and/or instructions as to

the hazards associated with exposure to their products. Defendants had a continuing duty to provide post-sale warnings of dangers associated with Defendants' asbestos-containing products to users, bystanders and/or household members.

57. At the time Defendants' asbestos-containing products left Defendants' control without adequate warning or instruction, Defendants created an unreasonably dangerous condition that they knew or should have known would pose a substantial risk of harm to a reasonably foreseeable claimant, such as Decedent Betty Whitley Bell. In the alternative, after said asbestos-containing products left Defendants' control, Defendants became aware of or in the exercise of ordinary care should have known that their products posed a substantial risk of harm to a reasonably foreseeable users and/or household members such as Decedent Betty Whitley Bell and her family members, and failed to take reasonable steps to give adequate warning or instruction or to take any other reasonable action under the circumstances.

58. Defendants' failure to provide adequate warnings as to the hazards associated with exposure to Defendants' asbestos-containing products or to provide proper instructions on the use, handling, and storage of said asbestos-containing products caused Decedent Betty Whitley Bell to develop mesothelioma as a consequence of which she was injured and damaged, and Plaintiff hereby makes a claim for damages from the Defendants jointly and severally.

59. As a result of the Defendants' failure to warn, Decedent Betty Whitley Bell suffered the injuries, illnesses, and/or damages hereinafter alleged.

## DAMAGES
## LOSS OF CONSORTIUM

65. Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

66.     Plaintiff Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell, Deceased were married on July 5, 1968, and have remained married at all times material hereto.

67.     As a direct and proximate result of the injuries and damages complained of herein with respect to Decedent Betty Whitley Bell, and as a direct and proximate result of the acts and omissions of the Defendants, Plaintiff-Spouse Lloyd Bell has also suffered and will continue to suffer loss of the consortium, society, companionship, fellowship and other valuable services of his wife; and therefore, Plaintiff-Spouse Lloyd Bell is entitled to damages for his loss of consortium, both past and future.

## COMPENSATORY AND PUNITIVE DAMAGES

68.     Plaintiff incorporates by reference the preceding paragraphs as if fully set forth herein.

69.     As a result of the above-alleged conduct of the Defendants, Decedent Betty Whitley Bell developed mesothelioma, as a consequence of which, she has been damaged as follows:

(a)     hospital and medical expenses incidental to Decedent Betty Whitley Bell's illness;

(b)     loss of earnings and future earning power of Decedent Betty Whitley Bell;

(e)     loss of Decedent Betty Whitley Bell's general health, strength, and vitality;

(c)     loss of pecuniary contributions to the heirs of Decedent Betty Whitley Bell;

(d)     loss of consortium, society, aid, companionship and services to the heirs of Decedent Betty Whitley Bell;

(e)     future loss of consortium, society, aid, companionship and services to the heirs of Decedent Betty Whitley Bell;

(f)     pain and suffering of Decedent Betty Whitley Bell;

(g)     all other damages recoverable under said Act.

### CAUSE OF ACTION
### (<u>Wrongful Death</u>)

70.     Plaintiff re-alleges the foregoing paragraphs as if restated here verbatim.

71.     Betty Whitley Bell died in Cabarras County, North Carolina, and Lloyd Bell qualified as Executor of the Estate of Betty Whitley Bell.

72.     This action is brought under the North Carolina Wrongful Death Statute, North Carolina General Statute 28A-18-1 and 28A-18-2.

73.     A proximate cause of the death of the decedent was Mesothelioma.  Decedent's illness, disability, and death were a direct and proximate result of the negligence, recklessness and willfulness of the defendants, jointly and severally, in that, even though the defendants knew, or in the exercise of ordinary care, should have known, that the asbestos, asbestos-containing materials and/or asbestos containing equipment were deleterious, poisonous and highly harmful to the decedent's body, lungs, respiratory system, skin and health, and the defendants nonetheless negligently:

a)   Failed to advise the decedent of the dangerous characteristics of their asbestos, asbestos-containing products and/or asbestos containing equipment;

b)   Failed or omitted to provide the decedent with the knowledge as to what would be reasonable safe and sufficient wearing apparel and proper protective equipment and appliances if, in truth, they were in any way able to protect him from being poisoned and disabled as he was by exposure to such deleterious and harmful asbestos, asbestos-containing materials and/or asbestos containing equipment;

c)   Failed and omitted to place any warning or sufficient warnings on their

20

containers of said asbestos and asbestos containing products and/or asbestos containing equipment to warn the handlers thereof of the dangers to health in coming in contact with said asbestos, asbestos containing materials and/or asbestos containing equipment;

d)  Failed and omitted to test the products or take reasonable care to publish, adopt, and enforce a safety plan and a safe method of handling and installing said asbestos, asbestos-containing products and/or asbestos containing equipment;

e)  Inadequately warned, if, in fact, they warned at all, persons such as decedent, of the dangers to their health in coming in contact with and breathing said asbestos, asbestos-containing products and/or asbestos containing equipment;

f)  Failed to develop a substitute for asbestos; and

g)  Failed, after their products' sale, to inform the purchaser and those likely to come in contact thereto, such as decedent, of the harmful effects of asbestos.

As a result of the negligence, recklessness and willfulness, the decedent (1) was obliged to spend various sums of money to treat his disease and injuries; (2) sustained a loss of earnings and earning capacity; (3) had his life expectancy shortened; (4) was totally dependent upon others including, but not limited to, his family, for his daily care prior to his death; (5) sustained a considerable loss of appetite causing tremendous weight loss; and (6) suffered great emotional trauma.

74.    All of the acts and omissions of defendants as set forth in the Complaint filed herein and incorporated herein by reference resulted in the death of the decedent.

