# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
### GREENSBORO DIVISION

LLOYD BELL, Individually and )
As Executor of the Estate of BETTY )
WHITLEY BELL, Deceased, )
                           )
    Plaintiff, )
                           )     CASE NO. 1:17-cv-00111
v. )
                           )
AMERICAN INTERNATIONAL )
INDUSTRIES, INC., et al., )
                           )
    Defendants. )

## PLAINTIFF'S EMERGENCY MOTION FOR PROTECTIVE ORDER
## AND SANCTIONS

Plaintiff Lloyd Bell, individually and as executor of the estate of Betty Whitley Bell, deceased, files this motion for a protective order and requests the Court sanction Mr. Robert Thackston, counsel for Defendant American International Industries, Inc. ("AII"), and shows the Court as follows:

## BACKGROUND

Plaintiff retained Dr. Jacqueline Moline, an expert in occupational medicine, to testify as an expert witness in this case. *See* Plaintiff's Disclosure of Expert Witnesses, at Exhibit A. Dr. Moline's expert report and reliance materials were produced to Defendants on June 30, 2020, with Plaintiff's Supplemental Rule 26(a)(2) Expert Witness Disclosures. *See* ECF No. 168-3 (the attachments to Dr. Moline's report were not attached due to their volume).

Dr. Moline, along with Kristin Bevilacqua, Maya Alexandri, and Ronald Gordon, Ph.D., authored a peer-reviewed article entitled "Mesothelioma Associated with the Use of Cosmetic Talc," recently published in the Journal of Occupational and Environmental Medicine. *See* Exhibit

1

B. The study examined data for 33 human subjects with malignant mesothelioma with no confirmed asbestos exposure other than cosmetic talcum powder. *Id.* The 33 human subjects were anonymized in the paper. *Id.*

Dr. Moline has not yet been deposed in this case (her deposition was originally scheduled for September 14, 2020), but she was deposed by Defendant AII's counsel, Mr. Robert Thackston, in another case earlier this year. In the *Lashley* case, Mr. Thackston asked Dr. Moline if Ms. Bell, the decedent in this case, was one of the 33 human subjects in her article. Dr. Moline refused to answer, explaining that the names of human subjects in research studies are protected and confidential:

> Q. And in your article that you did with Dr. Gordon, you talk about 33 cases, right?
>
> A. Yes.
>
> Q. Was Bell one of the 33 cases?
>
> A. I am not discussing the individuals included in any of the case -- in any of -- in the article.
>
> Q. Well, but the individuals in the article are all individuals that filed lawsuits, and the reason that you're -- you know about them is because you were an expert witness in their case, right?
>
> MS. KAGAN: Argument; foundation.
>
> A. That is correct.
>
> Q. So, you weren't the treating physician for any of the 33 patients that were included in your article, right?
>
> A. Correct.
>
> Q. Whatever information you had from your article you got from deposition transcripts and other legal documents associated with the case, right?
>
> A. Or an in-person interview, if I had the opportunity to meet them.
>
> Q. So, why can't you tell me whether the Bell case was one of the cases that you included in your article?
>
> A. Because the individual names and -- are covered under research protections for confidentiality.

2

*See* Deposition of Dr. Moline in *Lashley v. AII,* dated January 15, 2020, attached as Exhibit C, at 30:16-31:23.

On August 20, 2020, knowing that Dr. Moline would again refuse to disclose the protected and confidential identity of the subjects in her study, Mr. Thackston served a subpoena to produce documents on Northwell Health in an attempt to improperly circumvent Dr. Moline and her co-authors.[1] *See* ECF No. 168-1. The subpoena sought various confidential and/or irrelevant documents pertaining to Dr. Moline, including:

- Records relating to compensation paid to Dr. Moline
- Transmittal of information to Dr. Moline that she relied upon for her publications, including the 2020 study
- Communications between Dr. Moline, Dr. Gordon, Sean Fitzgerald and James Millette
- Communications by Dr. Moline regarding the Gordon article entitled "Asbestos in the commercial cosmetic talcum powder as a cause of mesothelioma in women"
- Communications by Dr. Moline with Plaintiff's counsel regarding her publications, including her 2020 article.

*See id*.

