UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell, Deceased | : : : | |
| Plaintiffs, | : : | File No.: 1:17-cv-00111 |
| vs. | : : | |
| American International Industries Inc., et al. | : : : | |
| Defendants. | | |

**<u>PLAINTIFF'S REPLY TO DEFENDANT AND THIRD-PARTY PLAINTIFF AMERICAN INTERNATIONAL INDUSTRIES' OPPOSITION TO PLAINTIFF'S MOTION TO QUASH THE SUBPOENA TO NORTHWELL HEALTH, INC.</u>**

COMES NOW Plaintiff and files this Reply to Defendant American International Industries, Inc's ("AII") Opposition to Plaintiff's Motion to Quash the Subpoena to Northwell Health, Inc. ("Northwell")[1], and in support thereof would respectfully show the following:

**<u>INTRODUCTION</u>**

AII served a subpoena on Northwell on August 20, 2020, seeking documents related to Plaintiff's expert, Dr. Jacqueline Moline. *See* ECF No. 168-1. Plaintiff filed a timely motion to quash the subpoena on September 3, 2020. ECF No. 168.

The same night that Plaintiff filed his motion to quash the subpoena, Mr. Robert Thackston, AII's counsel, emailed counsel for Northwell, stating that he agreed to "allow 14 days to respond to the subpoena with information on cases other than the Betty Bell case (in which the subpoena

---

[1] Plaintiff notes that AII's Opposition appears to respond, at least in part, to Plaintiff's Emergency Motion for Protective Order and Sanctions (ECF No. 179). Plaintiff incorporates the arguments made in its Motion for Protective Order herein.

1

was issued)" and added that he would forward medical releases the following day. ECF No. 188-7, at p.5. Mr. Thackston concluded by saying "[a]ssuming that Northwell can confirm no later than 5 pm EDT, September 10, 2020 that Betty Bell is one of the 33 cases discussed in Dr Moline's article attached to the subpoena, then we are willing to extend the deadline to respond to the balance of the subpoena until September 16, 2020." *Id*. After Plaintiff filed his motion to quash Mr. Thackston forwarded an authorization. Northwell's counsel communicated with Defendant's counsel multiple times regarding the authorization, requesting confirmation of Lloyd Bell's appointment as executor and for a revised authorization addressed to Northwell.

On September 11, 2020, AII's counsel sent what it described as the "unrestricted authorization for the release of Betty Bell's medical records." ECF No. 188-7, at 2. The same day, Mr. Thackston responded to Plaintiff's counsel that "[a]s you know, Northwell has confirmed that the Betty Bell case is one of the cases in Dr. Moline's study." ECF No. 179-4, 182-4. But Plaintiff's counsel did not know that Northwell had responded to the subpoena at all, much less that Northwell had confirmed Ms. Bell was a subject of Dr. Moline's study. Indeed, Plaintiff's counsel did not receive the produced document until September 12. ECF No. 179-5, 182-5.

On September 15, 2020, Plaintiff filed a motion for protective order, requesting an order prohibiting discovery or inquiry into and the disclosure of the identity of the human subjects of Dr. Moline's peer-reviewed study, and requiring all documents disclosing Ms. Bell as a subject be destroyed and not disseminated in this or any other case or forum. ECF No. 179.

In its Opposition to Plaintiff's Motion to Quash the Subpoena to Northwell, AII argues that the discovery it seeks from Northwell is "crucial" to its ability to "prove Dr. Moline's claim [that cosmetic talcum powder causes mesothelioma] is false." AII argues that Mrs. Bell filed workers' compensation claims alleging alternate asbestos exposure, but that Dr. Moline's study asserts that

none of the human subjects, including Ms. Bell, had any alternate exposure to asbestos. Furthermore, AII argues that HIPAA does not apply and/or was satisfied by the authorization it provided to Northwell, and that the Court should order the disclosure of the identities of the remaining 32 human subjects.

As set forth below, the identity of the human subjects in Dr. Moline's study is protected, confidential information. The identities of the human subjects are not critical to Defendant's ability to cross-examine Dr. Moline on her opinions in this case. Indeed, AII cited no case wherein the identity of human subjects in an anonymized, peer-reviewed study was deemed discoverable. Moreover, Defendant's counsel provided Northwell with an authorization for medical records related to Plaintiff's legal claim, under the guise that it authorized the disclosure of the human subjects of Dr. Moline's study. It did not no such thing.

