IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LLOYD BELL, individually and      )
as Executor of the Estate of      )
Betty Whitley Bell, Deceased,     )
                                  )
        Plaintiff,                )
                                  )
        v.                        )          1:17CV111
                                  )
AMERICAN INTERNATIONAL            )
INDUSTRIES, et al.,               )
                                  )
        Defendants/Third-Party    )
        Plaintiff,                )
                                  )
        v.                        )
                                  )
NESLEMUR COMPANY, f/k/a           )
THE NESTLE-NEMUR COMPANY,         )
                                  )
        Third-Party Defendant.    )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

        Presently before the court is Third-Party Defendant

Neslemur Company's ("Defendant" or "Neslemur") Motion to Dismiss

for Insufficient Service of Process and Lack of Personal

Jurisdiction, Motion to Strike Third-Party Complaint, and Motion

to Dismiss, Abstain or Stay in Favor of Prior Pending

Litigation. (Doc. 97.) Neslemur filed a brief in support of its

Motion, (Doc. 98); Third-Party Plaintiff American International

Industries, Inc. ("Plaintiff" or "AII") filed a response in

opposition, (Doc. 103); and Neslemur filed a reply, (Doc. 106).

Also pending is AII's Motion for Leave to File a Sur-Reply in Opposition to Neslemur's Motion to Dismiss, (Doc. 125). This Motion will be denied. Consideration of the proposed sur-reply, (Doc. 125-1), is unnecessary for ensuring fairness, as the court's analysis, absent the sur-reply, renders its arguments moot.

For the reasons stated herein, this court will deny Defendant's Motion.

## I.   FACTUAL AND PROCEDURAL BACKGROUND

### A.   Factual Background

Hairdresser Betty Whitley Bell ("Mrs. Bell") allegedly used Clubman talcum powder for over thirty years, beginning in the 1970s and continuing through 2009. (Amended Complaint ("Bell Am. Compl.") (Doc. 44) ¶ 9(a).) Mrs. Bell used the talcum powder as a student, ((Doc. 104-2 at 9)[1], and during her employment at hair salons, (id. at 11, 13), including her own home hair salon, (id. at 14-15). All of Mrs. Bell's usage of Clubman powder took place in North Carolina. (Doc. 104-4.) Mrs. Bell was eventually diagnosed with mesothelioma. (Doc. 104-3 at 3.) Original Plaintiff Lloyd Bell ("Mr. Bell") brought a claim against AII,

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

(Bell Compl. (Doc. 1)), which purchased the Clubman brand from Neslemur on August 13, 1987, (Def./Third-Party Pl.'s Compl. ("Third-Party Compl.") (Doc. 86) at ¶ 10).

When AII purchased the Clubman brand from Neslemur, the Asset Purchase Agreement, (Purchase Agreement (Doc. 86-1)), explicitly provided that Neslemur would indemnify AII for "any of Neslemur's pre-existing liabilities." (Third-Party Pl.'s Mem. of Law in Opp'n. to Def.'s Mot. to Dismiss and Mot. to Strike ("Third-Party Pl.'s Br.") (Doc. 103) at 5.) Specifically, the Purchase Agreement states:

> [T]he Seller . . . also agrees to indemnify and hold the Purchaser harmless against any and all claims, liabilities or obligations which may arise out of or result from the use of any products or goods sold by the Seller before the Closing, and against all actions, suits, proceedings, judgments, costs and expenses connected with any of the foregoing; provided, however, that the Purchaser shall timely notify the Seller . . . of any such claim and shall permit the Seller . . . at [its] election, to negotiate and settle such claim, and shall provide such records and witnesses as may be necessary to litigate such claim.

(Purchase Agreement (Doc. 86-1) at 23) AII alleges that "a significant portion of [Mr. Bell]'s allegations in the underlying action relate to a product that was made and/or sold by Neslemur." (Third-Party Pl.'s Br. (Doc. 103) at 5.)

B.   **Procedural Background**

Mr. Bell filed his complaint against AII on February 8, 2017, for claims related to its manufacture and distribution of

-3-

Clubman talcum powder, seeking damages. (Bell Compl. (Doc. 1).)
He filed an amended complaint on October 23, 2017. (Bell Am.
Compl. (Doc. 44).) Approximately two years later, on September
11, 2019, AII moved for leave to file a third-party complaint
against Neslemur, (Doc. 81), which was granted, (Doc. 85). In
this complaint, AII sought "a judgment indemnifying AII for any
settlement or compromise . . . and for any judgment or award
rendered against AII in [the suit with Mr. Bell]," as well as "a
judicial declaration that AII is . . . entitled to indemnity[.]"
(Third-Party Compl. (Doc. 86) at 12.) Defendant Neslemur is an
inactive Delaware company with no headquarters or offices in
North Carolina. (Third-Party Def.'s Mem. of Law in Supp. of Mot.
to Dismiss, Strike, Abstain, or Stay ("Third-Party Def.'s Br.")
(Doc. 98 at 11.) Defendant moved to dismiss or strike the third-
party complaint on December 12, 2019. (Doc. 97.) At the time
briefs were filed regarding this Motion, the deadline for
discovery had just been extended to February 29, 2020. (Doc. 95
at 2.) After this Motion was filed, the court further extended
the date for general fact discovery to March 31, 2020. (Doc. 109
at 2.)

