IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION

| | | |
|---|---|---|
| LLOYD BELL, Individually and As Executor of the Estate of BETTY WHITLEY BELL, Deceased, | ) ) ) ) | |
| Plaintiff, | ) ) | CASE NO. 1:17-CV-00111 |
| v. | ) ) | |
| AMERICAN INTERNATIONAL INDUSTRIES, et al., | ) ) ) | |
| Defendants. | ) | |

**NORTHWELL HEALTH, INC.'S REPLY IN SUPPORT OF MOTION TO INTERVENE AND EXTEND PROTECTIVE ORDER**

Northwell Health Inc.'s ("Northwell") Motion to Intervene and Extend the Protective Order seeks a limited expansion of the existing protective order entered in this case on September 25, 2020 ("Protective Order"). This extension would cover a narrow line of potential deposition questioning, so that Jacqueline Moline, M.D. ("Dr. Moline"), a Northwell physician, would not be required to disclose the identity of one of the subject patients of a published academic medical research study ("Research Study") governed by well-defined confidentiality protections afforded by Northwell's institutional review board ("IRB").

In its response to Northwell's Motion, Defendant American International Industries ("AII") focuses primarily on an issue Northwell never raised; namely, whether a "privilege" applies to the information Northwell seeks to protect. As a result of its misguided focus on privilege, AII entirely misses the central thrust of Northwell's Motion. Northwell has not claimed that a privilege applies, and Northwell does not need to show that a privilege exists in order to obtain the relief it seeks. Instead, the crux of Northwell's argument is that Northwell's significant

1

interests—rooted in IRB, Common Rule principals, and academic norms surrounding the protection of patient information in confidential research studies—substantially outweighs AII's purported need to question Dr. Moline about Mrs. Betty Bell's ("Plaintiff") participation in the Research Study. When viewed through the lens of bedrock confidentiality and privacy protections inherent in academic medical research, the balance of interests in this case unquestionably supports grant of Northwell's Motion.

In addition to AII's misplaced discussion of the question of "privilege," AII also argues that Northwell's Motion to Intervene should be denied as (1) untimely filed and (2) unnecessary because Plaintiff purportedly raised all of Northwell's arguments in briefing surrounding the Protective Order.[1] As set forth in more detail below, Northwell's Motion was timely filed and it advances critical arguments for the court's consideration that Plaintiff's counsels either did not previously raise or did not fully highlight for the court. Critically, AII has failed to demonstrate any prejudice that would result from a temporary delay of Dr. Moline's deposition in order to allow the court to rule on Northwell's Motion. Northwell's Motion should be granted.

## ARGUMENT

**I.** **Northwell's Motion to Intervene Should Be Granted Because It Is Timely, Not Duplicative of Plaintiff's Prior Briefing, and Would Not Prejudice Defendants**

AII argues that Northwell should be denied intervention of right under Fed. R. Civ. P. 24(a)(2) because the Motion was untimely and Northwell's arguments were already addressed by the Plaintiff. ECF No. 274, at 8. For the same purported reasons, AII argues that Northwell should be denied permissive intervention under Fed. R. Civ. P. 24(b). Id. Under both the intervention as

---

[1] AII also argues that Northwell's Motion should be denied because it is allegedly moot. Northwell takes no position on this specific issue, as it directly relates to when Plaintiff's counsels were to offer Dr. Moline for deposition.

2

of right and permissive intervention standards, AII's arguments fail and Northwell should be permitted to intervene in the limited manner it seeks.

### A. Northwell's Motion to Intervene is Timely.

In its Response, AII emphasizes events that occurred in January 2020, but, as AII concedes, these events involved the deposition of Dr. Moline in an *entirely separate case*. ECF No. 274, p. 9. Instead, Northwell's involvement in the present case did not commence until several months later, when AII served a subpoena on Northwell. ==In response to the subpoena and based on representations from AII's counsel, Northwell's prior counsels erroneously released information that linked Plaintiff to the Research Study.== Although AII provided a HIPAA authorization covering the release of Plaintiff's medical information, the information AII sought—and which is at issue in Northwell's Motion—was not Plaintiff's medical record. Instead, AII's subpoena targeted *information in the possession of Northwell's IRB* and pertaining to Plaintiff's role as a subject in the Research Study. After Northwell became aware that its prior counsel had disclosed this information in error, Northwell worked to secure new counsel for purposes of filing this Motion.

While the process between Northwell's receipt of AII's subpoena and the ultimate filing of the Motion took a few months to complete, this fact does not render Northwell's Motion untimely. Indeed, mere passage of time is "only one factor to be considered in light of all the circumstances" in determining whether a Motion to Intervene is timely. Wright v. Krispy Kreme Doughnuts, Inc., 231 F.R.D. 475, 478 (M.D.N.C. 2005), quoting Spring Constr. Co. v. Harris, 614 F.2d 374, 377 (4th Cir.1980). More relevant is "how far the suit has progressed and the likelihood that intervention may unfairly disrupt some resolution of the case." Id. AII has not asserted that intervention would cause any significant delay or disruption to the discovery schedule or resolution

of this case. Indeed, there is no reason intervention for the sole purpose of Northwell's Motion would cause any such prejudicial disruption, particularly given that trial in this case is not scheduled to take place until October 2021. Indeed, as set forth in Section I.B, *infra*, the passage of time in no way negates the import of Northwell's Motion and the critical confidentiality and privacy protections that support it.

