**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
GREENSBORO DIVISION
File No.: 1:17-cv-00111**

| | |
|---|---|
| **Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell, Deceased** | ) ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **American International Industries Inc., et al.,** | ) ) |
| | ) |
| **Defendants.** | ) |
| _____ | ) |
| | ) |
| **American International Industries, Inc.,** | ) |
| | ) |
| **Third-Party Plaintiff,** | ) |
| | ) |
| **vs.** | ) |
| | ) |
| **Neslemur Company f/k/a The Nestle-Lemur Company,** | ) ) |
| | ) |
| **Third-Party Defendant.** | ) |
| | ) |
| _____ | ) |

**WHITTAKER, CLARK AND DANIELS BRIEF IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and Local Rules 7.1,

7.2, 7.3 and Rule 56.1(a), Defendant, Whittaker, Clark and Daniels ("WCD"), submits this

Brief in Support of its Motion for Summary Judgment.

1

# I. INTRODUCTORY STATEMENT

Plaintiff, Lloyd Bell, Individually and as Executor of the Estate of Betty Whitley Bell ("Plaintiff"), filed this wrongful death action alleging that Ms. Betty Whitley Bell ("Ms. Bell") contracted mesothelioma as a result of breathing asbestos fibers that were released from    Clubman Talcum Powder ("Clubman").  Plaintiff alleges that WCD supplied talc to the manufacturer(s) of Clubman[1], and that the talc supplied by WCD contained trace amounts of respirable asbestos fibers.  WCD is entitled to summary judgment because the record is devoid of any evidence that WCD supplied asbestos-containing talc that was incorporated into Clubman Ms. Bell used.  Additionally, the record is devoid of evidence that Ms. Bell's use of Clubman was a substantial contributing cause of her injury and death.

# II. PROCEDURAL HISTORY

On February 8, 2017, Betty Whitley Bell and Lloyd Bell filed a complaint against six defendants.  The Complaint alleged that Ms. Bell contracted mesothelioma through her use of cosmetic talcum powder products which contained asbestos as an unintended contaminant.  The Defendants were alleged to be either the manufacturers of a cosmetic talcum powder product used by Ms. Bell or the suppliers of asbestos-containing talc used to manufacture such a product.  *See generally Complaint* [**Dkt.1**].  Plaintiffs asserted five claims: (1) Negligence; (2) Product Liability - Inadequate Design, Formulation and

---

[1] The ingredients of Clubman include 95-99% talc.

2

Manufacture; (3) Breach of Implied Warranty; (4) Willful and Wanton Conduct; and (5) Failure to Warn.[2]

On June 3, 2017 Ms. Bell passed away. Thereafter, Ms. Bell's Estate was substituted as the Plaintiff and an Amended Complaint was filed by Plaintiff on Oct. 23, 2017. *See* *generally* Amended Complaint [**Dkt.44**]. No new claims were asserted by the Amended Complaint.

## III. STATEMENT OF RELEVANT FACTS

The Amended Complaint alleges that WCD was the supplier of talc for several products allegedly used by Ms. Bell. However, Plaintiff has indicated that only Ms. Bell's use of Clubman is at issue. Accordingly, the issues before the Court are: (i) WCD's alleged role as the supplier of talc to the manufacturer(s) of Clubman used by Ms. Bell; and (ii) whether Ms. Bell's exposure to Clubman was a substantial contributing cause of her mesothelioma.

### A. Ms. Bell's Relevant Work History

Ms. Bell's discovery and *de benne esse* depositions were respectively taken on November 20, 2015 and June 22, 2016 when this case was pending in New Jersey. Attached as **Exhibit "A"** is Ms. Bell's discovery deposition ("*Nov. 20, 2015 Betty Bell Dep.*") Attached as **Exhibit "B"** is Ms. Bell's *de benne esse* deposition ("*June 22, 2016 Betty Bell Dep.*"). Attached as **Exhibit "C"** is the Social Security Administration Itemized Statement of Earnings for Ms. Bell ("*SSA Statement*").

---

[2] This case had previously been filed in New Jersey state court; Superior Court of New Jersey Law Division-Middlesex County, Docket No. MID-L-6527-15AS. That case was dismissed.

Ms. Bell was born on July 11, 1949. *June 22, 2016 Betty Bell Dep*. at 13:14-16. She started working at the age of 18 at a polyester facility in Salisbury, North Carolina in 1967 called Fiber Industries. *Id*. at 36:3-37:11. She worked at Fiber Industries for one year (1967-1968). *Id*. at 37:17-21. She returned to Fiber Industries in 1972 where she worked another year until 1973. *SSA Printout* at p. 1. During the first year (1967-1968) at Fiber Industries, Ms. Bell was a beam operator. *June 22, 2016 Bell Dep 2* at 38:1-6. When she returned to Fiber Industries in 1973, she again worked as a beam operator, and then moved to the draw-twist department *Id*. at 41:11-21.

Ms. Bell's next engagement relevant to this case involved her attendance at a hair-dressing course at Central State Beauty College that began in 1974 and lasted one year. *Nov. 20, 2015 Betty Bell Dep* at 106:16-107:3. The course was a 1500-hour course in cosmetology where she learned to "fix hair." *Id*. at 107:4-108:3. The daily routine for the cosmetology course involved half-days in the classroom and half-days training in the salon. *Id*. at 110:7-9.

