IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF NORTH CAROLINA
Greensboro Division

| | | |
|---|---|---|
| Lloyd Bell, individually and as Executor of the Estate of Betty Whitley Bell, Deceased, | § § § § § | |
| Plaintiff, | § § | |
| v. | § § | No. 1:17-cv-111-WO-JEP |
| American International Industries, Inc., et al., | § § § | |
| Defendants. | § § | |

**DEFENDANT AMERICAN INTERNATIONAL INDUSTRIES' OPPOSITION
TO NON-PARTY NORTHWELL HEALTH INC.'S MOTION TO SEAL
ITS OBJECTIONS TO AND APPEAL FROM
THE MAGISTRATE JUDGE'S FEBRUARY 25, 2021 ORDER**

Northwell Health, Inc. ("Northwell") moves to seal its Objections and Appeal to shield its employee, Dr. Moline--who is also Plaintiff's retained causation expert--from being confronted about false representations she has repeatedly made about the facts in a "study" she and another of Plaintiff's experts, Dr. Gordon, published in 2020.

Moline represented that her article, *Mesothelioma Associated with the Use of Cosmetic Talc,"* proves that exposure to cosmetic talcum powder (allegedly contaminated

with trace asbestos) can cause mesothelioma. The fundamental premise of her conclusion is that, in all 33 litigation cases she reviewed, the *only possible source of asbestos exposure* was cosmetic talc.

We know this is false because Mrs. Bell (deceased wife of Plaintiff Lloyd Bell) was one of the 33 plaintiffs included in Moline's article. Mrs. Bell filed two workers' compensation claims alleging occupational exposure to asbestos during her time at Fiber Industries/Celanese and Cannon Mills. Despite knowledge of this, Moline has repeatedly and publicly represented that none of the 33 plaintiffs in her article had other exposures to asbestos-- including to the media, the medical community, this Court, and even Congress.

Northwell moves to seal its Objections and Appeal out of an alleged concern for research subjects' confidentiality. But, Northwell's Objections and Appeal is subject to the common law right of access. Northwell has not, and cannot, overcome the presumption against sealing because Defendant American International Industries' ("AII") interests in setting the record straight and confronting Moline about her

misrepresentations far outweigh any interest in preventing disclosure of Mrs. Bell's identity as one of the 33 subjects. For this reason, and those more fully explained below, the Court should deny Northwell's Motion to Seal.[1]

**ARGUMENT**

Northwell has not made a showing sufficient to overcome the common law presumption of access necessary to seal its Objections and Appeal. Courts in this country recognize a general right "to inspect and copy public records and documents, including judicial records and documents." *BASF Agro B.V. v. Makhteshim Agan of N.A., Inc.*, 1:10CV276, 2013 WL 12178583, at *1 (M.D.N.C. Sept. 30, 2013) (J. Osteen) (citation omitted). Under common law, if a court document constitutes a "judicial record," the right of public access is presumed. *Id.* at *1. Documents that are filed with the court are "judicial records" if they "play a role in the adjudicative process, or adjudicate substantive rights." *Id.* The central question is: were the "documents [] filed in

---

[1] Concurrent with this Opposition, AII files its Opposition to Northwell's Rule 72(a) Objections to and Appeal from the Magistrate Judge's February 25, 2021, Order, and Motion to Vacate the Prior Orders to Seal. In that brief, AII sets forth, in detail, its arguments in opposition to the Magistrate's temporary orders sealing evidence of Mrs. Bell's inclusion in Moline's article. AII incorporates those arguments as if fully set forth herein.

3

connection with either a dispositive or non-dispositive motion" and "with the objective of obtaining judicial action" other than just a motion to seal. *Guessford v. Penn. Nat. Mutual Casualty INS. Co.*, No. 1:12CV260, 2014 WL 12594127 (M.D.N.C. Sept. 30, 2014) (J. Osteen).

Northwell's Objections and Appeal from Magistrate Judge Peake's denial of its motion to intervene is a judicial record because it seeks to adjudicate Northwell's right to intervene and extend the protective order in this case; specifically, to preclude AII from questioning Moline about Mrs. Bell's inclusion in her article. (ECF 318 at 2.)

Because Northwell's Objections and Appeal is a judicial record subject to the common presumption of access, Northwell bears the burden of showing that "countervailing interests heavily outweigh the public interests in access." Factors to be considered in this determination include: (1) whether the release of the records would "enhance the public's understanding of an important" event, (2) whether the records "are sought for improper purposes," and (3) whether they are already publicly available. *BASF Agro*, 2013 WL 12178583, at *1.

