IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

LLOYD BELL, individually and        )
as Executor of the Estate of        )
Betty Whitley Bell, Deceased,       )
                                    )
       Plaintiff,                   )
                                    )
    v.                              )    1:17CV111
                                    )
AMERICAN INTERNATIONAL              )
INDUSTRIES, et al.,                 )
                                    )
       Defendants/Third-Party       )
       Plaintiff,                   )

## MEMORANDUM OPINION AND ORDER

**OSTEEN, JR., District Judge**

Presently before this court is a Motion for Summary Judgment by Defendant and Third-Party Plaintiff American International Industries Inc. ("AII" or "Defendant"). (Doc. 288.) Defendant seeks dismissal of all claims against it by Plaintiff Lloyd Bell ("Bell" or "Plaintiff"), or, in the alternative, partial summary judgment with regard to punitive damages. (Id. at 2.) Defendant claims that Plaintiff "failed to adduce evidence that Decedent Betty Bell . . . used a product (i) for which AII is legally responsible, and/or (ii) that caused any injury to or contributed to Mrs. Bell's death." (Id.) This court agrees, and therefore need not reach the issue of punitive damages.

## I. FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Hairdresser Betty Whitley Bell ("Mrs. Bell") used Clubman talcum powder for over thirty years, beginning in the 1970s, (Doc. 294-6 at 5-6)[1], and continuing through 2009, (Doc. 294-9 at 7-8). Mrs. Bell used the talcum powder while she was a student, (Doc. 294-7 at 6), during her employment at hair salons, (id. at 8), and while working at her own home hair salon. (Id.) Mrs. Bell does not allege any usage of Clubman powder outside of North Carolina. Mrs. Bell was diagnosed with mesothelioma, (Doc. 313-16 at 16), and passed away on June 3, 2017, (Doc. 39-2 at 2).

Plaintiff Bell was substituted in this action for Mrs. Bell after her passing. (Doc. 40 at 1.) Plaintiff brought a claim against AII, which purchased the Clubman brand from The Neslemur Company on August 13, 1987. (Doc. 294-3 ¶ 8.) When AII purchased the Clubman brand from Neslemur, the Asset Purchase Agreement explicitly provided that Neslemur would indemnify AII

---

[1] All citations in this Memorandum Opinion and Order to documents filed with the court refer to the page numbers located at the bottom right-hand corner of the documents as they appear on CM/ECF.

for Neslemur's pre-existing liabilities. (Purchase Agreement (Doc. 86-1) at 23.) Specifically, the Purchase Agreement states:

> [T]he Seller . . . also agrees to indemnify and hold the Purchaser harmless against any and all claims, liabilities or obligations which may arise out of or result from the use of any products or goods sold by the Seller before the Closing, and against all actions, suits, proceedings, judgments, costs and expenses connected with any of the foregoing; provided, however, that the Purchaser shall timely notify the Seller . . . of any such claim and shall permit the Seller . . . at [its] election, to negotiate and settle such claim, and shall provide such records and witnesses as may be necessary to litigate such claim.

Id. at 37.

The talcum powder container Mrs. Bell used was a one-size tin, primarily white, with a green label. (Doc. 294-6 at 9-10; Doc. 294-3 at 111-13.) The container had a white top that turned to release the powder. (Doc. 294-6 at 10-11.) According to her deposition testimony, Mrs. Bell used the same powder throughout her years as a hairdresser, as it was her preferred brand. (See Doc. 294-7 at 8-10.) Mrs. Bell did not claim to have used any differently packaged or labeled talcum powder during her career, (see id.), nor did she recall the packaging ever changing, (Doc. 294-9 at 6). The last container of talc she personally used is pictured on the record, (Doc. 294-13 at 2), and Mrs. Bell confirmed its authenticity, (Doc. 294-9 at 9-10). However, the talcum powder manufactured by AII after its purchase of Neslemur