75.    Prior to contracting asbestos-related diseases, Betty Whitley Bell was in good physical condition.  Betty Whitley Bell was a devoted family woman, loving, kind and affectionate to her family, and spent her earnings on the care, maintenance, and support of her family, as well as furnishing valuable household services to his family.  In addition, she gave

21

counseling, devoted attention, maintenance and support, care and protection to her family of earnings and support during his life expectancy.

76.     The decedent's injuries and illnesses were permanent in nature, and she was forced to suffer same for the remainder of her life.

77.     Plaintiff alleges that as a result of the aforesaid illnesses, decedent had been forced to incur large medical and funeral expenses.  Decedent's family has been deprived of her earnings, services, care protection, assistance, society, companionship, guidance, kindly offices, and advice.

78.     By reason of the facts herein above alleged, plaintiff has been made to suffer and sustain at the hands of the defendants, and each of them, general and special damages in a sum in excess of Seventy-Five Thousand Dollars ($75,000.00).

WHEREFORE, the Plaintiff verily believes she is entitled to actual damages against the Defendants, jointly and severally, by reason of said negligence, gross negligence, breach of warranty, false representation, failure to warn, conspiracy and other breaches of duty and willful, wanton and malicious conduct as alleged herein proximately caused by the fault of the Defendants. Plaintiff prays for judgment against all Defendants for actual and punitive damages, lost wages and special damages, for medical expenses and funeral expenses incurred by plaintiff in an amount to be shown upon the trial hereof; together with costs and disbursements herein, and interest on said judgment from the date thereof until paid at the rate provided by law, for the costs of this action, and for such other and further relief as to which Plaintiff may be entitled.

**PLAINTIFF REQUESTS TRIAL BY JURY ON ALL ISSUES SO TRIABLE.**

This 23rd day of October, 2017.

Case 1:17-cv-00111-WO-JEP   Document 86-3   Filed 10/31/19   Page 23 of 26
Case 1:17-cv-00111-WO-JEP   Document 44   Filed 10/23/17   Page 22 of 25

Respectfully submitted,

_/s/Kevin W. Paul_
Kevin W. Paul (PHV)
MSBA #43730
Attorney for Plaintiff
**SIMON GREENSTONE PANATIER BARTLETT, PC**
3232 McKinney Ave, Ste 610
Dallas, TX 75204
214-276-7680
kpaul@sgpblaw.com

_/s/ William Marc Graham_
William Marc Graham
NC State Bar 17972
**WALLACE AND GRAHAM, PA**
525 N. Main Street
Salisbury, North Carolina 28144
704-633-5244
bgraham@wallacegraham.com

_Local Civil Rule 83.1 Counsel_

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on October 23, 2017, Plaintiff filed the foregoing Plaintiff's Amended Civil Action Complaint via ECF filing which will serve all counsel of record in the above-referenced matter.

| | |
|---|---|
| AMERICAN INTERNATIONAL INDUSTRIES INC. (sued individually and as successor to PINAUD, INC., BARBARA ALICE, INC., ED. PINAUD, INC. d/b/a ED. PINAUD, and NESTLE-LE MUR COMPANY)<br><br>Eric T.  Hawkins<br>Hawkins Parnell Thackston & Young LLP<br>303 Peachtree Street NE<br>Suite 4000<br>Atlanta, GA  30308-3243<br>(404) 614-7400<br>ehawkins@hptylaw.com<br><br>Douglas A. Rubel<br>Hawkins Parnell Thackston & Young LLP<br>P.O. Box 1285<br>Cary, NC  27512-1285<br>(919) 523-3638<br>(404) 614-7500<br>drubel@hptylaw.com | BRENNTAG NORTH AMERICA, INC. (sued individually and as successor-in-interest to MINERAL PIGMENT SOLUTIONS, INC. and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); BRENNTAG SPECIALTIES, INC. f/k/a MINERAL PIGMENT SOLUTIONS, INC. (sued individually and as successor-in-interest to WHITTAKER CLARK & DANIELS, INC.); WHITTAKER CLARK & DANIELS, INC.<br>Tracy E. Tomlin<br>William M. Starr<br>Travis A. Bustamante<br>Nelson Mullins Riley & Scarborough LLP<br>Bank of America Corporate Center<br>301 South College Street, 23rd Fl.<br>Charlotte, NC  28202<br>(704)417-3000<br>(704)417-3227<br>Tracy.tomlin@nelsonmullins.com<br>Bill.starr@nelsonmullins.com<br>Travis.bustamante@nelsonmullins.com |
| COLGATE-PALMOLIVE COMPANY<br>Joseph D. Hammond<br>Jon Berkelhammer<br>Curtis J. Shipley<br>Ellis & Winters, LLP<br>P.O. Box 2752<br>Greensboro, NC  27402<br>(336) 389-5694<br>(336) 217-4198<br>Joe.hammond@elliswinters.com | CYPRUS AMAX MINERALS COMPANY (sued individually, doing business as, and as successor to METROPOLITAN TALC CO. INC. and CHARLES MATHIEU INC. and SIERRA TALC COMPANY and UNITED TALC COMPANY)<br>Timothy Peck<br>Smith Moore Leatherwood LLP<br>300 North Greene Street, Suite 1400<br>Greensboro, NC  27401 |

24

| | |
|---|---|
| Curtis.shipley@elliswinters.com<br>jon.berkelhammer@elliswinters.com | (336)378-5307<br>(336)433-7471<br>Tim.peck@smithmoorelaw.com<br><br>Stephanie G. Flynn<br>Smith Moore Leatherwood LLP<br>2 West Washington St., Suite 1100<br>Greenville, SC 29601<br>(864)751-7607<br>(864)751-7800<br>Stephanie.flynn@smithmoorelaw.com |

/s/*Kevin W. Paul*
Kevin W. Paul