Plaintiff filed a motion to quash the subpoena on September 3, 2020.  *See* ECF No. 168. Plaintiff objected to each request on a variety of bases, but also argued that Defendant's use of a Rule 45 subpoena was an improper way to obtain a retained expert's files. *See, e.g., Hartford Fire Ins. v. Pure Air on the Lake Ltd*., 154 F.R.D. 202, 208 (N.D. Ind. 1993) (holding a party cannot use Rule 45 to circumvent Rule 26(b)(4) as a method to obtain an expert witness's files); *Marsh v. Jackson*, 141 F.R.D. 431, 432 (W.D. Va. 1992) (noting that subpoena for production of documents directed to non-party expert retained by a party is not within ambit of Fed. Rule 45(c)(3)(8)(ii)).

---

[1] Separate and apart from her role as an expert witness, Dr. Moline has served as Director of Occupational and Environmental Medicine Center of Long Island at Northwell Health, a hospital in New York, providing occupational health services to patients in the New York metropolitan area since 2013. *See* ECF No. 168-2, Moline Curriculum Vitae.

On September 11, 2020, Plaintiff's counsel's office sent an email to all Defendants' counsel regarding rescheduling the date of Dr. Moline's deposition pending the Court's ruling on Plaintiff's motion to quash. *See* Exhibit D, Email Communication Between Counsel. In response, Defendant's counsel, Mr. Thackston, stated that AII was willing to take the deposition without the court ruling "and without full compliance with the subpoena." Mr. Thackston added, "As you know, Northwell has confirmed that the Betty Bell case is one of the cases in Dr. Moline's study." *See id*. But Plaintiff and his counsel did not know that. Indeed, Plaintiff and his counsel were completely unaware that Northwell Health had responded in any way to the subpoena and/or produced any documents in this case. Further communications with Northwell Health's outside counsel and Mr. Thackston revealed that Mr. Thackston had provided Northwell with a "HIPAA authorization." *See* Exhibit D, Email Communication Between Counsel; Exhibit E, Email Communication Between T. Kroczynski and L. Kagan. Upon receipt of the authorization from Mr. Thackston, Northwell Health produced a single document, which appears to be a spreadsheet identifying the 33 human subjects of Dr. Moline's study. *See* Exhibit E, Email Communication Between T. Kroczynski and L. Kagan and attachment. All information except that relating to Betty Bell was redacted. *See id.*

While Plaintiff has not seen the actual authorization Mr. Thackston provided to Northwell Health, Plaintiff assumes it is the "HIPAA Compliant Authorization Form Pursuant to 45 FR 164-508" that Plaintiff provided to Defendant earlier in this case to enable the parties to obtain the relevant medical records from Ms. Bell's health care providers. See Exhibit F, Authorization. It authorizes the disclosure of protected medical information "for the purpose of review and evaluation in connection with a legal claim." *Id.* The Authorization specifies the information to be disclosed:

Including the following:
-All medical records, including in-patient, out-patient and emergency room treatment, all clinical charts, reports, documents, correspondence, test results, statements, questionnaires/histories, office and doctor's handwritten notes, and records received by other physicians.
-All autopsy, laboratory, histology, cytology, pathology, radiology, CT scan, MRI, echocardiogram and cardiac catheterization reports.
-All radiology films, mammograms, myelograms, CT scans, photographs, bone scans, pathology/cytology/histology/autopsy/immunohistochemistry specimens, cardiac catheterization videos/CDs/films/reels, and echocardiogram videos.
-All pharmacy/prescription records including NDC numbers and drug information handouts/monographs.
-All billing records including all statements, itemized bills and insurance records.

*Id.* The production made by Northwell Health was not covered by the categories in the

Authorization. The Authorization further states that the healthcare provider is authorized to release

the protected health information to Pike Photocopy, Inc. *Id.* It does not authorize disclosure directly

to any Defendant or Defendant's counsel.

Plaintiff's counsel has communicated with both Mr. Thackston as well as Mr. Thomas

Kroczynski, Northwell Health's counsel, asserting the disclosure was unauthorized and improper.

To Plaintiff's knowledge, the document has not been clawed back.