## ARGUMENT

I. **The identities of the human subjects in Dr. Moline's study are confidential, protected information and are not necessary for Defendant to effectively cross-examine Dr. Moline regarding her study or opinions in this case.**

   A. *Defendant should not be permitted to rewrite or redefine the documents requested in the subpoena.*

As an initial matter, the subpoena AII served on Northwell does not request the identity of Dr. Moline's study subjects. *See* ECF No. 168-1. Rather, the subpoena seeks various confidential and/or irrelevant documents pertaining to Dr. Moline, including:

- Records relating to compensation paid to Dr. Moline
- Transmittal of information to Dr. Moline that she relied upon for her publications
- Communications between Dr. Moline, Dr. Ronald Gordon, Sean Fitzgerald and James Millette
- Communications by Dr. Moline regarding the Gordon article entitled "Asbestos in the commercial cosmetic talcum powder as a cause of mesothelioma in women"
- Communications by Dr. Moline with Plaintiff's counsel regarding her publications.

3

*See* ECF No. 168-1. Notably, the subpoena does not explicitly seek any information related to Betty Bell. *Id*. Instead, the subpoena requests "correspondence, emails and other means of transmittal of information to Dr. Moline, from any source, of the materials and/or data that Dr. Moline relies or relied upon for her publications." *Id*. It does not request documents created by Dr. Moline in conjunction with her study, such as a "key" to identify the study subjects. *Id*.

After Plaintiff filed his motion to quash the subpoena and without notice to Plaintiff's counsel, AII's counsel appears to have verbally revised the subpoena requests, clarifying to Northwell's counsel that the primary information being sought was confirmation that Ms. Bell was a subject in Dr. Moline's study. ECF No. 188-7, at 5. Such information is not requested in the subpoena. Nor is the single document that Northwell has since produced– a list created by Dr. Moline of study subjects with all information save that related to Betty Bell redacted-- responsive to the subpoena requests. *See* ECF No. 179-5, 184-5. Defendant should not be permitted to unilaterally redefine and rewrite its subpoenaed requests, particularly after Plaintiff filed a motion to quash and objections to the original requests.

> B.    ***The identity of human subjects is confidential information that should be protected***.

As discussed in Plaintiff's Motion for Protective Order, the identity of human subjects of scientific studies is confidential, protected information. Defendant pointed to no authority wherein the identities of the human subjects of a published, peer-reviewed study were deemed discoverable. The case law instead indicates that such information is confidential and should be protected. In *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982), P&G sought discovery of documents pertaining to a CDC study, including personal identifying information about the women involved in the study, arguing that it needed such information to enable it to contact the subjects to determine the extent to which the studies were properly conducted. *Id*. at 60. The court granted

4

a motion for protective order, ordering that all personal identifying information about the participants in the studies be redacted from documents produced as there was an "insufficient showing of necessity to warrant the invasion of personal privacy of the participants of the CDC study." *Id.* at 60-61. *See also Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646 (D.S.C. 1989).

Moreover, other experts in talc asbestos litigation have expressed similar views, including defense experts. Dr. Victor Roggli, M.D., Ms. Bell's diagnosing pathologist and expert witness for defendants in asbestos litigation, has authored multiple published case studies on human subjects and testified as to his concerns, raising broad First Amendment issues, including protection of freedom of speech/press, and HIPAA issues regarding the privacy of the subjects, and added that:

> I also have objection to it because in -- personally, because in the 25 years that I've been testifying as an expert in federal and state courts these requests go far beyond anything that have been requested of myself or my colleagues that I'm aware of, and I don't think that they are appropriate investigation into scientific merit or arguments that are made in the scientific literature…

*See* ECF No. 179-8, at 42:9-45:21. Likewise, Dr. Gregory Diette, M.D., recently testified on behalf of Johnson & Johnson regarding the need to protect the identity of the subjects of Dr. Moline's study, particularly without informed consent of the subjects. *See* ECF No. 179-7, at 118:10-119:16. The disclosure of the identity of human subjects would have a chilling effect on further research. The Court should quash the subpoena to the extent it seeks such information.

Furthermore, another court has been confronted with whether the identity of Dr. Moline's human subjects should be disclosed and has determined that such a disclosure would be improper and inappropriate. During the trial of the consolidated *Johnson* and *Lashley* cases in the Superior Court of New Jersey, AII's counsel, Mr. Thackston, cross-examined Dr. Moline regarding the identity of the human subjects in her study. The court permitted Mr. Thackston to question Dr.