Meanwhile, earlier in 2019, AII had already filed a
complaint against Neslemur in the Court of Chancery of Delaware.
American International Industries v. Neslemur Co., Case No.

-4-

2019-0036 (Del. Ch. filed 2019) ("Delaware Action"). (See Doc. 99-1.) That ongoing case mirrors this one, as AII seeks a declaratory judgment regarding its indemnification rights under the Asset Purchase Agreement with Neslemur.

II. **ANALYSIS**

A. **Personal Jurisdiction**

On a personal jurisdiction challenge, a plaintiff bears the burden of proving jurisdiction by a preponderance of the evidence. Carefirst of Md., Inc. v. Carefirst Pregnancy Ctrs., Inc., 334 F.3d 390, 396 (4th Cir. 2003). But "[o]nce a defendant presents evidence indicating that the requisite minimum contacts do not exist, the plaintiff must come forward with affidavits or other evidence in support of its position." Pathfinder Software, LLC v. Core Cashless, LLC, 127 F. Supp. 3d 531, 538 (M.D.N.C. 2015) (quoting Vision Motor Cars, Inc. v. Valor Motor Co., 981 F. Supp. 2d 464, 468 (M.D.N.C. 2013)). When the court does not hold an evidentiary hearing, the court "must construe all relevant pleading allegations in the light most favorable to the plaintiff, assume credibility, and draw the most favorable inferences for the existence of jurisdiction." New Wellington Fin. Corp. v. Flagship Resort Dev. Corp., 416 F.3d 290, 294 (4th Cir. 2005) (internal quotation marks omitted) (quoting Combs v. Bakker, 886 F.2d 673, 676 (4th Cir. 1989).

-5-

To determine whether personal jurisdiction is proper, the court engages in a two-part inquiry: first, North Carolina's long-arm statute must provide a statutory basis for the assertion of personal jurisdiction, and second, the exercise of personal jurisdiction must comply with due process. Christian Sci. Bd. of Dirs. of the First Church of Christ, Scientist v. Nolan, 259 F.3d 209, 215 (4th Cir. 2001); Vogel v. Wolters Kluwer Health, Inc., 630 F. Supp. 2d 585, 594–95 (M.D.N.C. 2008).

### 1. **North Carolina's Long-Arm Statute**

North Carolina's long arm statute, N.C. Gen. Stat. § 1-75.4(1)d, is construed "to extend jurisdiction over nonresident defendants to the full extent permitted by the Due Process Clause." Christian Sci. Bd. of Dirs., 259 F.3d at 215 (citing Century Data Sys., Inc. v. McDonald, 109 N.C. App. 425, 427, 428 S.E.2d 190, 191 (1993)). Thus, this court's sole inquiry is whether personal jurisdiction is proper under the Due Process Clause.

### 2. **Due Process and Personal Jurisdiction**

Due process allows a court to exercise general or specific jurisdiction over a defendant. General jurisdiction exists over a corporate defendant "in the corporation's state of incorporation or principal place of business." Pub. Impact, LLC

-6-

v. Bos. Consulting Grp., Inc., 117 F. Supp. 3d 732, 738
(M.D.N.C. 2015) (citing Daimler AG v. Bauman, 571 U.S. 746, 761
n.19 (2015)); see also Helicopteros Nacionales de Colombia, S.A.
v. Hall, 466 U.S. 408, 414 n.9 (1984) ("When a State exercises
personal jurisdiction over a defendant in a suit not arising out
of or related to the defendant's contacts with the forum, the
State has been said to be exercising 'general jurisdiction' over
the defendant."). General jurisdiction requires a defendant's
"affiliations with the State [to be] so 'continuous and
systematic' as to render [it] essentially at home in the forum
State." Goodyear Dunlop Tires Operations, S.A. v. Brown, 564
U.S. 915, 919 (2011) (citing Int'l Shoe Co. v. Washington, 326
U.S. 310, 317 (1945)). Here, general jurisdiction over Defendant
is inappropriate. Delaware was Neslemur's state of
incorporation, (Doc. 99-15 at 2), and it does not appear to be
disputed that Neslemur has no offices or headquarters in North
Carolina. (Third-Party Compl. (Doc. 86) ¶ 3; see also ("Third-
Party Def.'s Br.") (Doc. 98) at 11.)