### B. Northwell's Interests Have Not Been Adequately Addressed by Plaintiff, and, in the Alternative, Permissive Intervention is Appropriate.

AII argues that Northwell cannot show intervention of right because Plaintiff's counsel already raised Northwell's arguments during prior briefing and oral argument, and therefore Northwell's interests were already represented by the Plaintiff. ECF No. 274, p. 10. While there is some overlap between certain arguments made by Northwell and the Plaintiff, AII significantly overstates the alignment. In contrast to Plaintiff's prior arguments, Northwell's Motion provides (1) extensive detail about the specific IRB process that applied to Dr. Moline's research study; (2) the representations Dr. Moline made as part of that process; (3) the chilling effects on both the medical community and the IRB process at issue; (4) a review of case law addressing these specific issues; (5) Dr. Moline's view of the need for protection through her affidavit; and (6) support for the lack of prejudice to AII based on the protections Northwell seeks. ECF No. 265, at 7-10. This discussion goes significantly beyond Plaintiff's prior arguments.

Furthermore, it is otherwise proper to grant permissive intervention to Northwell pursuant to Fed. R. Civ. P. 24(b). Unlike intervention of right, permissive intervention does not require any showing that an existing party has not adequately represented Northwell's interest. Instead, as both Northwell and AII underscore in their respective papers, in exercising its discretion whether to approve or deny such a motion, the court must consider "whether the intervention will unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(3); ECF

4

No. 265, at 5; ECF No. 274, at 8. Trial courts are directed to construe Rule 24 liberally to allow intervention, where appropriate. Carcano v. McCrory, 315 F.R.D. 176, 178 (M.D.N.C. 2016); Feller v. Brock, 802 F.2d 722, 729 (4th Cir.1986). As discussed above, allowing intervention for the purpose of hearing the Motion will not cause any undue delay or prejudice to AII's rights. Indeed, AII does not claim in its Response that the Motion would cause any prejudicial delay. Therefore, in the alternative, the court should grant Northwell's Motion to intervene under the discretion provided by Fed. R. Civ. P. 24(b).

## II. Defendant's Focus on "Privilege" Reflects a Misreading of Northwell's Motion and a Misunderstanding of the Balancing Test that Compels Extending the Protective Order

### A. Northwell's Interest in Keeping the Information Confidential is Not Based on Any "Privilege."

AII repeatedly tries to reframe the argument before the court as whether Northwell has demonstrated some undefined "privilege" associated with Plaintiff's health information. ECF No. 274, at 14-17 ("…there is certainly no privilege as it relates to questioning Dr. Moline about Ms. Bell's inclusion in the study in this case"); ("There is no privilege that attaches to materials produced by plaintiffs in litigation when they are received by a retained expert who happens to be a physician"); ("In the end, both Plaintiff and now Northwell attempt to misuse confidentiality and privilege claims…"). Such an imagined privilege confuses the issues and wholly misses the mark. At no point in Northwell's briefing did it claim a privilege associated with Plaintiff's data. Northwell is not arguing that there is any specific privilege attaching to the information to which protection is sought, and the concept of a privilege is not relevant to Northwell's Motion. Instead, the protection sought is based on the court's supervisory powers over discovery, and a weighing of Northwell's interests in protecting Plaintiff's identity as a subject of an IRB-approved academic medical research study against Defendant's attenuated need for this information for purposes of a

5

handful of questions at a deposition. See Richards of Rockford Inc. v. Pacific Gas and Elec. Co., 71 F.R.D. 388 (N.D.Ca. 1976) (holding under court's supervisory powers that the public interest in maintaining confidential research information outweighed litigant's need for that information); Farnsworth v. Procter & Gamble Co., 101 F.R.D. 355, 357 (N.D. Ga. 1984), aff'd, 758 F.2d 1545 (11th Cir. 1985) ("In determining whether the CDC has met its burden under Rule 26(c) to show unreasonableness or oppression, the court must balance the hardship imposed on Procter & Gamble by denying it access to the information for its trial preparation and defense, against the hardship imposed on the CDC by permitting the discovery.").

Due to AII's myopic focus on a non-existent question of privilege, AII misreads and misunderstands the import of Northwell's arguments and interests in keeping this information confidential. As discussed in Northwell's brief, allowing anonymous information covered under IRB protocols to become public would undermine the confidentiality protections secured by the Common Rule and IRB principles, resulting in a chilling effect on the IRB process and the willingness of researchers and research subjects to participate in critical studies. Indeed, such a chilling effect could have the potential to impede the development of life-saving medical breakthroughs. ECF No. 265, at 8. This potential chilling effect, and the associated detrimental impact, has been recognized by multiple courts. Cusumano v. Microsoft Corp., 162 F.3d 708, 714 (1st Cir. 1998) ("Journalists are the personification of a free press, and to withhold such protection [from discovery initiatives] would invite a "chilling effect on speech," … and thus destabilize the First Amendment. The same concerns suggest that courts ought to offer similar protection to academicians engaged in scholarly research."); In re Bextra and Celebrex Marketing Sales Practices and Product Liability Litigation, 249 F.R.D. 8, 13–14 (D.Mass. 2008) (finding chilling effects would occur if the identity of anonymous peer reviewers were required to be disclosed in

product liability discovery); Richards of Rockford, 71 F.R.D. at 390 (N.D.Ca. 1976) ("Compelled disclosure of confidential information would without question severely stifle research into questions of public policy, the very subjects in which the public interest is greatest.").