After Ms. Bell completed the cosmetology course, she worked for two years (1975-1976) at a salon in Belk's Department Store called Lamarick. *Id*. at 146:14-147:19. In 1976, Ms. Bell also worked for a period at Cannon Mills, a textile mill where she remained until it became Fieldcrest Cannon in 1985. *SSA Printout* at p. 1. She remained at Fieldcrest Cannon after the name change from 1986 until 1995. *SSA Printout at* p. 3.

According to Ms. Bell, in 1976, her husband, Lloyd Bell built her a shop at their home where she opened her own hair salon called Country Curls. *Nov. 20, 2015 Betty Bell Dep*. at 198:23-199:5. According to Lloyd Bell, he converted the garage attached to the

4

Bell's house into the space for Ms. Bell to operate her salon. *Deposition of Lloyd Bell* at 43:15-44:3 (**Exhibit "D"**). The dimensions of the converted space was "probably" 10 x 15. *Id.* at 56:6-10.

Ms. Bell operated Country Curls while working full time at other jobs. *Nov. 20, 2015 Betty Bell Dep.* at 199:14-17. Ms. Bell initially suggested that she last worked at Country Curls "in the 80's". She later testified that she worked at Country Curls "part-time" until 2009. *June 22, 2016 Betty Bell Dep.* at 57:15-58:5.

During the years when Ms. Bell operated Country Curls, she worked in other positions. During this interval, she also worked part-time at Delhaze America LLC from 1989 until 1993. *SSA Printout* p. 3. She then increased her hours at Delhaze from 1994 until 1996. *SSA Printout* p. 3-4. In 1997, Ms. Bell began working full time at Philip Morris USA Inc. where she remained until 2010. *SSA Printout* p. 4.

B.    Ms. Bell's Use of Clubman Talcum Powder

According to Ms. Bell, she began using Clubman as a student at Beauty School in 1974. *June 22, 2016 Betty Bell Dep.* at 49:8-17. She claimed that, after a short haircut, she would sprinkle Clubman on her hands, put it on the client's neck and then brush it off with a horse-hair brush *Id.* at 49:18-23. She claimed that she used Clubman on men and women who got short haircuts. *Id.* at 50:7-14. She claimed that she used Clubman the same way at Lamarick and Country Curls. *Id* at 56:17-19.

C.    Clubman Talcum Powder

Clubman was originally designed for Barber Shop use on men by the ED PINAUD Company. It was designed to, reduce moisture and remove hair particles from the skin

5

following haircuts.  The fragrances were specifically formulated for men.  Over time, the ingredients of Clubman have included but are not limited to talc, zinc oxide, zinc sterate, fragrance, perfume oil, iron oxides, Ultra Marine Blue and color base.  The talc percentage ranged over time from 94% - 99%.

Clubman was originally manufactured by ED PINAUD Company.  By the 1970's it was manufactured by a company named Nestle-LeMur Company ("NLM").  In 1987, American International Industries, Inc. ("AII") acquired the assets of the NLM.  AII has been the manufacturer of Clubman since 1987.   NLM "Master Formula Sheets" for Clubman list as an ingredient, a talc product identified as "RO Talc".  **Exhibit "E".**

D.   Whittaker, Clark and Daniels ("WCD")

WCD was a distributor of minerals and pigments during the relevant time periods in this case until 2004 when it went out of business.  WCD records reflect sales of talc to both NLM and AII during the relevant time periods, although these records do not reflect that the talc sold to these companies was used in manufacturing Clubman.  Attached as **Exhibit "F"** are copies of indexes of WCD talc sales to NLM and AII.

The talc sold by WCD to NLM and AII was sourced from mines located in Italy, Montana, North Carolina, Alabama, Korea and Spain.  *Affidavit and August 10, 2020 Report of Alan M. Segrave, P.G.* at cover letter and pp. 56-65, attached as **Exhibit "G"**. Government and academic scientists have studied the geologic processes which formed the mines in the majority of these regions, and in some instances repeatedly tested the mines

6

in these regions for the presence of asbestos.    Their conclusions were either that the geological conditions which formed these mines were not conducive to the formation of asbestos minerals, or, where specifically tested, the mines were free of asbestos.  *Id*. at pp. 56-65.

E.    WCD Testing Protocol

When concerns were raised in the early 1970's about the presence of trace levels of asbestos particles in talcs used in the cosmetics industry, WCD responded by implementing a testing protocol to ensure that the talc it sold to its customers was not tainted with asbestos.  WCD subcontracted testing of its talc to independent laboratories.  *Id*. at pp. 22-23.    Results of the independent testing of talc sold to NLM and AII reflect that of 486 lots tested, 5 contained particles suspected to be asbestos. *Id*. p. 22.  There is no evidence that any of these 5 lots were sold to NLM or AII.    In fact, WCD corporate representative Theodore Hubbard has testified that if a talc lot was suspected to contain asbestos, it was not sold to a cosmetic product manufacturer. *Id*. at p. 23.