4

As explained below, AII's interest in correcting the public record and confronting Moline about her misrepresentations far outweighs Northwell's professed "public interest" in concealing Mrs. Bell's inclusion in Moline's article. Additionally, all the relevant factors favor denial of Northwell's Motion to Seal. The Court should accordingly deny Northwell's Motion.

I.  **AII's Interest in Disclosing Mrs. Bell's Identity As One of Moline's "Subjects" Far Outweighs Any "Public" Interest in Keeping the Identities of Subjects Confidential When the Study Was Conducted by Plaintiffs' Experts, on Plaintiffs, Using Litigation-Generated Material Supplied by Plaintiffs' Lawyers.**

AII's interest in disclosing Northwell's Objections and Appeal (and with it Mrs. Bell's identity as one of Moline's study subjects) far outweighs Northwell's nonexistent countervailing public interest in keeping "human subject" research confidential.

   A.  **Moline has repeatedly and falsely claimed that none of the 33 plaintiffs were exposed to other sources of asbestos when we know Mrs. Bell is one of the 33 and she filed workers' compensation claims for occupational exposure to asbestos.**

Moline is a long-time causation expert for asbestos plaintiffs' lawyers. At the time she published her article, she was Plaintiff's retained expert. (*See* ECF 274-1, Moline

5

Article at 11) ("The cases were referred to author J.M. for medicolegal evaluation as part of tort litigation…").)

Moline claims that her article is the "the first large case series to identify cosmetic talcum powder contaminated with asbestos as the cause of malignant mesothelioma in cosmetic talc users." (*See* ECF 274-1, Moline Article at 14.) The fundamental premise of the article is that the 33 plaintiffs "had no known exposure to asbestos other than prolonged use of talcum powder." (*Id*. at 14.) Her article was based on 33 plaintiffs with filed personal injury lawsuits, the information for which was provided by plaintiffs' lawyers to their experts, Drs. Moline and Gordon, for the purpose of supporting plaintiffs' litigation position. (*Id*. at 11.)

We know the article's premise is false because Mrs. Bell was one of the 33 subjects.[2] Under threat of criminal penalty, Mrs. Bell and her husband filed two workers' compensation cases--one of which is currently pending before the North Carolina Industrial Commission--alleging that Mrs. Bell's exposure to asbestos at her full-time industrial jobs caused her mesothelioma. (ECF 322-2, Worker's Comp. Form (rec'd Sep.

---

[2] Although we previously suspected that was the case, Northwell produced evidence proving it to be true.

8, 2015) at 3; ECF 322-5, Worker's Comp. Form (signed Apr. 25, 2019) at 3-4.)

Moline knew this premise was false by at least 2016 when she wrote an expert report in this case representing to have reviewed Mrs. Bell's worker's compensation claim. (ECF 188-8, Expert Report of Dr. Moline in *Bell* (5/5/16) at 3.) Nevertheless, Moline has repeated her false claim--that none of the 33 plaintiffs in her study had alternative exposures to asbestos--to the media, Congress, and, as recently as December 2020, to this Court. (*See* AII's Opp. to Northwell's Objs. and Appeal (laying out all the false statements); ECF 265-1, Moline Affidavit at ¶8 (signed Dec. 18, 2020); Exh. K,[3] Moline Written Testimony at 2; ECF 187-5, Moline Oral Testimony at 8 (discussing Mrs. Bell under the pseudonym "Ms. D."); Exh. L, Time Magazine Article at 4.)

    **B.**    **AII has a substantial interest in disclosure of this fact so it can confront Moline, and Plaintiff's other experts, and correct the public record.**

Moline has repeatedly and very publicly claimed her study proves cosmetic talcum powder causes mesothelioma. She and

---

[3] All references to Exhibits in this Opposition refer to the *Declaration of Robert E. Thackston in Support of AII's Opposition to Non-Party Northwell Health, Inc.'s Objections and Appeal from the Magistrate Judge's February 25, 2021 Order, and Motion to Unseal Evidence*, and documents attached thereto. (Filed Mar. 25, 2021).