-3-

was sold in green packaging, which looks noticeably different from that belonging to Mrs. Bell. (Doc. 294-3 at 96-99; 104-06; 110-13.) Moreover, two years after AII purchased the brand, it began selling the talc in a plastic – rather than tin - container. (Id. ¶ 20.) Plaintiff does not contest that "[a]t no time while AII has owned the Clubman and Pinaud brands has it sold Clubman Talc in a white metal container." (Id. ¶ 21.) Given these facts, Plaintiff "limits his claims against AII to successor liability claims for products manufactured by Neslemur prior to the 1987 acquisition." (Pl's Br. in Opp'n. to Am. Int'l Indus.' Mot. for Summ. J. ("Pl.'s Resp.") (Doc. 313) at 8.)

### B. Procedural Background

Plaintiff filed his Complaint against AII on February 8, 2017, for claims related to its manufacture and distribution of Clubman talcum powder, seeking damages. (Doc. 1.) He filed an amended complaint on October 23, 2017. (Doc. 44.) Approximately two years later, on September 11, 2019, AII moved for leave to file a Third-Party Complaint against Neslemur, (Doc. 81), which was granted, (Doc. 85). In its complaint, AII sought "a judgment indemnifying AII for any settlement or compromise . . . and for any judgment or award rendered against AII in [the suit with Mr. Bell]," as well as "a judicial declaration that AII is . . . entitled to indemnity[.]" (Doc. 86 at 12.)

Neslemur is a newly-reactivated Delaware company with no headquarters or offices in North Carolina. (See Doc. 313-14 at 18.) Neslemur moved to dismiss or strike AII's Third-Party Complaint on December 12, 2019. (Doc. 97.) This court denied Neslemur's motion to dismiss AII's third-party complaint on November 6, 2020. (Doc. 223.) However, on March 10, 2021, this court dismissed all claims by AII against Neslemur in this action, based on a Delaware court's preliminary injunction requiring that all claims involving Neslemur be brought in that court. (Doc. 315 at 2.)

Defendant brought this Motion for Summary Judgment, (Doc. 288), on February 5, 2021, to dismiss all claims brought against it by Plaintiff. Plaintiff responded on March 8, 2021. (Doc. 313.) Defendant replied on March 22, 2021. (Doc. 324.)

## II. ANALYSIS

Plaintiff's claim against AII relies on the assumption that AII is liable as a corporate successor to Neslemur. (Pl.'s Resp. (Doc. 313) at 8.) In other words, rather than asserting that AII itself manufactured the product that allegedly harmed Mrs. Bell, Plaintiff argues that AII should be held responsible for the product manufactured by Neslemur. (Id.) AII argues that summary judgment is appropriate because it is not a corporate successor

-5-

to Neslemur as a matter of law, and Plaintiff therefore has no viable claim against it. (Doc. 294 at 19, 23-29.)

## A. <u>Applicable State Law</u>

The parties primarily disagree over whether North Carolina or California law should govern the successor liability analysis. Plaintiff argues that California law applies due to the internal affairs doctrine, (Pl.'s Resp. (Doc. 313) at 12-13), while Defendant maintains that North Carolina substantive law should be applied, (Doc. 324 at 3-5). Neither party disputes that "[f]ederal courts sitting in diversity cases in North Carolina are to apply the North Carolina choice of law rules[.]" <u>Stokes v. Wilson & Redding L. Firm</u>, 72 N.C. App. 107, 112, 323 S.E.2d 470, 475 (1984); see also <u>Klaxon Co. v. Stentor Elec. Mfg. Co.</u>, 313 U.S. 487, 496 (1941).

North Carolina choice of law rules use the internal affairs doctrine, which dictates that "only one State should have the authority to regulate a corporation's internal affairs - matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders . . . ." <u>Bluebird Corp. v. Aubin</u>, 188 N.C. App. 671, 680, 657 S.E.2d 55, 63 (2008). Plaintiff argues that, because California law governs the internal operations of AII, California law should be applied in this instance as well. (Pl.'s Resp. (Doc. 313) at 12-13.)