## LEGAL ARGUMENT AND AUTHORITY

I.  **The Court Should Enter a Protective Order Forbidding Discovery and Inquiry into Identity of Human Study Subjects and Requiring All Copies of Documents Identifying Betty Bell as a Subject Be Destroyed.**

Plaintiff requests that the Court enter a Protective Order pursuant to Federal Rule 26(c) and

Local Rule 26.2 forbidding discovery and/or inquiry into the identity of the human subjects studied

in Dr. Moline's article, or disclosure thereof.  Specifically, Plaintiff requests that the Court prohibit

Defendants, their counsel and any witnesses be prohibited from disclosing that Ms. Bell was a

5

subject in Dr. Moline's peer-reviewed study in this case or any other, and that Defendants and their counsel be prohibited from seeking discovery into the identity of any of the study subjects. Fed. R. Civ. P. 26(c) (court may issue an order forbidding the disclosure or discovery, forbidding inquiry into certain matters or limiting the scope of disclosure or discovery to certain matters, and requiring that confidential research, development or commercial information not be revealed). Plaintiff further requests that the Court order all copies of the spreadsheet identifying Ms. Bell as a study subject be destroyed.

Good cause exists for such a protective order prohibiting the disclosure of the identity of Dr. Moline's study subjects, including Ms. Bell. The identity of human subjects of medical research and studies is protected, confidential information. Indeed, the Department of Health and Human Services and the Food and Drug Administration Regulations include provisions to protect the privacy of human research subjects. Both agencies require that an institutional review board determine whether there are "adequate provisions to protect the privacy of subjects and to maintain the confidentiality of data." 45 CFR 46.111(a)(7) and 21 CFR 56.111(a)(7).

In *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982), the plaintiffs alleged that they developed toxic shock syndrome as a result of their use of certain P&G tampons. A CDC report suggested a link between the use of tampons and the occurrence of TSS. *Id*. at 59. P&G sought discovery of records and documents pertaining to the CDC study, including personal identifying information about the women involved in the study, arguing that it needed such information to enable it to contact the subjects of the studies to determine the extent to which the studies were properly conducted. *Id*. at 60. The court granted a motion for protective order, ordering that all personal identifying information about the participants in the studies be redacted from documents produced:

The court is of the opinion that the movant in the case *sub judice* has made a sufficient showing of good cause to merit the entry of a protective order. The information obtained by the CDC from its subjects in the studies on TSS is quite personal and sensitive. It is imminently appropriate to protect the subjects of the CDC studies, who may have no connection with this lawsuit, from questions by strangers about such personal matters. Moreover, Procter & Gamble has not sufficiently demonstrated that it is necessary to have the personal identifying information about the subjects of the CDC studies in order to attack the validity of the studies. From a review of the affidavits filed by the parties in support of their respective positions, it appears that the validity of the CDC studies can be addressed without actually contacting the subjects. Accordingly, there has been an insufficient showing of necessity to warrant the invasion of the personal privacy of the participants of the CDC studies. *Id*. at 60-61.

Similarly, in *Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646 (D.S.C. 1989), the plaintiff alleged that she contracted HIV from a unit of blood collected and processed by the American Red Cross Blood Services. *Id*. at 649. The plaintiffs sought discovery into the identity of the donor of the blood. The Red Cross had assured the donor that his identity and medical history would remain confidential. *Id*. at 651-52. The court evaluated the donor's privacy interests as well as the ramifications that the erosion of confidentiality may have on the blood supply and its safety. *Id*. at 642-53. The court ultimately protected the identity of the donor, holding that "society's interest in maintaining an adequate and safe supply of volunteer blood, coupled with the donor's interest in privacy, far outweighs plaintiffs' interest in questioning the donor." *Id*. at 657.

Moreover, other experts in talc asbestos litigation have expressed similar views, including defense experts. Dr. Gregory Diette, M.D., of Johns-Hopkins, recently testified on behalf of Johnson & Johnson regarding the need to protect the identity of the subjects of Dr. Moline's study:

> Q.   And so it would be unethical and you would have as a medical doctor some real concerns if the individual, these 33 patients, if their identifies were actually disclosed publicly?

A.  Well, so actually disclosed and maybe there's some reason to do that but that's why we have ethics boards.  Right?  And that's why research goes through a process.

So I don't know of anybody who's done it but you can certainly approach your ethics board and say, you know, I would like to reveal the identity of these people that I'm putting into a medical journal, is that okay.

And they could say it's okay or it's not okay.  And if they did, there would be an informed consent process.  You know, not just signing a consent form but with a real consent process for that.  So yes, this is unusual.  It's not what I'm familiar with my colleagues doing routinely.

Q.  Why is that important?  Why is it important to go through that ethics board process and to get informed consent, a real informed consent before disclosing the identity of human subjects in this type of publication?