Moline regarding her study methodology, but held that the identification of a study subject ("Ms. D" in Dr. Moline's Congressional testimony, the same "Ms. D" referenced in Defendant's Opposition)—even only to Mr. Thackston—would be improper and inappropriate:

> THE COURT: Didn't that question you just asked seek to identify the person?
>
> MR. THACKSTON: Not the person, but the case. We can call it case B, right? It's not a matter of --
>
> THE COURT: You mean you want to know whether this is Miss D that she testified about?
>
> MR. THACKSTON: Yes.
>
> THE COURT: Well, then that would be identifying the person to you.
>
> MR. THACKSTON: Exactly. Well, she should identify the person to me.
>
> THE COURT: Why?
>
> MR. THACKSTON: Well, because she made a representation in the public literature that there's no other exposure to asbestos, right? Well, I'm in the case and I know that not to be true. And I'm not trying to malign her about it, but she's – her protocol didn't involve trying to get any other information and whether there is information from public sources that (inaudible). I should be entitled to cross-examine her on that. But otherwise, it's completely (inaudible). I'm not saying she did anything wrong. I'm just saying based on your methodology, you didn't know this woman has a sworn complaint saying she was exposed to thermal insulation at her workplace.
>
> THE COURT: Thank you.
>
> *I have no issue with you cross-examining individually with regard to all of the different reports that you have or that she may have referenced in that paper that she co-authored, but seeking to identify is inappropriate and so I'm not going to permit that.*
>
> MR. THACKSTON: I'm not going to identify the person at all.
>
> THE COURT: No, but that question would seek to identify to you, and that I'm not going to permit. I don't have any issue with individual questions, but that question I'm not going to allow.
>
> MR. THACKSTON: Well, I'm going to try -- I'm not exactly sure what I'm allowed to do, but I'll try my best to --
>
> THE COURT: Well, hold on. What I'm saying is I have no issue with you cross-examining with regard to any report that you have, any person that's mentioned by type or case of description in her study, in her published paper or the testimony she gave to congress.

6

> ***But you're asking Dr. Moline to testify as to whether this person is that person that you referred to, that I will not permit because that is seeking the identification of who that person may be to you, and that I will not permit. It's inappropriate. It's improper.***

See **Exhibit A,** Moline Trial Testimony in *Johnson/Lashley*, March 11, 2020, at 218:24-221:2 (emphasis added).

Defendant is seeking the same confidential and protected information that the New Jersey court held was "inappropriate" and "improper" to disclose. This Court should quash Defendant's subpoena to the extent it seeks disclosure of the identities of Dr. Moline's human subjects.

### II. The identity of the human subjects in Dr. Moline's study is not crucial to Defendant's claims.

Defendant asserts that the identity of the study subjects is "critical" and that the intrusion into confidential, protected information regarding human research subjects is justified. But Defendant's "justification" for its overreaching and unjustified intrusion does not withstand scrutiny. Defendant asserts that Dr. Moline did not consider available information regarding alternate exposures for at least one human subject, Mrs. Bell, and that Defendant should be permitted discovery into the identity of all the human subjects to determine the reliability of Dr. Moline's assertion that her subjects had no alternate exposures.[2]

Specifically, Defendant argues that Mrs. Bell's workers' compensation claims alleging exposure to asbestos refute the central claim in Dr. Moline's paper. ECF No. 188 at 8-9. Defendant asserts that the confirmation of Mrs. Bell as a study subject proves the unreliability of Dr. Moline's study and its premise that the human subjects, including Mrs. Bell, had no alternate exposures. Yet Defendant ignores Mrs. Bell's testimony that her workers' compensation claims

---

[2] Defendant argues that it should be permitted to confirm that Mrs. Bell was a subject in Dr. Moline's study, and also permitted to obtain the identities of the remaining 32 human subjects. Defendant provides no credible basis for this intrusion into non-parties' privacy to enable a fishing expedition regarding potential alternate exposures.

were denied. Mrs. Bell testified that the North Carolina Industrial Commission had denied her claims because there was no proof that she was exposed to asbestos. *See* **Exhibit B,** De Bene Esse Deposition of Betty Bell, June 22, 2016, at 45:16-48:6, 95:22-98:16. Indeed, the North Carolina Self-Insurance Security Association "denie[d] that [Ms. Bell] had the requisite exposure to asbestos and/or asbestos-containing materials such as to have caused any occupational disease." *Id.* at 97:8-98:9. Moreover, to the extent Defendant argues that Mrs. Bell's workers' compensation claims were not considered by Dr. Moline, Defendant is wrong. Dr. Moline relied upon the deposition testimony of her study subjects, which, in Mrs. Bell's case, discussed her workers' compensation claims, including the failure to prove asbestos exposure.

Defendant can question and/or cross-examine Dr. Moline about her study and/or her opinions in this case without knowing or disclosing the identity of her human subjects, including whether Mrs. Bell was a study subject. Indeed, Mr. Thackston recently cross-examined Dr. Moline exhaustively regarding her study in the *Johnson/Lashley* case. *See* **Exhibit A,** at 195:9-234:14**.** Mr. Thackston specifically questioned Dr. Moline regarding whether she considered the workers' compensation claims filed on Ms. Bell's behalf:

> Q And you wouldn't know if -- in another context, outside of the particular lawsuit where they were discussing the claims and questions were asked, you wouldn't know whether she filed another claim or someone on her behalf filed another claim in another context saying she was exposed to asbestos on her job?
>
> You just wouldn't have that information, would you?
>
> A If she had made -- are you saying like a workers' compensation claim?
>
> Q Yes.
>
> A I mean, typically I'm provided with all that kind of information or an individual is asked about that during their deposition, where they're asked if they've ever filed any type of lawsuit or filed a workers' compensation claim. So I might not have had all the documents, but I would have had some information.