Specific jurisdiction, on the other hand, exists when the
forum state exercises personal jurisdiction over the defendant
"in a suit arising out of or related to the defendant's contacts
with the forum[.]" Helicopteros, 466 U.S. at 414 n.8. "[T]here
must be an 'affiliation between the forum and the underlying

-7-

controversy, principally, [an] activity or an occurrence that takes place in the forum State.'" Bristol-Myers Squibb Co. v. Super. Ct. of Cal., 582 U.S. ____, ____, 137 S. Ct. 1773, 1780 (2017) (quoting Goodyear, 564 U.S. at 919). Moreover, if the underlying claim does not arise out of the defendant's contacts with the forum state, "specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." Id. at 1781 (citing Goodyear, 564 U.S. at 931 n.6).

To exercise specific jurisdiction over a defendant, due process requires that the court examine "(1) the extent to which the defendant purposefully availed itself of the privilege of conducting activities in the State; (2) whether the plaintiff['s] claims arise out of those activities directed at the State; and (3) whether the exercise of personal jurisdiction would be constitutionally reasonable." UMG Recordings, Inc. v. Kurbanov, 963 F.3d 344, 351 (4th Cir. 2020), petition for cert. docketed, (U.S. Oct. 16, 2020) (No. 20-503) (quoting Consulting Eng'rs Corp. v. Geometric Ltd., 561 F.3d 273, 278 (4th Cir. 2009)). This court will analyze these requirements in order, determining whether this court may exercise specific jurisdiction over Defendant.

Case 1:17-cv-00111-WO-JEP   Document 223   Filed 11/06/20   Page 8 of 29

## a. **Purposeful Availment**

In order to establish specific jurisdiction, a plaintiff must first illustrate that a corporate defendant purposefully availed itself of the state of North Carolina. The relevant indemnification contract, while executed in New York, (Purchase Agreement (Doc. 86-1) at 8), under New York law, (id. at 13), specifically indemnified Plaintiff for Defendant's product sales prior to the agreement. (Third-Party Def.'s Br. (Doc. 98 at 6.) Defendant "sold, shipped, manufactured or distributed" Clubman talcum powder in the state of North Carolina "for at least seventeen years." (Bell Am. Compl. (Doc. 44) ¶¶ 2, 9, 11-14.) Defendant's sales of Clubman powder to Mrs. Bell occurred in North Carolina, as did Ms. Bell's allegedly resulting illness. (Id. ¶¶ 9, 11.) At this stage, these facts have not been challenged. Therefore, this court finds, for purposes of this Motion only, that Defendant Neslemur did business in North Carolina by selling Clubman products for at least seventeen years.

In § 8.1(b) of the Asset Purchase Agreement, Defendant knowingly agreed to indemnify AII for any defective products sold "by the Seller before the Closing." (Purchase Agreement (Doc. 86-1) at 23.) The agreement specifically indemnifies AII "against any and all claims, liabilities or obligations" arising

-9-

from previously sold Neslemur products. (Id.) It goes on to also cover "all actions, suits, proceedings, judgments, costs and expenses connected with any of the [claims, liabilities or obligations.]" (Id.) Under New York law, an agreement to indemnify against liabilities is construed more broadly than an agreement to indemnify merely against losses: a right to indemnification against liabilities "arises when judgment is entered," rather than after the indemnified party has satisfied any potential award. Madeira v. Affordable Hous. Found., Inc., 323 F. App'x 89, 91 (2d Cir. 2009). Although this broad language does not give Neslemur an explicit duty to defend AII, see Colon v. Metro-N. Commuter R.R. Co., No. 3:13-CV-00325 (JAM), 2018 WL 2316729, at *3 (D. Conn. May 22, 2018), aff'd sub nom. Metro-N. Commuter R.R. Co. v. United Illuminating Co., 777 F. App'x 544 (2d Cir. 2019), Neslemur also expressly reserved the right to "negotiate and settle . . . claim[s]" where it might be subject to indemnity, (Purchase Agreement (Doc. 86-1) at 23).

Taken together, the language in the Asset Purchase Agreement makes clear that Neslemur agreed to those provisions with full awareness of its potential liability and its possible involvement in cases such as this one. The agreement's breadth - Defendant agreed to cover any claims, costs, or liabilities without geographic limitation - shows an intent to hold

-10-

Plaintiff harmless in any state in which Defendant sold goods. This is similar to an insurance company contracting to provide coverage for a company that might do business in North Carolina. See, e.g., Danaher Corp. v. Travelers Indem. Co., No. 10-CV-121 (JPO), 2014 WL 7008938, at *6 (S.D.N.Y. Dec. 12, 2014) ("Industria contracted to provide insurance coverage to companies authorized to do business in New York. This is sufficient to show that it purposefully availed itself of [New York].") Here, Neslemur did business and sold its product in North Carolina, and subsequently contracted with AII to hold AII "harmless against any and all claims . . . which may arise out of . . . the use of any products or goods sold by [Neslemur] before the Closing[.]" (Purchase Agreement (Doc. 86-1) at 23.) Neslemur has thereby purposefully availed itself of the state.