None of these cases held that *because* of this chilling effect a researcher or research institution has some unqualified privilege to protect the information, and Northwell has not argued as such. Instead, Northwell argues that Defendant's purported need to question Dr. Moline about Plaintiff's specific role in the Research Study is substantially outweighed by the above-referenced scientific and societal interests, which are inherently grounded in bedrock confidentiality and privacy requirements.

### B. Dr. Moline Conducted Academic Research Aimed at Scientific and Societal Benefit.

Throughout its Response, AII unsuccessfully tries to discount the academic nature of Dr. Moline's research. Specifically, AII erroneously asserts that this case does not involve a physician who used medical records to conduct academic research to publish a paper in a scientific journal. ECF No. 274, p. 14. However, this is precisely what happened. Dr. Moline reviewed the medical records at issue in her capacity as an academic medical researcher—and in accordance with the Northwell's IRB process—and she published an academic article, with three other co-authors, in the Journal of Occupational and Environmental Medicine. See ECF No. 274, Exhibit A. Moreover, AII asserts, without any supporting basis, that Dr. Moline simply could not have intended to conduct this research for the betterment of society. ECF 274 p. 15. Indeed, AII baldly asserts, without support, that this multi-author Research Study—which underwent IRB review and was published in a prestigious academic journal—was intended as nothing more than a litigation tactic to "funnel" litigation materials to obtain confidentiality protections. ECF No. 274, at 17.

This argument is entirely fictitious and without merit. It also ignores the fact that, to Northwell's knowledge, (1) all of Plaintiff's medical records are available to AII; (2) there has been no objection to AII questioning Dr. Moline about Plaintiff's medical records; and (3) there has been no objection to AII questioning Dr. Moline about the Research Study, provided that Dr. Moline is not required to identify the subjects of that Research Study.

### C. AII Overstates the Relevance of the Narrow Protection Northwell Seeks.

AII asserts that the information about the participants in Dr. Moline's study is "critical to AII's defense." ECF No. 247, at 18. AII overstates its need for this information. Whether Plaintiff was a part of the Research Study does not alter whether or not Plaintiff was exposed to occupational asbestos, nor would it shed any light on this issue. Relatedly, the extended protective order would not bar any questions to Dr. Moline regarding her knowledge of whether or not Plaintiff had prior exposure to occupational asbestos, or any other aspects of the Plaintiff's medical history. Questioning Dr. Moline as to whether Plaintiff was a participant in the Research Study will not advance any of AII's defenses—Plaintiff's participation in the Research Study does not change Plaintiff's exposure to asbestos through talc, nor does it change whether she was or was not exposed to occupational asbestos. Balanced against Northwell's interest in keeping anonymous information regarding the Research Study out of the public domain, this Court should grant Northwell's Motion.

### CONCLUSION

For the foregoing reasons, Northwell respectfully requests that the Court grant its Motion, extend the Protective Order as Northwell requests, and preclude Defendants' counsels from questioning Dr. Moline about any linkage between Plaintiff and the Research Study. Northwell

8

also respectfully requests oral argument concerning its Motion and has contemporaneously filed with this Motion a request for oral argument.

This the 27th day of January, 2021.

>  */s/ Steven G. Pine*
> John H. Lawrence
> N.C. State Bar No. 45462
> Steven G. Pine
> N.C. State Bar No. 44705
>
> K&L Gates LLP
> 430 Davis Drive, Suite 400
> Morrisville, NC  27560
> Telephone: (919) 466-1112
> john.lawrence@klgates.com
> steve.pine@klgates.com

ATTORNEYS FOR NORTHWELL

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that on January 27, 2021, the foregoing Reply was filed via ECF filing, which will serve all counsel of record in the above-referenced matter.

This the 27th day of January, 2021.

*/s/ Steven G. Pine*
John H. Lawrence
N.C. State Bar No. 45462
Steven G. Pine
N.C. State Bar No. 44705

430 Davis Drive, Suite 400
Morrisville, NC  27560
Telephone: (919) 466-1112
john.lawrence@klgates.com
steve.pine@klgates.com

ATTORNEYS FOR NORTHWELL

## **CERTIFICATE OF WORD COUNT**

This brief complies with Local Rule 7.3(d)(1)'s word count limitation. The word count feature on Microsoft Word states that the word count of the counted portions of this brief is 2,615, within the 3,125 word limit.

*s/ Steve G. Pine*
Steven G. Pine