F.    Plaintiff's Container of Clubman – "Bell Container"

When this lawsuit was originally filed, Plaintiff was in possession of a single 11 oz. tin container of Clubman ("*Bell Container*") which Ms. Bell used at Country Curls.  *Nov. 20, 2015 Betty Bell Dep*.  at 389:6-11.  Ms. Bell described the container as a "white and green tin with a man on it."  *June 22, 2016 Betty Bell Dep*.  at 58:19-23.  According to Ms. Bell, the *Bell Container* is the last container of Clubman she used *Id*. at 58:19-59:19.  Based upon the *Bell Container's* material, color and label information, the *Bell Container* was manufactured by NLM. *See Declaration of Charles Loveless, Executive VP at AII*, attached

7

as **Exhibit "H"**[3]. The *Bell Container* had been stored in a Country Curls cabinet until 2015 when Ms. Bell retrieved it and gave it to her lawyers. *June 22, 2016 Betty Bell Dep* at 59:25-61:7. Ms. Bell could not recall when she purchased the *Bell Container*. *Id*. at 59:20-22. When asked if the *Bell Container* could have been purchased before 1987, Ms. Bell said she was not sure. *Nov. 20, 2015 Betty Bell Dep*. at 393:3-13.

Ms. Bell was specifically asked if any Clubman containers she used ever changed from a tin material to a plastic material container and she indicated that "all [she] had was the tin". *Id*. at 387:6-13. Further, Ms. Bell indicated that she never recalls the packaging every changing. *June 22, 2016 Betty Bell Dep*. at 55:1-13.

G.  Ms. Bell's Other Talcum Powder Exposure
Ms. Bell used Cashmere Bouquet Baby Powder, Johnson & Johnson Baby Powder and Este Lauder bath powder throughout her life. Plaintiff alleges that Ms. Bell was exposed to asbestos from her personal use of these products.

H.  Exposure To Products Formulated To Contain Asbestos

Plaintiff filed a Worker's Compensation claim with the North Carolina Industrial Commission on April 25, 2019 for Ms. Bell's injury and death. That claim was filed against Hoeschst Celanese (f/k/a Fiber Industries), Pillowtex Corporation (f/k/a Fieldcrest Cannon, f/k/a Cannon Mills) and Philip Morris USA, Inc. Attached as **Exhibit "I".** In that claim, Plaintiff asserted that Ms. Bell was exposed to the hazards of asbestos-containing products while employed at those locations, consequently sustained an occupational disease, and died June 3, 2017. Exposures to asbestos at these locations would have come from

---

[3] The Charles Loveless Declaration is also being submitted by AII in support of its motion for summary judgment.

products which were formulated to contain high percentages of asbestos and known to be dangerous to humans, including building materials such as amosite pipe-covering insulation, equipment used to operate the plants as well as insulation material on such equipment.

## IV.    QUESTIONS PRESENTED

1. Can the Plaintiff present evidence that Ms. Bell was exposed to asbestos from her use of Clubman that contained talc supplied by WCD such that WCD's talc could be viewed as a substantial contributing factor in causing Ms. Bell's mesothelioma?

**No**.  In the light most favorable to the plaintiff, there is no evidence Ms. Bell was actually exposed to Clubman that contained talc supplied by WCD.  Furthermore, WCD talc could cannot be viewed as a substantial contributing cause of Ms. Bell's mesothelioma.

## V.    CHOICE OF LAW

Federal jurisdiction in this case is based on diversity of citizenship under 28 U.S.C. § 1332.  *Amended Complaint*, ¶ 3.  United States District Courts, sitting in diversity, apply the choice of law rules of the forum state.  *See Hitachi Credit America Corp. v. Signet Bank,* 166 F.3d 614, 623-24 (4th Cir. 1999); *see also Erie F.R. Co. v. Tompkins,* 304 U.S. 64, 58 S. Ct. 817, 82 L. Ed. 1188 (1938); *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941).  In North Carolina, courts traditionally apply the rule of *lex loci delicti* to tort claims.  *See Harco National Ins. Co. v. Grant Thornton, LLP*, 206 N.C. App. 687, 690, 698 S.E.2d 719, 722-23 (2010); *Boudreau v. Baughman*,

322 N.C. 331, 335, 368 S.E.2d 849, 853-54 (1988). "For actions sounding in tort, the state where the injury occurred is considered the situs of the claim." *Id*. at 335, 368 S.E.2d at 854.

Here, the last event necessary to make any defendant liable to Plaintiff is Ms. Bell's diagnosis, which indisputably occurred in North Carolina. Therefore, this Court should apply North Carolina substantive law in deciding the instant Motion for Summary Judgment. *Erie R.R. Co. v. Tompkins*, 304 U.S. 64 (1938); *Guaranty Trust Co. v. York*, 326 U.S. 99, 108 (1945).

## VI.  ARGUMENT

### A.  General Summary Judgment Standard

Rule 56(a) of the Federal Rules of Civil Procedure provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "Summary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (citation, internal quotation marks omitted). The "purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (citation, internal quotation marks omitted).

"The moving party 'bears the initial responsibility of informing the district court of the basis for its motion' and 'demonstrating the absence of a genuine issue of material fact.'" *Young v. Prince George's County*, 355 F.3d 751, 754 (4th Cir. 2004) (*quoting Celotex*, 477 U.S. at 323 (1986)). Once that burden has been met, "the burden shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" *Id.* In opposing a summary judgment motion, "the nonmoving party must rely on more than conclusory allegations, mere speculation, the building of one inference upon another, or the mere existence of a scintilla of evidence." *Sandlands C&D LLC v. Horry County*, 737 F.3d 45, 54 (4th Cir. 2013).