7

Plaintiff's other experts rely on her article to support their litigation opinions in this case, and there is little doubt they will continue to do so in other cases. (ECF 276-6, Emory Article at 485 & n.9; Exhs. M-O, Plaintiff's Experts' Reliance Lists.) Without the ability to disclose Mrs. Bell as one of the 33 plaintiffs in Moline's study, AII will be unable to correct the public record or conduct critical and important cross-examination of Moline and other experts to rebut the claims made in the article.

**C. Northwell's Alleged Interest in Keeping This Information Confidential Is Minimal.**

Northwell frames its interest as a public one--to protect the "confidentiality" of "research subjects" so as not to dissuade people from engaging in research. (*See* ECF 320 at 2.) Whatever interest the "public" might have in keeping confidential the identities of human subjects who participate in research studies is severely reduced, if not completely eliminated, when (i) those "subjects" are plaintiffs in civil litigation, (ii) the "researcher" is their expert witness, and (iii) the information is from litigation files forwarded to the expert by plaintiffs' lawyers. (ECF 274-1, Moline

Article at 11) ("Exposure data was obtained from sworn testimony by the cases…").

In other words, this is no ordinary study conducted by a non-party scientist on non-party volunteers for the sole purpose of advancing human knowledge. *See Andrews v. Eli Lilly & Co., Inc.*, 97 F.R.D. 494 (N.D. Ill. 1983), *vacated sub nom. Deitchman v. E.R. Squibb & Sons, Inc.*, 740 F.2d 556 (7th Cir. 1984) ("Insofar as Squibb's subpoena requested records relating to plaintiffs and their mothers, however, the court ordered Dr. Herbst to disclose any records or other information which pertained solely to them because, in their cases, the need for confidentiality was lost when this litigation began.")[4] Hence, whatever "public" interest might exist for keeping human subject information confidential generally is significantly reduced if not eliminated here.

---

[4] *See also Doe v. Am. Red Cross Blood Servs., S.C. Region*, 125 F.R.D. 646 (D.S.C. 1989)(refusing to compel non-party Red Cross to unmask a donor whose blood turned out to be HIV-infected because he was not a party to the litigation); *Lampshire v. Procter & Gamble Co.*, 94 F.R.D. 58 (N.D. Ga. 1982)(granting discovery into the CDC's study on tampons and toxic shock but requiring names be redacted because many of the patients had "no connection with this lawsuit"); *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 716 (1st Cir. 1998)(court refused to require authors to produce notes and tapes from interviews of a competitors current and former employee, who were slated to be included in a book, in part because (1) the authors were non-parties, and (2) Microsoft *already had the names of all the sources in the book and could have deposed them*). Unlike the *Cusumano*, Moline is not an unrelated, non-party witness. She is Plaintiff's expert. And, unlike Microsoft, AII does not know which plaintiffs were included in Moline's article.

9

## II. All Relevant Factors Weigh Against Sealing Northwell's Motion.

All three of the enumerated factors that Courts consider in determining if a party has shown countervailing interests sufficiently heavy to outweigh the public's right of access cut in favor of not sealing Northwell's Objections and Appeal.

### A. Disclosure would enhance the public's understanding of an important issue because it would allow AII to rebut Moline's misrepresentations to the medical community, the media, the courts, and Congress.

One factor in the analysis is whether the release of the records would "enhance the public's understanding of an important" event. *BASF Agro*, 2013 WL 12178583, at *1. There are currently hundreds of pending talc lawsuits across the country. This question of whether talcum powder causes mesothelioma has garnered national attention (e.g., Moline's Congressional testimony). Some talcum powder manufacturers have pulled decades-old products from the market due to rising litigation costs. Given these facts, the matter is one of public importance.

Denying Northwell's current Motion to Seal its Objections and Appeal, and the concomitant disclosure of Mrs. Bell's identity as one of the 33 plaintiffs in Moline's article,

10

will allow AII to set the record straight and enhance the public's and jurors' understandings of this important issue. Even Magistrate Judge Peake has recognized the potential risk of misleading the fact finder if AII is unable to confront Moline about Mrs. Bell. (ECF 274-8, Hr'g Tr. (9/25/20) at 68 (although the Magistrate Judge spoke only in the context of the *Bell* case, the logic applies equally in any other case where Moline's article will be used).)