The internal affairs doctrine is intended to "minimize the potential for corporations to be subjected to the 'conflicting' standards of different state's laws with regard to matters of internal corporate governance and the relationships between and among shareholders, officers, and directors." In <u>Islet Scis., Inc. v. Brighthaven Ventures, LLC</u>, No. 15 CVS 1638, 2017 WL 129944 (N.C. Super. Ct. Jan. 12, 2017), the North Carolina court cited to the Restatement (Second) of Conflict of Laws as an example of what conduct falls within the purview of the internal affairs doctrine:

> [S]teps taken in the course of the original incorporation, the election or appointment of directors and officers, the adoption of by-laws, the issuance of corporate shares, preemptive rights, the holding of directors' and shareholders' meetings, methods of voting including any requirement for cumulative voting, shareholders' rights to examine corporate records, charter and by-law amendments, mergers, consolidations and reorganizations and the reclassification of shares.

<u>Id.</u> at *4 (citing <u>Restatement (Second) of Conflict of Laws</u> § 302 cmt. a (Am. Law. Inst. 1988)). Here, the issue at hand surrounds an asset sale and resulting tort liability. It does not affect any "internal affairs" of the corporation – neither shareholder relationships nor corporate governance are implicated. See <u>First Nat'l City Bank v. Banco Para El Comercio Exterior de Cuba</u>, 462 U.S. 611, 621 (1983) ("[T]he law of the state of incorporation

-7-

normally determines issues relating to the <u>internal</u> affairs of a corporation . . . [but] [d]ifferent conflicts principles apply . . . where the rights of third parties <u>external</u> to the corporation are at issue."); <u>Roselink Invs., L.L.C. v. Shenkman</u>, 386 F. Supp. 2d 209, 225 (S.D.N.Y. 2004) (finding that tort claims "not brought by shareholders, officers or directors . . . [or] brought derivatively on behalf of the corporation" are not subject to the internal affairs doctrine). Thus, under North Carolina choice of law rules, the incorporation state is not relevant to the applicable state law in this instance.

Setting aside the internal affairs doctrine, which does not apply here, North Carolina choice of law rules dictate that the law of either the forum or the situs of the claim should apply.

> [M]atters affecting the substantial rights of the parties are determined by lex loci, the law of the situs of the claim, and remedial or procedural rights are determined by lex fori, the law of the forum. For actions sounding in tort, the state where the injury occurred is considered the situs of the claim.

<u>Boudreau v. Baughman</u>, 322 N.C. 331, 335, 368 S.E.2d 849, 853–54 (1988). North Carolina is both the state where Plaintiff's injury occurred and the forum in which this case has been brought, and this court shall apply North Carolina law.

-8-

**B. <u>Successor Liability Analysis</u>**

Plaintiff argues that AII is a legal successor to Neslemur, and therefore should be held responsible for any alleged harm done by Neslemur products. (Pl.'s Resp. (Doc. 313) at 8.) "Under the general successor liability rule, a corporation which purchases all or substantially all of the assets of another corporation is not liable for the transferor's liabilities." <u>Joyce Farms, LLC v. Van Vooren Holdings, Inc.</u>, 232 N.C. App. 591, 596, 756 S.E.2d 355, 359 (2014) (internal citations omitted). Under North Carolina law, there are only four exceptions to this rule against successor liability:

> (1) where there is an express or implied agreement by the purchasing corporation to assume the debt or liability; (2) where the transfer amounts to a <u>de facto</u> merger of the two corporations; (3) where the transfer of assets was done for the purpose of defrauding the corporation's creditors; or (4) where the purchasing corporation is a mere continuation of the selling corporation in that the purchasing corporation has some of the same shareholders, directors, and officers.

<u>G.P. Publ'ns, Inc. v. Quebecor Printing-St. Paul, Inc.</u>, 125 N.C. App. 424, 433, 481 S.E.2d 674, 679 (1997) (internal quotations omitted). As North Carolina has not recognized the product line exception available in California, it does not apply in this case.