A.  This is a medical research about a patient.  We have rules about how to do human subjects for certain things and they're meant to protect the study subjects themselves and protections are at various levels depending on what the potential for harm.

But generally speaking, there's one of the many things that goes into thinking about preparing a report -- excuse me, about human subjects is whether or not you're going to be revealing their identity.

*See* Exhibit G, Deposition of Dr. Gregory Diette in *Lopez v. Brenntag N.A., Inc*., dated June 19, 2020, at 118:10-119:16.

Likewise, Dr. Victor Roggli, M.D., Ms. Bell's diagnosing pathologist and expert witness for defendants in asbestos litigation, has authored multiple published case studies on human subjects and testified as to his concerns regarding his case files. Dr. Roggli raised broad First Amendment issues, including protection of freedom of speech/press, and HIPAA issues regarding the privacy of the individual subjects, and added that:

I also have objection to it because in -- personally, because in the 25 years that I've been testifying as an expert in federal and state courts these requests go far beyond anything that have been requested of myself or my colleagues that I'm aware of, and I don't think that they are appropriate investigation into scientific merit or arguments that are made in the scientific literature…

8

*See* Exhibit H, Deposition of Dr. Victor Roggli in *Morrison v. Alfa Laval, Inc.,* dated February 3, 2011, at 42:9-45:21

The disclosure of the identity of human subjects would have a chilling effect on further research. The Court should enter a protective order prohibiting all inquiry and discovery into the identity of the human subjects of Dr. Moline's study, forbidding disclosure of the identity of any study subjects (including Ms. Bell), and requiring all parties, counsel and witnesses destroy all documents identifying any such subjects.

II.     **The Court Should Sanction Mr. Robert Thackston For His Bad Faith Actions.**

Plaintiff also requests the Court sanction Mr. Thackston, counsel for AII, pursuant to its inherent authority and/or 28 U.S.C.A. § 1927 for his unethical and deliberate misuse and/or misrepresentation of a "HIPAA Authorization."

The Court has inherent authority to impose sanctions against a party who "has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Thomas v. Ford Motor Co.*, 244 F. App'x 535, 538 (4th Cir. 2007); *see also Chambers v. NASCO, Inc.*, 501 U.S. 32, 111 S. Ct. 2123, 115 L. Ed. 2d 27 (1991). This authority "extends to a full range of litigation abuses" including bad faith**.** *Id.*

Mr. Thackston has acted in bad faith in his attempts to circumvent confidentiality assertions in obtaining the protected identity of the human subjects of Dr. Moline's peer-reviewed study. Aware of Dr. Moline's confidentiality assertion with respect to the identity of her study subjects, Mr. Thackston subpoenaed documents related to Dr. Moline from her employer, Northwell Health. *See* ECF No. 168-1. However, the subpoena is vague and does not expressly request the identity of Dr. Moline's study subjects, instead seeking "correspondence, emails and other means of transmittal of information to Dr. Moline, from any source, of the materials and/or data that Dr.

9

Moline relies or relied upon for her publications." *Id*. at Attachment A, No. 2. Furthermore, the subpoena does not explicitly seek any records related to Betty Bell. *Id.* Upon receiving notice of the subpoena, Plaintiff filed a motion to quash the subpoena. *See* ECF No. 168.

Mr. Thackston continued to communicate with Northwell Health. With full knowledge of Plaintiff's motion to quash and objections to the subpoena requests, Mr. Thackston presumably revised the subpoena requests during discussions with Northwell Health without notice to Plaintiff. Northwell Health has stated that it produced one document, a list created by Dr. Moline of study subjects with all information save that related to Betty Bell redacted, to Mr. Thackston in response to the subpoena, but the document is not responsive to the subpoena as served. *See* Exhibit E, Email Communication Between T. Kroczynski and L. Kagan and attachment. The subpoena did not seek information related to Betty Bell, nor did it seek documents created by Dr. Moline in conjunction with her study. See ECF No. 168-1. Counsel for Northwell Health also explicitly noted that a HIPAA authorization was provided by counsel for AII (Mr. Thackston), implying the production of the document was dependent on such authorization. *See* Exhibit E, Email Communication Between T. Kroczynski and L. Kagan.