8

> Q   Would that be relevant if somebody had a worker's comp claim where they were saying they were exposed to asbestos on-the-job?
>
> A   If they said that they were exposed *and they had exposure*, sure.

*Id*. at 222:-223:2 (emphasis added). Dr. Moline clarified that she relied upon deposition testimony, including testimony regarding other claims of asbestos exposure, and concluded that workers' compensation claims may be relevant where the subject had exposure. *Id.* Here, Mrs. Bell did not have on-the-job asbestos exposure—so her workers' compensation claims were not relevant.

Defendant is free to challenge the reliability of Dr. Moline's study through questions to Dr. Moline regarding her methodology and the types of information she considered (or did not consider). There is no need to invade the privacy of the human subjects, and Defendant should not be permitted to do so.

**III.    The HIPAA authorization provided to Northwell did not authorize the release of the identity of study subjects.**

Before Northwell produced a document allegedly indicating that Mrs. Bell was one of Dr. Moline's human subjects, it required Defendant to provide a HIPAA authorization. *See* ECF No. 188-7. Mr. Thackston provided Northwell with a HIPAA authorization for Ms. Bell's medical records. *See id*. Plaintiff originally provided the authorization in this case to facilitate the collection of Mrs. Bell's medical records related to her claims in this case. On its face, the Authorization states that the disclosure of protected medical information is "for the purpose of review and evaluation in connection with a legal claim." ECF No. 179-6.

But Mr. Thackston did not provide the authorization to Northwell to obtain Betty Bell's medical records for review and evaluation in connection with her legal claim against AII. Rather, Mr. Thackston intentionally misused and/or misrepresented the authorization in order to obtain research-related records of an expert witness in an attempt de-anonymize the human subjects of a peer-reviewed study. Indeed, Mr. Thackston has admitted he was not seeking medical records,

9

acknowledging that Defendant already has any materials Dr. Moline has regarding Ms. Bell. *See* ECF No. 179-4, 182-4. Mr. Thackston further admitted that the "release" does not cover materials related to Dr. Moline's study, including the document produced. *See id.* ("We have a general medical release entitling us to all medical related records. These materials aren't in that category but even if they were we would be entitled to them"). The human subjects did not consent to their anonymity being undone and their identities disclosed. Defendant's attempts to obtain confidential and private information through the misuse or misrepresentation of an authorization should not be permitted.

## CONCLUSION

WHEREFORE, Plaintiff respectfully prays that his Defendant's subpoena to Northwell be quashed, and that the Court further enter a Protective Order prohibiting discovery or inquiry into and disclosure of the identity of the human subjects of Dr. Moline's peer-reviewed study, and requiring all copies of the document disclosing Betty Bell as a subject be destroyed.

Dated: September 23, 2020

Respectfully submitted,

*/s/ Leah C. Kagan*
Leah C. Kagan
New Jersey Bar No. 013602009
Attorney for Plaintiff
**SIMON GREENSTONE PANATIER, PC**
1201 Elm Street, Suite 3400
Dallas, TX 75270
214-276-7680
lkagan@sgptrial.com

*/s/ William Marc Graham*
William Marc Graham
NC State Bar 17972
**WALLACE AND GRAHAM, PA**
525 N. Main Street

Salisbury, North Carolina 28144
704-633-5244
bgraham@wallacegraham.com

*Local Civil Rule 83.1 Counsel*
**ATTORNEYS FOR PLAINTIFF**

## **CERTIFICATE OF WORD COUNT**

      Pursuant to Local Rule 7.3(d), I certify that Plaintiff's Reply to Defendant's Opposition to Plaintiff's Motion to Quash the Subpoena to Northwell Health, Inc. contains 3,112 words, excluding the parts of the document that are exempted by the rule. This certificate was prepared in reliance on the word-count function of the word- processing system (Microsoft Word) used to prepare the document.

                                       */s/ Leah C. Kagan*
                                       Leah C. Kagan

## **CERTIFICATE OF SERVICE**

      The undersigned hereby certifies that on September 23, 2020, the foregoing Instrument was filed via ECF filing which will serve all counsel of record in the above-referenced matter.

                                       */s/ Leah C. Kagan*
                                       Leah C. Kagan