### b. "Aris[ing] out of"

For specific jurisdiction to apply, there must be "an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation." Goodyear, 564 U.S. at 919 (internal quotation marks and brackets omitted). However, when the claim does not arise out of the defendant's connections to the state, specific jurisdiction will not arise. Bristol-Myers Squibb, 137 S. Ct. at

-11-

1781 ("[E]ven regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales."). Defendant argues that the claim at issue here arises out of the Asset Purchase Agreement, not the underlying purchase of Clubman powder. (Third-Party Def.'s Br. (Doc. 98) at 11.) However, this claim does in fact arise out of conduct in North Carolina: the conduct Defendant assumed liability for, via the Asset Purchase Agreement, included extensive sales of Clubman in North Carolina. Thus, there is sufficient evidence that this indemnification claim arises out of Defendant's conduct in North Carolina.

### c. **Reasonableness**

The final requirement of personal jurisdiction under due process is reasonableness. Here, the court must consider if the litigation is "'so gravely difficult and inconvenient' that [the defendant] is at a 'severe disadvantage' in comparison to its opponent." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 478 (1985) (quoting M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972); McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). While Neslemur expresses concern about the timing of the case and its potential judicial inefficiency, (Third-Party Def.'s Br. (Doc. 98) at 5), Defendant does not identify any particular burdens imposed by litigating in a North Carolina

-12-

federal court rather than a Delaware state court. This court will therefore find that Defendant is subject to specific personal jurisdiction in North Carolina.

## B.  **Service of Process**

Proper service of process must adhere to state law for serving a summons in "the state where the district court is located <u>or where service is made</u>." Fed. R. Civ. P. 4(e)(1) (emphasis added). Service was made in Delaware in this case. (Third-Party Pl.'s Br. (Doc. 103) at 9.) This court will address service under the law of Delaware, as it is dispositive.[2]

Under Delaware law, if a plaintiff "cannot by due diligence serve the process in any manner provided for by subsection (a) of this section, [which provides for service upon a corporation's registered agent], it shall be lawful to serve the process against the corporation upon the Secretary of State

_____

[2] North Carolina law allows for a defendant corporation to be served, among other ways, by "delivering a copy of the summons and of the complaint to an <u>agent</u> authorized by appointment or by law to be served or to accept service of process." N.C. Gen. Stat. § 1A-1, Rule 4(j)(6)(b) (emphasis added). Both Plaintiff (Third-Party Pl.'s Br. (Doc. 103) at 10) and Defendant (Third-Party Def.'s Br. (Doc. 98) at 10) acknowledge that North Carolina law defers to "Delaware substantive law to decide whether the party is properly qualified as an 'agent' to receive service of process." <u>Deutsche Bank Tr. Co. Americas v. Tradewinds Airlines, Inc.</u>, No. 03 CVS 12215, 2009 WL 1154861, at *6 (N.C. Super. Apr. 29, 2009). Thus, Delaware law is ultimately dispositive, even if this court's analysis begins with North Carolina law.

-13-

. . . ." Del. Code Ann. tit. 8, § 321(b); see also Ross v. Venezuelan-Am. Indep. Oil Producers Ass'n, 230 F. Supp. 701, 702 (D. Del. 1964) (finding service to the Secretary of State was valid with regard to a dissolved corporation). Defendant alleges that Plaintiff failed to use "due diligence" to attempt to serve Defendant's registered agents before resorting to service via the Secretary of State. (Third-Party Def.'s Br. (Doc. 98) at 10.) However, at no point does Defendant dispute the allegation that it no longer possesses valid registered agents. Neslemur is a dissolved corporation, and its former registered agents no longer have a valid agency relationship with the corporation – searching for these agents to accept service would clearly have been a futile exercise. See Int'l Pulp Equip. Co. v. St. Regis Kraft Co., 54 F. Supp. 745, 748 (D. Del. 1944) ("[A]fter a corporate dissolution . . . the agency relationship between the corporation, as principal, and its local resident agent, as agent, ceases; and the latter is no longer possessed of powers to act for its principal."); United States ex rel. Landis v. Tailwind Sports Corp., 51 F. Supp. 3d 9, 31 (D.D.C. 2014) (applying principles from Int'l Pulp to modern Delaware service law). The court in Int'l Pulp addressed this issue directly by stating that "[t]he Secretary of State's capacity to accept service on behalf of a dissolved corporation is one of the

-14-

conditions upon which a Delaware corporation pursues its right to do business under a Delaware charter." 54 F. Supp. at 749. Service in this instance was proper under Delaware law.