B.     Summary Judgment Standard In An Asbestos Case

North Carolina law imposes a substantial factor requirement for establishing proximate causation, and does not permit the imposition of liability based on the mere possibility of causation. In order to prove that the defendant's conduct was the proximate cause of the plaintiff's injury, a plaintiff must show that the defendant's negligence was a "substantial factor" in causing "the particular injuries for which plaintiff seeks recovery." *Monroe v. Rex Hospital, Inc.*, 844 S.E.2d 43, 46 (N.C. Ct. App. 2020) (citing *Lee*, 251 N.C. at 433-34, 111 S.E.2d at 626-27). The Fourth Circuit developed a test in *Lohrmann v. Pittsburgh-Corning Corp.*, 782 F.2d 1156 (4th Cir. 1986) ("*Lohmann* test") to determine whether such causation was probable, rather than a mere possibility, rejecting the argument that a jury question has been established when there is evidence of a company's asbestos-containing product at the plaintiff's workplace. In rejecting that argument, *Lohrmann* concluded that a plaintiff in an asbestos case must present evidence of exposure to a specific

11

product on a regular basis over some extended period of time in proximity to where the plaintiff actually worked such that the defendant's product was a substantial contributing factor in causing the claimant's injuries. *Id.* The Fourth Circuit has consistently held that the *Lohrmann* test accurately reflects North Carolina law on substantial causation in asbestos related disease cases. *Jones v. Owens-Corning Fiberglass Corp.*, 69 F.3d 712 (4th Cir. 1995). <u>*See also,*</u> *Dorothy Smith vs Schlagle Lock Company, LLC* __ F.3d __, 2021 WL 261990 (4th Cir. 2021)[4]. The Fourth Circuit has also reaffirmed that the *Lohrmann test* applies in cases of mesothelioma. *Pace v. Air & Liquid Systems. Corp.*, 642 Fed. Appx. 244, 248-49 (4th Cir. Mar. 30, 2016).

Federal District Courts in North Carolina have likewise applied the *Lohrmann test* in asbestos cases, and has consistently required plaintiffs in those cases to prove more than a casual or minimum contact with an asbestos-containing product. *Yates v. Air & Liquid Systems Corp.*, 2014 WL 348301, *4 (E.D.N.C. August 7, 2014, J. Flanagan) (*citing Jones v. Owens-Corning Fiberglas Corp.*, 69 F.3d 712, 716 (4th Cir. 1995). This Court has routinely applied *Lohrmann* to evaluate proximate cause in asbestos cases arising under North Carolina law. *Logan v. Air Products and Chemicals, Inc.*, case no. 1:12-cv-1353, 2014 WL 5808916 at *2 (M.D.N.C. Nov. 7, 2014) (J. Eagles) (citations omitted).

According to *Lohrmann* "the mere proof that the plaintiff and a certain asbestos product are at the [jobsite] at the same time, without more, does not prove exposure to that product." *Lohrmann*, 782 F.2d at 1162; *see also Lindstrom v. AC Products Liability. Trust*,

---

[4] Pursuant to Local Rule 7.2 any and all cited unpublished opinions are contemporaneously furnished to the Court and attached hereto as **Exhibit "J"**.

12

264 F.Supp. 2d 583, 587 (N.D. Ohio 2003) (a mere showing that a defendant's product was present at a claimant's place of work is insufficient to survive summary judgment). A Plaintiff's evidence must demonstrate that he was <u>actually exposed</u> to the alleged offending product. *Wilder v. Amatex Corp.*, 336 S.E.2d 66, 68 (N.C. 1985); <u>*see also*</u> *Jones v. Owens-Corning Fiberglass Corp.*, 69 F.3d 712, 716 (4th Cir. 1985) (finding that under North Carolina law, a "plaintiff in a personal injury asbestos case must prove more than casual or minimal contact with the product containing asbestos").

The United States District Court for the Western District of North Carolina cited both *Jones* and *Lohrmann* where it noted that an asbestos claimant must (1) identify an asbestos-containing product for which the defendant is responsible, (2) prove that he has suffered damages, and (3) prove that the defendant's asbestos-containing product was a substantial factor in causing his damages." *Agner v. Daniel Int'l Corp.*, 2007 WL 57769, *4 (W.D.N.C. Jan. 5, 2007) (quoting *Lindstrom*, 264 F.Supp.2d 583, 587 (N.D. Ohio 2003)).

C.  <u>Application of Law</u>

1.  <u>*No Evidence that talc distributed by WCD was present in Clubman used by Ms. Bell*</u>

There is no evidence in this case that Ms. Bell came in contact with a product for which WCD bears responsibility. NLM was the manufacturer of Clubman until 1987. There is no evidence that WCD was the only supplier of talc to NLM. In fact, the NLM Master Formula Sheets (**Ex. E**) call for the use of "RO Talc." RO Talc is not a WCD product and not a product sold by WCD to NLM. *See* **Ex. F.**

13

Additionally, there is no evidence that talc WCD sold to NLM was used to manufacture Clubman. Evidence of WCD sales of talc to NLM does not establish, without more, that NLM utilized WCD's talc to manufacture Clubman. Without evidence that WCD was the exclusive supplier of talc to NLM, and without conclusive evidence that talc WCD sold to NLM was incorporated into Clubman, plaintiff cannot establish that Ms. Bell was exposed to WCD talc.