> **B. It is Northwell, not AII, that is seeking to use the Court's sealing procedure for an improper purpose (i.e., misleading the public, the court, and fact finders).**

The next factor relevant to sealing is whether the party is seeking to disclose evidence for an improper purpose "such as promoting public scandals or unfairly gaining a business advantage." *BASF Agro*, 2013 WL 12178583, at *1. AII is not seeking to unseal evidence for any improper purpose. It is doing so to correct Moline's very public and repeated misrepresentations, and to protect its right to legitimate cross-examination. It is Northwell and Plaintiff's counsel who are trying to invoke the Court's sealing procedure for an improper purpose.

11

Northwell frames its interest as a need to protect "patient confidentiality," but its real goal is to shield Moline from being confronted with facts that directly contradict her public statements. Furthermore, because all the "subjects" in Moline's article are plaintiffs in litigation, whatever privacy interest they might otherwise have was substantially reduced when they filed public lawsuits and put their medical conditions at issue. The Court's power to seal, like its power not to seal, can be abused by parties. In this case, Northwell asks the Court to do the former.

**C. Evidence of Mrs. Bell's inclusion in Moline's study is already publicly available in Plaintiff's prior filing.**

The last enumerated factor courts consider in weighing whether a party has overcome the presumption of access is whether information is otherwise publicly available. *BASF Agro*, 2013 WL 12178583, at *1. Plaintiff first moved to seal evidence on September 15, 2020. (*See* ECF 180.) In the underlying brief, Plaintiff redacted portions of the motion, but he failed to redact a portion that directly identifies Mrs. Bell as a subject in Moline's paper: "I. The Court Should

12

Enter a Protective Order…and Requiring All Copies of Documents Identifying Betty Bell as a Subject Be Destroyed." (ECF 179 at 5.) That document has been publicly available for nearly six months. *See Fleetwood Transp. Corp. v. Packaging Corp. of Am.,* No. 1:10MC58, 2011 WL 6217061, at *2 (M.D.N.C. Dec. 14, 2011) (party failed to show good cause to seal a document when the underlying agreement was publicly available for months on a court ECF system).

Because of Plaintiff's own failure to redact this information, it is now publicly available. That availability favors denial of Northwell's Motion to Seal.

## CONCLUSION

AII's interest in correcting the public record and confronting Moline about her repeated misrepresentations in this and other cases far outweighs Northwell's purported "public" interest in keeping Mrs. Bell's identity as a subject in Moline's article confidential. Although public disclosure of the identity of human subjects in research may, in some circumstances, raise confidentiality and public policy concerns, there is no such interest in confidentiality when those "subjects" are plaintiffs with filed lawsuits, and the

13

researcher is their expert witness who used litigation files provided by plaintiffs' lawyers to further their litigation interests.

For these reasons, the Court should deny Northwell's Motion to Seal its Rule 72(a) Objections to and Appeal from the Magistrate Judge's February 25, 2021 Order.

This 25th day of March, 2021.

>*/s/ Robert E. Thackston*
>Robert E. Thackston, NC Bar No. 36330
>Kurt W. Greve, TX Bar No. 24007275
>LATHROP GPM, LLP
>2101 Cedar Springs Rd., Suite 1400
>Dallas, TX 75201-2134
>Telephone: (469) 983-6023
>Facsimile: (469) 983-6101
>Email: Robert.thackston@lathropgpm.com
>
>*/s/ Timothy Peck*
>Timothy Peck, NC Bar No. 9991
>Richard A. Coughlin, NC Bar No. 19894
>FOX ROTHSCHILD LLP
>230 North Elm Street, Suite 1200
>Greensboro, NC 27401
>Telephone: (336) 378-5307
>Fax: (336) 378-5400
>E-mail: tpeck@foxrothschild.com
>rcoughlin@foxrothschild.com
>
>*Counsel for American International Industries*

**CERTIFICATE OF WORD COUNT**

This brief complies with Local Rule 7.3(d)(1)'s word count limitation. The word count feature on Microsoft Word states that the word count of the counted portions of this brief is 2,565 words, within the 6,250 word limit.

/s/ Timothy Peck
Timothy Peck, NC Bar No. 9991
FOX ROTHSCHILD LLP

15

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that I electronically filed the foregoing document with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system, which will send notification of this filing and an electronic copy of same to all counsel of record registered with the CM/ECF system, and I hereby certify that I have thereby electronically served the document upon all counsel in this action registered with the CM/ECF system.

This 25th day of March, 2021.

/s/ Timothy Peck
Timothy Peck, NC Bar No. 9991
FOX ROTHSCHILD LLP