As to the first exception: the parties expressly agreed in the Purchase Agreement <u>not</u> to transfer debt and liability. (Purchase Agreement (Doc. 86-1) at 23.) Regarding the third exception, no evidence of fraudulent intent is presented. At issue are the second and fourth exceptions: whether there was a de facto merger of the corporations or whether AII was a mere continuation of Neslemur. Absent one of these circumstances, AII is not a legal successor to Neslemur and is not responsible for Neslemur's potential liabilities in this case.

Though the de facto merger doctrine has never been applied in North Carolina court, it has been acknowledged by courts in this state. See, e.g., <u>Lattimore & Assocs., LLC v. Steaksauce, Inc.</u>, No. 10 CVS 14744, 2012 WL 1925729, at *11 (N.C. Super. Ct. May 25, 2012). Application of the de facto merger exception requires a variety of factors only partially alleged in this case, including continued management between the two corporations, continuity of shareholders with stock as consideration for the purchase, and the immediate dissolution of the seller. <u>Id.</u>; see also <u>Acme Boot Co. v. Tony Lama Interstate Retail Stores, Inc.</u>, Nos. 90-2621, 90-2630, 90-2637, 1991 WL 39457 (4th Cir. Mar. 26, 1991) (per curiam). Plaintiff points to an affidavit from Daniel Dror, the former chairman of Neslemur, in a prior case, which stated that "Neslemur ceased conducting

-10-

operations on the date of the asset purchase agreement" and "had no additional income from that point forward." (Doc. 313-5 ¶ 6.) In Lattimore, the plaintiff similarly argued that "by purchasing substantially all of [the prior company's] assets, the . . . Defendants reduced [it] to a worthless shell that ceased all operations." Lattimore, 2012 WL 1925729, at *9. However, this alone was not – and is still not, in this case, even if Plaintiff's allegations were accepted as true - sufficient to create a de facto merger. The other factors were not satisfied in Lattimore: there was no evidence of an exchange of shares or continuity of ownership. Id. None of these other factors have even been alleged in the matter at hand, and this court will therefore not apply the de facto merger doctrine.

More commonly applied in North Carolina courts is the "mere continuation" exception. A purchaser may be a legal successor if it is a "mere continuation" of the seller. For this analysis, North Carolina courts primarily look to "continuity of stockholders and directors between the selling and purchasing corporation." G.P. Publ'ns, 125 N.C. App. at 481 S.E.2d at 680. In this case, there is no continuity between the selling and purchasing corporations. None of the same directors or board members were present in the purchasing corporation. (Doc. 291-4 ¶ 11.) Neslemur continued to exist, though on a dramatically

-11-

Case 1:17-cv-00111-WO-JEP   Document 361   Filed 07/30/21   Page 11 of 13

smaller scale, after the sale – notably, it later sold its remaining assets after the AII sale for $3.8 million. (Doc. 325-1 at 4.) Where there is no continuity of directors, two separate corporations continue to exist, and the purchase was made in good faith, North Carolina law does not deem the purchaser a mere continuation of the seller. <u>Atwell v. DJO, Inc.</u>, 803 F. Supp. 2d 369, 373 (E.D.N.C. 2011).

Given that AII did not effectively merge with Neslemur, nor is AII a mere continuation of Neslemur, Defendant is not a legal successor to Neslemur under North Carolina law. AII therefore cannot be found liable for products manufactured by Neslemur. Plaintiff only brings claims via successor liability, and since none can be found by law, Plaintiff's claims against AII will be dismissed.

### III. <u>CONCLUSION</u>

For the reasons set forth above,

**IT IS HEREBY ORDERED** that AII's Motion for Summary Judgment, (Doc. 288), is **GRANTED.**

**IT IS FURTHER ORDERED** that AII's Motion to Admit Plaintiff's Workers' Compensation Claims and Supporting Documentation as Statements Against an Opposing Party, (Doc. 321), is **DENIED AS MOOT.**

-12-

This the 30th day of July, 2021.

 _____
 United States District Judge