Mr. Thackston knows that Betty Bell did not seek or receive medical care from Northwell Health. Nevertheless, Mr. Thackston provided a HIPAA authorization to Northwell Health for Ms. Bell's medical records. See Exhibit E, Email Communication Between T. Kroczynski and L. Kagan; Exhibit D, Email Communication Between Counsel. On its face, the Authorization states that the disclosure of protected medical information is "for the purpose of review and evaluation in connection with a legal claim."[2] But Mr. Thackston did not provide the authorization to

---

[2] As noted supra, Plaintiff has not seen or received a copy of the authorization actually provided to Northwell Health, but Plaintiff assumes Mr. Thackston used the authorization Plaintiff provided earlier in the case to facilitate the collection of Ms. Bell's medical records, attached as Exhibit F.

Northwell Health to obtain Betty Bell's medical records for review and evaluation in connection with her legal claim against AII. Rather, Mr. Thackston intentionally misused the authorization to obtain research-related records of an expert witness in an attempt de-anonymize the human subjects of a peer-reviewed study. Indeed, Mr. Thackston admitted he was not seeking medical records, acknowledging that Defendant already has any materials Dr. Moline has regarding Ms. Bell. *See* Exhibit D, Email Correspondence between R. Thackston and L. Kagan.  Mr. Thackston further admitted that the "release" does not cover materials related to Dr. Moline's study, including the document produced. *See id.* ("We have a general medical release entitling us to all medical related records. These materials aren't in that category but even if they were we would be entitled to them").

Mr. Thackston provided Northwell Health with a "HIPAA Authorization" for Betty Bell not to obtain medical records for evaluation in connection with Plaintiff's claim. Rather, Mr. Thackston improperly and in bad faith used a HIPAA authorization to breach the confidentiality of study subjects. The Court should exercise its inherent authority to sanction Mr. Thackston for his unethical and bad faith behavior.

In addition or in the alternative, Mr. Thackston should be sanctioned pursuant to 28 U.S.C. § 1927. Section 1927 provides:

> Any attorney or other person admitted to conduct cases in any court of the United States . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct.

28 U.S.C.A. § 1927. "Section 1927 authorizes sanctions only when counsel's bad faith conduct multiplies the proceedings, resulting in excess costs for the opposing party." *Thomas v. Ford Motor Co.*, 244 F. App'x at 539.

Mr. Thackston's deceptive and unethical actions have resulted in excessive costs to Plaintiff. Plaintiff has been forced to file his motion to quash and the present motion for protective order. Furthermore, Plaintiff's counsel has expended considerable time and energy communicating with Mr. Thackston and counsel for Northwell Health. Because Mr. Thackston's bad faith actions have unreasonably multiplied the proceedings and resulted in excess costs, the Court should sanction Mr. Thackston pursuant to Section 1927.

## CONCLUSION

WHEREFORE, Plaintiff respectfully prays that his Motions be granted and that the Court enter a Protective Order prohibiting discovery or inquiry into and disclosure of the identity of the human subjects of Dr. Moline's peer-reviewed study, and requiring all copies of the document disclosing Betty Bell as a subject be destroyed and not be disseminated in this or any other case or forum. Plaintiff further requests the Court sanction Mr. Thackston for his bad faith use of a HIPAA authorization to improperly break the ethical boundaries of confidentiality of study subjects.

Dated:  September 15, 2020

Respectfully submitted,

*/s/Leah C. Kagan*
Leah C. Kagan
New Jersey Bar No. 013602009
Attorney for Plaintiff
**SIMON GREENSTONE PANATIER, PC**
1201 Elm Street, Suite 3400
Dallas, TX 75270
214-276-7680
lkagan@sgptrial.com

*/s/ William Marc Graham*
William Marc Graham
NC State Bar 17972
**WALLACE AND GRAHAM, PA**
525 N. Main Street
Salisbury, North Carolina 28144

12

704-633-5244
bgraham@wallacegraham.com

*Local Civil Rule 83.1 Counsel*
**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF CONFERENCE

Pursuant to Local Rule 3.7, I hereby certify that I, counsel for the movant, telephonically conferred with Robert Thackston, counsel for AII, and Thomas Kroczynski, counsel for non-party Northwell Health, over the course of September 11-14, 2020 in a good faith effort to resolve the issues. The parties were unable to resolve the issues.

*/s/ Leah C. Kagan*
Leah C. Kagan

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on September 15, 2020, Plaintiff filed the foregoing Instrument via ECF filing which will serve all counsel of record in the above-referenced matter.

*/s/Leah C. Kagan*
Leah C. Kagan

13