### C. Late Impleader of Neslemur

Defendant next urges this court to strike this third-party claim under the authority provided by Fed. R. Civ. P. 14(a)(4). Courts consider a variety of factors when considering whether to accept a defendant's impleader of a third party. These same factors require consideration when the court is urged to strike an existing third-party claim. Factors for the court's analysis include:

> [D]elay in presenting the third-party complaint to the court, the prejudice to the non-moving party resulting from the delay, the introduction of unrelated issues, whether the new claims would unduly complicate the original suit, the similarity between the issues and evidence in the original suit and the third-party complaint, and whether the claim is obviously unmeritorious.

United States v. Savoy Senior Hous. Corp., Civil Action No. 6:06CV031, 2008 WL 631161, at *2 (W.D. Va. Mar. 6, 2008). Notably, "no single factor is dispositive" in this inquiry. Id.

Defendant does not allege that this third-party claim introduces unrelated issues, unduly complicates the original case, or is obviously unmeritorious. Instead, Defendant focuses on an alleged delay in Plaintiff's presentation of the third-party complaint. (Third-Party Def.'s Br. (Doc. 98) at 16.) As

-15-

Plaintiff states, it joined Defendant at a time "in conformity with the scheduling order in this case." (Third-Party Pl.'s Br. (Doc. 103) at 25.) The court set a deadline to request leave for joinder of parties by September 12, 2019. (Id. at 24.) Plaintiff adhered to this scheduling deadline and filed its Motion for Leave to File a Third-Party Complaint on September 11, 2019. (Doc. 81.)

Defendant argues that this timeline created substantial prejudice, since discovery had already begun when the third-party complaint was filed. (Third-Party Def.'s Br. (Doc. 98) at 15.) Defendant alleges that Plaintiff stalled in filing its third-party complaint, (id. at 5), yet fails to allege any actual harm: Defendant has been involved in the case for ample time to participate in discovery and prepare for trial. Defendant analogizes, (id. at 14, 15), to Murphy v. Keller Industries, Inc., 201 F.R.D. 317 (S.D.N.Y. 2001). However, in Murphy, the court struck a third-party complaint because the third-party plaintiff had already taken multiple depositions without even informing the third-party defendant. Id. at 321. Defendant also cites Zero Tolerance Entertainment, Inc. v. Ferguson, 254 F.R.D. 123 (C.D. Cal. 2008), in which discovery had already concluded by the time the third-party claim was brought. (Third-Party Def.'s Br. (Doc. 98) at 15.) Here,

discovery had barely begun when Defendant was joined. Defendant was joined and informed (though only two weeks in advance) prior to the first deposition that took place. (Doc. 106 at 9.) Defendant's counsel even "attended the Bell deposition," though defense counsel did not participate. (Id. n.2.)[3] Even if Defendant argues that it chose not to participate in discovery because its Motion to Dismiss and jurisdiction challenges remained pending, Defendant fails to point to specific, otherwise avoidable prejudice caused by the timing of its joinder.

Given trial is currently set for July 2021, (Doc. 213), six months later than anticipated at the time this Motion was filed, (Third-Party Pl.'s Br. (Doc. 103) at 24), it does not appear that any minimal delay by Plaintiff has prejudiced Defendant in terms of preparing for trial. At the time of this Motion's filing, expert discovery was not set to begin for several months. Id. Moreover, after this Motion was filed, the court

---

[3] Notably, the sole deposition that took place prior to the filing of this Motion was the deposition of Mr. Bell. Defendant vehemently alleges that Plaintiff's legal claim against it under the Asset Purchase Agreement is entirely unrelated to Mr. Bell. (Third-Party Def.'s Br. (Doc. 98) at 11-13.) By that logic, Defendant would not have been prejudiced at all by late notice regarding the deposition of Mr. Bell. This court, however, considers the underlying claim relevant to this impleader, and therefore considers the deposition of Mr. Bell in its analysis of undue prejudice.

further extended the period for fact discovery through March 31, 2020. (Doc. 109 at 2.) This court has previously found that where discovery has not yet begun, delay is "not . . . prejudicial" even if purposeful. Feit Elec. Co., Inc. v. Cree, Inc., No. 1:15CV535, 2016 WL 10587196, at *1 (M.D.N.C. June 20, 2016). While fact discovery had technically begun in this instance, Defendant was joined before the first deposition even occurred. (Third-Party Pl.'s Br. (Doc. 103) at 25.) Moreover, nothing forecloses this court from further expanding the discovery period if Defendant demonstrates true necessity going forward. Defendant has not sufficiently demonstrated that it has been unduly prejudiced by the timeframe presented. Moreover, while Plaintiff was not particularly speedy in joining Defendant, Plaintiff was able to abide by the court's scheduling order without issue. This court therefore will not strike the motion due to any alleged delay by Plaintiff.