Even after 1987, the Clubman used by Ms. Bell was manufactured by NLM. According to Ms. Bell, the containers of Clubman she used were "rectangular, a can, a tin [and were] white and green with a man on it." *June 22, 2016 Betty Bell Dep.* at 55:1-5. That is the same description she gave for the "last container of Clubman that [she] used at Country Curls" - a "white and green tin with a man on it." *Id*. at 58:19-23. She does not recall the "packaging ever changing". *Id*. at 55:11-13. And she never used a Clubman container being constructed of plastic because "all [she] had was the tin". *Nov. 20, 2015 Betty Bell Dep*. at 387:6-13. Finally, Ms. Bell could not say if the last Clubman container she purchased, the *Bell Container*, was purchased before or after 1987. *June 22, 2016 Betty Bell Dep* at 59:20-22. Based on Ms. Bell's description of all Clubman containers she used, as well as photographs of the *Bell Container,* all of the Clubman Ms. Bell used would have been manufactured by NLM. *See* **Ex. H.**

It would be pure speculation to conclude that Ms. Bell was exposed to WCD talc. There is no evidence that WCD was an exclusive supplier of talc to NLM. Furthermore, there is no evidence that talc WCD sold to NLM was incorporated into Clubman. Without

this evidence, plaintiff cannot prove that Ms. Bell used Clubman containing talc supplied by WCD.

A plaintiff's most fundamental burden in an asbestos case is to prove *actual* exposure to the defendant's allegedly offending product. *Logan*, 2014 WL 5808916, *2 (M.D.N.C. December 11, 2018, J. Eagles) (citing *Wilder v. Amatex*, 314 N.C. 550, 553-54, 336 S.E.2d 66, 68 (1985) (emphasis added). In this case, the allegedly offending product is talc contaminated with asbestos distributed or sold by WCD. However, there is no evidence that the Clubman utilized by Ms. Bell incorporated any talc emanating from WCD. Without evidence of this key nexus, plaintiff cannot establish that Ms. Bell was actually exposed to any WCD talc. Any suggestion otherwise would be pure speculation. *See Wilder* (NC Sup. Ct., 1985); *Agner* (M.D.N.C., 2007); *Jones* (4th Cir. 1985); and *Dorothy Smith vs Schlagle Lock Company, LLC* __ F.3d __, 2021 WL 261990 (4th Cir. 2021). Stated differently, Plaintiff cannot prove a fundamental element of his claim. On this basis alone, WCD is entitled to summary judgment.

2. *No evidence that Clubman or WCD talc was a substantial contributing factor in causing Ms. Bell's mesothelioma*

In a typical asbestos case involving exposures to building material products or equipment and machinery, a plaintiff can often satisfy the burden of establishing proximate cause by proving exposures which involved visible dust from an asbestos-containing product on a regular, frequent and proximate basis. This is so because it is undisputed that the products manufactured or supplied by defendants formulated their products to contain significant amounts of asbestos.

15

This case is quite different, and Plaintiff cannot meet his burden by simply establishing that Ms. Bell used Clubman. Here, it is undisputed that Clubman was *not* formulated to contain asbestos. Thus, Plaintiff's efforts to establish WCD's liability is the end-result of inference-stacking. First, Plaintiff avers that some talc mines that were the source of the talc ("source mines") used in Clubman contained trace amounts of naturally occurring asbestos. Second, Plaintiff submits that when the talc was culled from those source mines, some of the asbestos fibers from the source mines were unintentionally included in WCD talc. Third, that the asbestos-contaminated talc from WCD was sold to NLM. Fourth, that the asbestos-contaminated talc sold by WCD to NLM was incorporated into the Clubman utilized by Ms. Bell.

Upon indulging in the Plaintiff's inferences, it becomes clear that WCD is entitled to summary judgment. Plaintiff must establish that the Clubman Ms. Bell actually used was contaminated with asbestos and then prove that Ms. Bell's use of Clubman was a substantial contributing cause of her mesothelioma.

The only container of Clubman used by Ms. Bell which is part of the evidence in this case is the *Bell Container*. That container has been tested for the presence of asbestos by both Plaintiff and Defense experts, and there is a dispute between these experts as to whether the Bell container contains asbestos. What is undisputed is that no other container used by Ms. Bell is part of the record evidence, and no other container she used was available for testing. Accordingly, it was not possible for the parties to analyze any other container of Clubman Ms. Bell used for the presence of asbestos. This is significant for a number of reasons.

First, without proof that *every* container of Clubman Ms. Bell used contained asbestos, Ms. Bell's use of untested containers cannot be considered evidence of her asbestos exposure. Asbestos does not appear uniformly in talc. It therefore follows that asbestos does not appear uniformly in products manufactured with talc. *See generally*, *Hanson v. Colgate Palmolive Company*, 2018 WL 4686438 (S.D.GA., 2018) citing *Slaughter v. S. Talc Co*., 949 F3d 167 (5th Cir. 1991). There is no evidence that any Clubman containers Ms. Bell might have used prior to her purchase of the *Bell Container* was contaminated with asbestos. Accordingly, these other containers cannot be considered in analyzing whether WCD talc was a proximate cause in causing Ms. Bell's mesothelioma. In order to establish causation in an asbestos case under NC law, a plaintiff must prove an actual exposure to asbestos. *See Wilder* (NC Sup. Ct., 1985); *Agner* (M.D.N.C., 2007); *Jones* (4th Cir. 1985); and *Dorothy Smith vs Schlagle Lock Company, LLC* __ F.3d __, 2021 WL 261990 (4th Cir. 2021).