### D. **Abstention Doctrine**

Defendant also contends that this court should abstain from exercising jurisdiction over this case due to the pending state case in Delaware. (Third-Party Def.'s Br. (Doc. 98) at 17.) Abstention, however, "is the exception, not the rule." Colo. River Water Conservation Dist. v. United States, 424 U.S. 800, 813 (1976); see also id. at 817 (noting the "virtually

-18-

unflagging obligation of the federal courts to exercise the jurisdiction given them"). Thus, this court's task "is not to find some substantial reason for the <u>exercise</u> of federal jurisdiction," but rather "to ascertain whether there exist 'exceptional' circumstances, the 'clearest of justifications,' . . . to justify the <u>surrender</u> of that jurisdiction." <u>Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.</u>, 460 U.S. 1, 25-26 (1983).[4]

First, the court must determine whether the concurrent state and federal proceedings are parallel. <u>Al-Abood ex rel. Al-Abood v. El-Shamari</u>, 217 F.3d 225, 232 (4th Cir. 2000) ("The threshold question in deciding whether <u>Colorado River</u> abstention is appropriate is whether there are parallel suits."). The Delaware action may be deemed parallel to this federal case only if "substantially the same parties litigate substantially the same issues in different forums." <u>New Beckley Mining Corp. v. Int'l Union, United Mine Workers of Am.</u>, 946 F.2d 1072, 1073

---

[4] Defendant relies upon the Supreme Court's decision in <u>Brillhart</u>, which sets the test for abstention in cases involving only declaratory judgments. <u>Brillhart v. Excess Ins. Co. of Am.</u>, 316 U.S. 491, 495 (1942). However, the Fourth Circuit has clarified that mixed actions involving both declaratory and non-declaratory relief fall under the purview of the <u>Colorado River</u> standard rather than the <u>Brillhart</u> standard. <u>See VonRosenberg v. Lawrence</u>, 781 F.3d 731, 735 (4th Cir. 2015) (finding that "[t]he <u>Colorado River</u> standard applies to all mixed claims," even those in which a non-declaratory claim is merely ancillary to a request for declaratory relief).

-19-

(4th Cir. 1991). The issues before the court must be truly identical: merely "some factual overlap does not dictate that proceedings are parallel." Id. at 1074. The Fourth Circuit also considers "the remedies sought and the issues raised." See Chase Brexton Health Servs., Inc. v. Maryland, 411 F.3d 457, 465 (4th Cir. 2005); New Beckley, 946 F.2d at 1074 (finding that denial of abstention may be warranted where "[t]he parties in both actions are virtually identical, but the issues raised and remedies sought are not"); see also Gannett Co. v. Clark Constr. Grp., Inc., 286 F.3d 737, 743 (4th Cir. 2002) (criticizing abstention when the two actions at issue sought "different remedies"). In the case at hand, Defendant alleges that the issues before this court and before the Chancery Court in Delaware are the same, claiming both suits seek "precisely the same relief," (Third-Party Def.'s Br. (Doc. 98) at 21). Defendant alleges both actions seek a declaratory judgment regarding Neslemur's indemnification obligations to AII. (Id. at 21-22.) However, in this case, AII also seeks a judgment for any money Neslemur may owe Mr. Bell due to its agreement with AII. (Third-Party Compl. (Doc. 86) at 11-12.) This goes beyond perfectly identical relief.

Moreover, the Fourth Circuit has "strictly construed the requirement . . . that [for suits to be parallel] the parties

-20-

involved [must] be almost identical," <u>Great Am. Ins. Co. v.</u> <u>Gross</u>, 468 F.3d 199, 208 (4th Cir. 2006), and has cautioned district courts to avoid making this determination at "too general a level." <u>See</u> <u>Chase Brexton</u>, 411 F.3d at 464. Original Plaintiff Mr. Bell is not party to the Delaware action, even though AII and Neslemur are the immediate Plaintiff and Defendant in both actions. This renders the parties involved less than identical as well.

Even if the court were to find that these two cases are parallel under <u>Colorado River</u>, the court must also determine whether "exceptional circumstances" warranting abstention exist based on the following factors identified by the Fourth Circuit:

> (1) whether the subject matter of the litigation involves property where the first court may assume <u>in</u> <u>rem</u> jurisdiction to the exclusion of others; (2) whether the federal forum is an inconvenient one; (3) the desirability of avoiding piecemeal litigation; (4) the relevant order in which the courts obtained jurisdiction and the progress achieved in each action; (5) whether state law or federal law provides the rule of decision on the merits; and (6) the adequacy of the state proceeding to protect the parties' rights.