Without evidence that the other Clubman containers Ms. Bell used contained asbestos, plaintiff cannot establish exposure to asbestos through Ms. Bell's use of those containers. *See Lindstrom v. A-C Prod. Liab. Trust*, 424 F.3d 488,497-98 (6th Cir. 2005) (affirming no triable issue of fact where defendant "manufactured asbestos-containing as well as non-asbestos-containing products" and plaintiff's witness could not confirm whether any material made by the defendant and handled by the plaintiff contained asbestos).

In addition, Sean Fitzgerald, plaintiff's expert geologist and microscopist, has examined  containers of Clubman in the past for the presence of asbestos and did not find

17

it. Mr. Fitzgerald has analyzed several containers of Clubman in which he did not detect the presence of asbestos. *Sept. 18, 2020 Sean Fitzgerald Dep*. at 49:17–50:22 and 65:14–71:8 (**Exhibit "K"**). Based upon evidence from plaintiff's own expert, every container of Clubman tested has not evidenced the presence of asbestos. This further negates the notion that "every" Clubman container contains asbestos.

Plaintiff bears the burden of establishing the presence of asbestos in *all* Clubman used by Ms. Bell in order to claim that exposures to *all* Clubman Ms. Bell used caused her mesothelioma. As such, containers of Clubman Ms. Bell used which are not available for testing, which includes every container except the *Bell Container,* cannot be considered an "actual exposure to asbestos" and, may not be considered in analyzing whether Ms. Bell's mesothelioma was caused by her use and/or exposure to Clubman. Proof that the *Bell Container* may have been contaminated with asbestos does not create a jury issue as regards the potential asbestos content of the other Clubman containers Ms. Bell used. See generally *Slaughter v. S. Talc Co.* 949 F.2d 167 (5th Cir. 1991).

In considering whether Ms. Bell's use of Clubman from the *Bell Container* was a substantial contributing cause of Ms. Bell's mesothelioma, the volume of the Clubman product removed from that container is noteworthy. On Sept. 28, 2020, experts for both parties jointly participated in a protocol to examine the weight of the remaining contents of the Clubman product in the *Bell Container*. This analysis was documented by plaintiff expert Steven Compton. According to Mr. Compton, 5.43 ounces of Clubman remained in the *Bell Container* on September 28, 2020 from an initial quantity of 11 ounces. Accordingly, 5.57 ounces of the Clubman product has been removed from the *Bell*

18

*Container. Jan. 29, 2020 Deposition of Steven Compton* at 228:2–229:16; 231:18-22 and exhibit 10 to that deposition (**Exhibit "L"**). Of the 5.57 ounces of Clubman removed from the *Bell Container*, a significant quantity was removed by the experts in this case for analysis. Nevertheless, in the light most favorable to the plaintiff, **if** it is assumed that Ms. Bell used the entirety of the 5.57 ounces of Clubman removed from the *Bell Container*, and it is further assumed that the talc contained in the *Bell Container* was supplied by WCD, plaintiff must establish that this 5.57 ounces of Clubman was a substantial contributing cause of Ms. Bell's mesothelioma.

For claims involving toxic exposure, causation involves an analysis of general causation and specific causation. General causation looks at whether a substance is capable of causing a particular injury or condition in the general population, while specific causation asks whether a substance caused a particular individual's injury. This motion is premised upon the notion that the substance involved is asbestos and that the court will analyze causation from the perspective that the medical community recognizes asbestos as harmful and capable of causing mesothelioma. It is noteworthy, however, that there is no such accepted recognition in the medical community regarding a correlation between cosmetic talcum powder products and mesothelioma. To the contrary, epidemiology studies that analyzed several decades of data on thousands of miners and millers of raw talc have found no correlation between exposures to raw talc and mesothelioma. There are no epidemiology studies which show a correlation between cosmetic talc or talcum powder products and mesothelioma.

Since the cause of mesothelioma is beyond the common knowledge of laypersons, plaintiff has the burden to prove general and specific causation through expert testimony. *See Holley v ACTS, Inc.*, 357 N.C. 228,232, 581 S.E. 2d 750,753 (2003). Plaintiff relies on the opinions of Theresa S. Emory, M.D. to establish that Ms. Bell's use of Clubman was a substantial contributing cause of Ms. Bell's mesothelioma. Dr. Emory's report is attached as **Exhibit "M".** The essence of Dr. Emory's opinion is that the cumulative effect of all of Ms. Bell's asbestos exposures above background levels caused her mesothelioma. This type of opinion has become a familiar refrain to many courts that have analyzed this and similar opinions under *Lohrmann* and concluded that a plaintiff cannot meet his or her burden under *Lohrmann* by simply showing that general asbestos exposure cumulatively caused his or her disease. *See, e.g. Schwartz v. Honeywell International, Inc.*, 153 Ohio St.3d 175 181 102 N.3d 447,482 (2018) (collecting cases from across jurisdictions).

*Lohrmann* is a product-specific test which asks whether the evidence would permit a reasonable jury to conclude that a specific manufacturer's product was a substantial cause of the plaintiff's disease. *J.A. 1847*; *Lohrmann,* 782 F.2d at 1162-63. Dr. Emory's opinions are not product specific and are insufficient to establish causation under *Lohrmann*.