<u>Chase Brexton</u>, 411 F.3d at 463-64. This determination "does not rest on a mechanical checklist, but on a careful balancing of the important factors as they apply in a given case, with the balance heavily weighted in favor of the exercise of jurisdiction." <u>Moses H. Cone</u>, 460 U.S. at 16; <u>see also</u> <u>Colorado</u> <u>River</u>, 424 U.S. at 818-19 ("[A] carefully considered judgment

taking into account both the obligation to exercise jurisdiction and the combination of factors counseling against that exercise is required. Only the clearest of justifications will warrant dismissal."). This court will consider these abstention factors in order.

### 1. Jurisdiction Over Property

First, this claim does not involve any property, either in Delaware or North Carolina. Since the Delaware court has no in rem jurisdiction over any relevant property, this factor counsels against abstention.

### 2. Inconvenience of Federal Forum

Second, the parties have not alleged any evidence indicating that this federal forum will be inconvenient for any reason other than duplicative litigation. Thus, this factor also counsels against abstention.

### 3. Avoiding Piecemeal Litigation

The piecemeal litigation factor weighs in favor of abstention. However, simply because a state claim is moving forward at the same time as a federal claim does not mean the court must abstain from proceeding with a case. Chase Brexton, 411 F.3d at 465 ("[T]he Supreme Court in Colorado River has instructed federal courts that they are normally to accept jurisdiction even in the face of concurrent state litigation.").

-22-

Extraordinary circumstances are still required to warrant a stay – here, though the state case began first, Defendant fails to allege any exceptional inconveniences stemming from litigation of this case in federal court. <u>See</u> <u>KPS & Assocs., Inc. v. Designs by FMC, Inc.</u>, 318 F.3d 1, 10-11 (1st Cir. 2003) ("[C]oncerns about piecemeal litigation should focus on the . . . practical effects of litigating suits . . . in two separate fora, and weigh in favor of dismissal only if there is some exceptional basis for dismissing one action in favor of the other.") (internal quotation marks omitted).

### 4.  <u>Order in which Jurisdiction was Obtained</u>

The fourth factor, order in which jurisdiction was obtained, counsels in favor of abstention: the state claim in Delaware was filed before this federal action. (Third-Party Def.'s Br. (Doc. 98) at 18.) Moreover, that case is scheduled for trial in February of 2021, five months before this action is scheduled to go to trial.[5] Thus, the state case is farther along in the proceedings than this federal action, which also weighs in favor of abstention. <u>Moses H. Cone</u>, 460 U.S. at 3.

---

[5] <u>American International Industries v. The Neslemur Company</u> (Docket Report), No. 19C-04-258 (Del. Ch., retrieved Sept. 29, 2020.) https://courtconnect.courts.delaware.gov/public/ck_public_qry_doct.cp_dktrpt_frames?backto=P&case_id=N19C-04-258&begin_date=&end_date=

-23-

("[P]riority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions.").

### 5. **Implication of Federal Law**

No questions of federal law have been alleged. The merits will therefore be decided based on state law, be it the law of Delaware, North Carolina, or New York. This factor counsels in favor of abstention as well.

### 6. **Adequacy of State Court Proceedings**

The final factor for the court's consideration is whether "state-court litigation will be an adequate vehicle for the complete and prompt resolution of the issues between the parties." Id. at 28. For example, courts may consider whether state court can provide proper remedies for the parties. See McNeese v. Bd. of Educ. for Cmty. Unit Sch. Dist. 187, Cahokia, Ill., 373 U.S. 668, 675 (1963). In this instance, a state court could provide adequate remedies for all parties involved except Original Plaintiff Mr. Bell. Mr. Bell is not included on the original filing in Delaware, and therefore his interests will not be weighed. Moreover, while AII can get an adequate declaratory remedy in state court, it cannot obtain an immediate indemnity judgment in the Delaware action for any money awarded to Mr. Bell. Finally, while the state court remedy is adequate,

-24-

it is lesser than the options available to this federal court because all parties are present in this case and a broader scope of relief is requested. This factor thus counsels against abstention.

### 7. Abstention Conclusion

While "a decision to abstain does not require the presence of all of the factors," Sto Corp. v. Lancaster Homes, Inc., 11 F. App'x 182, 187 (4th Cir. 2001), only three of the six factors here favor abstention. Moreover, extraordinary circumstances are necessary for the court to opt out of exercising jurisdiction. Here, the cases are less than perfectly parallel, and the federal case has the advantage of resolving all issues presented between both cases. Given that "only the clearest of justifications" warrants abstention, Moses H. Cone, 460 U.S. at 25-26, and this court's exercise of jurisdiction is not unduly inconvenient or unjust, Defendant's motion to dismiss on these grounds will be denied.

### E. Staying Proceedings

Defendant also asks this court to stay the third-party complaint due to the ongoing Delaware action. (Third-Party Def.'s Br. (Doc. 98) at 17.) When considering whether to stay a federal proceeding during the pendency of a similar state court action, the Fourth Circuit has used both the Landis doctrine

(see Williford v. Armstrong World Indus., Inc., 715 F.2d 124, 127 (4th Cir. 1983)), and the Colorado River doctrine (see Cox v. Planning Dist. I Cmty. Mental Health & Mental Retardation Servs. Bd., 669 F.2d 940, 942–43 (4th Cir. 1982)). A stay is not appropriate under either analysis.