Dr. Emory's causation opinion is expressed on pages 49-50 of her report as follows:

> [I]t is the total dose of respirable asbestos that a mesothelioma victim breathes which is the cause of the disease. …[E]ach exposure to respirable asbestos–containing dust from the use of asbestos–containing products clearly above background levels ... has been shown to contribute to the dose of asbestos fibers that causes ... mesothelioma.

* * *

20

> ...I have concluded that Ms. Bell's occupational and para occupational exposure to asbestos dust and fibers from her use of Cashmere Bouquet Body Powder, Clubman talcum powder Estee Lauder Body Powder and Johnson & Johnson Baby Powder was repetitive, routine, and regular.
>
> <div align="center">* * *</div>
>
> I conclude … that Ms. Bell's mesothelioma was caused by the cumulative effect of all of the asbestos exposures that he [*sic*] received as a cosmetologist and from her household exposures. The exposures as described above are high, prolonged, and repetitive, and they are thousands of times higher than background levels. In my opinion, … this cumulative exposure is sufficient to have caused this mesothelioma.

Dr. Emory's "cumulative exposure" theory has been likened to the "every exposure" theory. A defendant's liability cannot be based on an "every exposure" theory of causation, which, for the reasons discussed below, is contrary to the substantial factor requirement. *See, e.g. Krik v Exxon Mobil Corporation,* 870 F.3d 669, 675 (7th Cir. 2017) (rejecting the cumulative exposure theory of causation because it is effectively the same as an each and every exposure theory); *Martin v Cincinnati Gas and Elec. Co.*, 561 F3d. 439, 443 (6th Cir. 2009) (rejecting the "any exposure" test as contrary to the principles of substantial factor causation).

Courts from jurisdictions across the country have rejected the "cumulative exposure" theory as unreliable. *See, e.g. Krik*, 870 F.3d at 675. To the extent the cumulative exposure theory is a variation of the "any exposure" theory, such evidence is also unreliable and inadmissible. *See, e.g. Yates v Ford Motor Co*., 115 F.Supp.3d 841, 847 (E.D.N.C. 2015); Mark Behrens & William Anderson, *The "Any Exposure" Theory:*

*An Unsound Basis for Asbestos Causation and Expert Testimony*, 37 SW. U. L. REV. 479, 480 (2008).

Dr. Emory's opinion is the result of the absence of evidence regarding Ms. Bell's actual levels of exposure to asbestos from the use of Clubman. In order to prove that an injury was caused by a specific product, a plaintiff must prove two critical factors – the levels or dose of the substance that is hazardous, and the plaintiff's actual exposure levels from the product. *Yates v. Ford Motor Co.,* 113 F. Supp. 3rd 841, 850 (E.D.N.C. 2015) citing *Westberry v. Gislaved Gumni AB,* 178 F. 3rd 257, 263 (4th Cir 1999). In this case, there is no evidence of the actual levels of asbestos Ms. Bell was exposed to through her use of Clubman. Nor is there evidence of the levels of asbestos to which Ms. Bell was exposed through the use to 5.57 ounces of Clubman from the *Bell Container*. Accordingly, there is no evidence in this case as to Ms. Bell's levels of exposure to asbestos as a result of the presence of WCD talc in the Clubman she used.

The record is devoid of exposure assessments, calculations or estimates of the actual levels of asbestos Ms. Bell was exposed to through the use of Clubman. Plaintiff's expert Sean Fitzgerald performed what he termed "Releasability Studies" on the *Bell Container*; however, he conceded that there was "no assessment of her exposure level per application or overall exposures*." Jan. 28,2020 Sean Fitzgerald Dep*. at 755:1-756:19 (**Exhibit "N"**). According to Mr. Fitzgerald, he did not construct a lifetime dose or dose per use. *Id*. at 759:13-760:1. According to Dr. Emory, her opinions are not based on any calculations of asbestos exposure or dose. *Oct. 1, 2020 Theresa Emory Dep*. at 92:3-93:4 (**Exhibit "O"**). Without such calculations, assessments or estimates, there is no evidence in this case from

which to evaluate Ms. Bell's level of asbestos exposure from her use of Clubman against the levels of exposure to asbestos that are hazardous in general. Accordingly, plaintiff cannot meet his burden of establishing that Clubman, and hence WCD's talc, was a substantial contributing factor in causing Ms. Bell's mesothelioma.

## VII. CONCLUSION

Based upon the arguments presented and authorities cited, WCD is entitled to summary judgment as a matter of law.

Date: February 5, 2021

<div style="margin-left:40%">

/s/Tracy E. Tomlin
Tracy E. Tomlin
NC Bar No.:  26267
Attorney for Whittaker, Clark & Daniels, Inc.
Nelson Mullins Riley & Scarborough, LLP
301 South College Street, 23rd Floor
Charlotte, NC  28202
(704) 417-3239  Direct Dial
(704) 417-3227  Dedicated Facsimile
tracy.tomlin@nelsonmullins.com

</div>

## WORD COUNT CERTIFICATION

Pursuant to Local Rule 7.3(d)(1), I hereby certify that the foregoing brief is less than 6,250 words (excluding caption and certificates of counsel) as reported by the word processing software.

This the 5th day of February, 2021.