This court has already determined that Defendant's motion cannot meet the high bar set by the Colorado River test, see discussion infra pt. II.D. Turning to the Landis doctrine, the Supreme Court has held that "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. N. Am. Co., 299 U.S. 248, 254 (1936). As the Fourth Circuit has explained:

> [The power to grant a discretionary stay pending state court proceedings under Landis] in the district courts is well recognized. It is not, however, without limitation. . . . [P]roper use of this authority calls for the exercise of judgment which must weigh competing interests and maintain an even balance. The party seeking a stay must justify it by clear and convincing circumstances outweighing potential harm to the party against whom it is operative.

Williford, 715 F.2d at 127 (internal quotation marks omitted) (quoting Landis, 299 U.S. at 254–55). When deciding whether to stay proceedings under Landis, courts weigh the interests of judicial economy, the potential prejudice to the non-moving

-26-

party in the event of a stay, and the hardship and inequity to the moving party in the absence of a stay. See, e.g., White v. Ally Fin., Inc., 969 F. Supp. 2d 451, 462 (S.D. W. Va. 2013); Glenn v. Metech Recycling Inc., No. 1:19-cv-1066, 2020 WL 3577483, at *3 (M.D.N.C. July 1, 2020) (weighing these factors in denying a stay).

The first factor, judicial economy, weighs in favor of a stay. Two separate cases about nearly identical issues are currently both set to go to trial in mid-2021. Trying the same issue in both cases is an inefficient use of judicial resources. See Blair v. Equifax Check Servs., Inc., 181 F.3d 832, 839 (7th Cir. 1999) ("When overlapping suits are filed in separate courts, stays . . . are the best means of coordination."); Mitchell v. Lonza Walkersville, Inc., Civil Action No. RDB-12-3787, 2013 WL 3776951, at *2 (D. Md. July 17, 2013) (finding courts must consider "the judicial resources that would be saved by avoiding duplicative litigation if [a] case is . . . stayed").

The next factor for the court's consideration is potential prejudice to the non-moving party if a stay is granted. In the event of a stay, Plaintiff AII would not be enormously prejudiced – in fact, AII itself filed the Delaware action. As currently scheduled, the Delaware action may be resolved prior

-27-

to this court's trial date. However, the Delaware action does leave out Mr. Bell, and as Plaintiff points out, "omits significant issues related to Mrs. Bell's purchase and use of a product in North Carolina that was made or sold by Neslemur for at least a decade." (Third-Party Pl.'s Br. (Doc. 103) at 28.) While Plaintiff would not be unduly damaged by a stay, Plaintiff would at least endure the minimal hardship of having to seek indemnity for Mr. Bell's claims in a separate action from any potential declaratory judgment. This would impose at least a minimal hardship on Plaintiff.

The final factor is potential hardship to the moving party if the stay is denied. Landis established that "the suppliant for a stay must make out a clear case of hardship or inequity in being required to go forward, if there is even a fair possibility that the stay . . . will work damage to some one else." Landis, 299 U.S. at 255. Neslemur would not be prejudiced by the absence of a stay. Neslemur would be required to participate in this case in federal court regardless, given that Plaintiff seeks an indemnity judgment not presently included in the Delaware action. Moreover, Neslemur has not adequately alleged any substantial hardship during discovery in this court, despite its near-miss of the first deposition.  Thus, Defendant has failed to make the "clear case of hardship or inequity"

required by <u>Landis</u> and <u>Williford</u>. <u>See</u> <u>White</u>, 969 F. Supp. 2d at 463. Since Defendant fails to meet the requirements for a stay under both <u>Landis</u> and <u>Colorado River</u>, the Defendant's motion to stay will be denied.

III. <u>**CONCLUSION**</u>

For the reasons set forth above, this court finds that Third-Party Defendant Neslemur's Motion to Dismiss for Insufficient Service of Process and Lack of Personal Jurisdiction, Motion to Strike Third-Party Complaint, and Motion to Dismiss, Abstain or Stay in Favor of Prior Pending Litigation will be denied with regards to all claims.

**IT IS THEREFORE ORDERED** that Third-Party Defendant's Motion, (Doc. 97), is **DENIED**. Defendant's claims are **DISMISSED WITHOUT PREJUDICE.**

**IT IS FURTHER ORDERED** that Third-Party Plaintiff American International Industries, Inc.'s Motion for Leave to File a Sur-Reply in Opposition to Neslemur's Motion to Dismiss, (Doc. 125), is **DENIED.**

This the 6th day of November, 2020.

_____
United States District Judge

-29-