/s/Tracy E. Tomlin
NC Bar No.:  26267
Nelson Mullins Riley & Scarborough LLP
301 South College Street, 23rd Floor
Charlotte, NC  28202
(704) 417-3000  Main
(704) 417-3227  Dedicated Facsimile
tracy.tomlin@nelsonmullins.com

Attorney for Whittaker Clark & Daniels, Inc.

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on February 5, 2021 I electronically filed the foregoing with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following:

- **DAVID N. ALLEN**
  david.allen@nelsonmullins.com,tina.santiago@nelsonmullins.com,bobbie.kull man@nelsonmullins.com,ben.chesson@nelsonmullins.com
- **J. DENNIS BAILEY**
  dbailey@waldrepwall.com,amcmahan@waldrepwall.com
- **MICHAEL ALAN BROWN**
  mike.brown@nelsonmullins.com,KATHY.MILLER@NELSONMULLINS.COM
- **BENJAMIN S. CHESSON**
  ben.chesson@nelsonmullins.com,tina.santiago@nelsonmullins.com,maria.penu ela@nelsonmullins.com,amy.hill@nelsonmullins.com,ariel.roberson@nelsonm ullins.com
- **RICHARD A. COUGHLIN**
  rcoughlin@foxrothschild.com,tshaw@foxrothschild.com,kcrouch@foxrothschi ld.com
- **JAMES M. DEDMAN , IV**
  jdedman@gwblawfirm.com,jspurling@gwblawfirm.com
- **STEPHANIE G. FLYNN**
  sgflynn@foxrothschild.com
- **SAMUEL GARCIA**
  sam.garcia@lathropgpm.com,taylor.hamilton@lathropgpm.com,tanya.smith@l athropgpm.com
- **WILLIAM MARC GRAHAM**
  bgraham@wallacegraham.com,athompson@wallacegraham.com
- **KURT W. GREVE**
  kurt.greve@lathropgpm.com,taylor.hamilton@lathropgpm.com,tanya.smith@l athropgpm.com
- **PATRICK F. HOFER**
  patrick.hofer@clydeco.us
- **LEAH C. KAGAN**
  lkagan@sgptrial.com
- **NILOFAR KARBASSI**
  nilofar.karbassi@lathropgpm.com
- **JOHN H. LAWRENCE**
  john.lawrence@klgates.com,courtney.ritter@klgates.com

- **JOSHUA S. LICHTENSTEIN**
  jsl@oslaw.com
- **MICHAEL J. MADDERRA**
  mmadderra@bbllaw.com,epowell@bbllaw.com
- **JOSEPH J. MANDIA**
  jmandia@sgptrial.com
- **KEVIN C. MCCAFFREY**
  Kevin.McCaffrey@clydeco.us
- **LANITA S. MORGAN**
  lanita.morgan@lathropgpm.com,taylor.hamilton@lathropgpm.com,tanya.smith
  @lathropgpm.com
- **PETER M. MULARCZYK**
  pmularczyk@foleymansfield.com
- **ERIKA L. MUSE**
  emuse@foleymansfield.com
- **ALVINA M. OELHAFEN**
  allie.oelhafen@alston.com,tami.obrien@alston.com
- **KEVIN W. PAUL**
  kpaul@dobslegal.com,spepin@dobslegal.com
- **TIMOTHY PECK**
  tpeck@foxrothschild.com,hhgrant@foxrothschild.com
- **STEVEN G. PINE**
  Steve.Pine@klgates.com,courtney.ritter@klgates.com
- **ERIC PRZYBYSZ**
  eprzybysz@sgpblaw.com,chill@sgpblaw.com
- **SCOTT JEFFREY RICHMAN**
  scott.richman@nelsonmullins.com,tracy.stanforth@nelsonmullins.com
- **MATTHEW R. SCHROLL**
  matt.schroll@nelsonmullins.com
- **WILLIAM MICHAEL STARR**
  bill.starr@nelsonmullins.com,kathy.southworth@nelsonmullins.com
- **ERIC A. SWAN**
  eric.swan@lathropgpm.com
- **ROBERT E. THACKSTON**
  robert.thackston@lathropgpm.com,sam.garcia@lathropgpm.com,tanya.smith@
  lathropgpm.com,julia.gowin@lathropgpm.com
- **TRACY E. TOMLIN**
  tracy.tomlin@nelsonmullins.com,jill.tucker@nelsonmullins.com,christine.gree
  ne@nelsonmullins.com
- **MORGAN W. TOVEY**
  morgantovey@quinnemanuel.com

- **FRANK J. WATHEN**
  fwathen@sgptrial.com,chill@sgpblaw.com,jmuirhead@sgptrial.com
- **ASHLEE A. WEBSTER**
  awebster@wallbabcock.com,amcmahan@wallbabcock.com

- **Manual Notice List**

```
PETER E. MASAITIS
ALSTON & BIRD LLP
333 SOUTH HOPE STREET
16TH FLOOR
LOS ANGELES, CA 90071-3004
```

/s/Tracy E. Tomlin
NC Bar No.:  26267
Nelson Mullins Riley & Scarborough LLP
301 South College Street, 23rd Floor
Charlotte, NC  28202
(704) 417-3000  Main
(704) 417-3227  Dedicated Facsimile
tracy.tomlin@nelsonmullins.com

Attorney for Whittaker Clark & Daniels, Inc.