# IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
## GREENSBORO DIVISION

| | | |
|---|---|---|
| **Lloyd Bell, individually and as Executor of the Estate of Betty Whitney Bell, Deceased,** | § § § § | |
| **Plaintiff,** | § § | **Case No. 1:17-cv-111-WO-JEP** |
| **v.** | § § § | |
| **American International Industries, Inc., et al.,** | § § § | |
| **Defendants.** | § § | |

## DEFENDANT AMERICAN INTERNATIONAL INDUSTRIES' REPLY IN SUPPORT OF MOTION TO VACATE THE PRELIMINARY PROTECTIVE ORDER OF SEPTEMBER 25, 2020

When an expert witness uses her litigation reliance materials to write an article that she can then rely on for her court opinions, she cannot conceal those litigation reliance materials by calling them "academic medical research." Neither can her employer, Northwell Health, Inc. ('Northwell"), particularly because it willingly produced the document identifying Ms. Bell as a subject of the Moline "study." Northwell only asked for a medical records release, which was produced because Ms. Bell put her medical condition at issue by filing this lawsuit. Northwell did not: (i) raise confidentiality concerns, (ii) object based on the IRB process, (iii) object to protect "academic medical

research," or (iv) move for a protective order. Northwell reversed its position only after the Court rejected efforts by Plaintiff's counsel to conceal whether Ms. Bell was a subject of the Moline article. Northwell's reversal was three months after it produced the document identifying Ms. Bell [ECF 309] and after Plaintiff's counsel threatened to report Northwell's attorney to the New York bar if he did not comply with Plaintiff's demands:

> We will be filing a motion for a protective order and sanctions against Mr. Thackston in the Bell matter. I am also considering reporting your violation to the New York bar as this is a staggering breach. You had no right to produce any information regarding my client based on the misuse of a HIPAA authorization provided to you not by my client and without any notice to my client while a motion to quash was pending. I am just flabbergasted by your reckless conduct.

[ECF 197, AII's Opposition to Plaintiff's Emergency Motion for Protective Order and Sanctions; See also ECF 182-5, Email from Leah Kagan, Esq. to Thomas J. Kroczynski, Esq. on September 12, 2020, attached as Exhibit E to Plaintiff's motion.

Moline claims to have published a landmark study showing causation between mesothelioma and cosmetic talc. Her claims are based on her review of litigation materials sent to her by plaintiffs' lawyers who hired her in civil lawsuits. She refuses to identify the cases, not because she used personal medical information, but because the litigation files contain information that flatly contradict her claims of the only possible asbestos exposure being from cosmetic talc. This case is a stark example as Ms. Bell twice filed workers'

compensation claims alleging occupational exposure to asbestos at a textile facility. [ECF 188-9 and 188-10]. Plaintiff and Northwell seek the aid of this Court in trying to mislead readers of the article by concealing the identity of the plaintiffs in the lawsuits from which Moline got her information. This is not a legitimate medical study. It is an opinion piece written to support litigation testimony.

Northwell claims that unsealing this record would "gut the confidentiality and privacy guarantees inherent in IRB-related studies." [ECF 392, Northwell's Response p. 6]. But, Northwell concedes the IRB is intended to protect patients who agree to participate in human subject research who have an "understanding that a rigorous process has been undertaken to guarantee that their privacy will be protected." [ECF 392, Northwell's Response p. 12]. Ms. Bell is not a Northwell patient. Nor did she participate in a medical study. She filed a lawsuit and signed releases for her medical information. Moline relied on materials like depositions in making her subjective conclusion that there was no possible exposure to asbestos other than cosmetic talc. This is especially suspect in *Bell* because Moline knew about Ms. Bell's workers' compensation claims. Materials like deposition transcripts, obviously available to the litigation parties, do not become "medical information" just because a retained expert witness places them on

her employer's computer system. Ms. Bell (when she was alive, then representatives of her estate) willingly placed her health at issue by suing over it and executed HIPAA releases permitting the disclosure of her health-related information.

Plaintiff retained Moline to testify about medical causation. This Court ruled that, if she wanted to testify about her article, Moline had to disclose at least whether Ms. Bell was one of the subjects. [ECF 309, p. 7-8]. As this Court noted, "in a medical research study, the interest of confidentiality belongs primarily to the study participant, not the researcher or sponsoring facility." [ECF 309, p. 7]. Because Plaintiff has no privacy interest, neither does Northwell.

Northwell's Response raises no new arguments or authority to justify upholding the protective order. Northwell simply repeats the arguments this Court has already rejected. (ECF 309: "Because Plaintiff has consented, and because allowing Dr. Moline to testify as an expert for Plaintiff without disclosing or addressing Plaintiff's inclusion in the research study that is part of the basis for Dr. Moline's expert opinion risks misleading the jury, the Court would deny Northwell's motion on the merits even if the intervention were allowed."]. It is important to lift this protective order because the risk of misleading fact finders extends beyond this case. In numerous cosmetic talc

4

cases across the country, plaintiffs rely on the Moline article. They can attempt to shield inquiry by pointing to this Court's protective order. [See ECF 369, AII's Brief in Support of Motion to Vacate the Protective Order; and ECF 380, AII's Reply].

This Court's protective order was, by its terms, temporary. It is significant that Northwell does not deny, or even address, the fact that Moline continues to claim that all the cases in her "study" had no possible exposure to asbestos other than contaminated cosmetic talc (and refuses to identify the cases). In *State of Oklahoma v. Tyson Food, Inc.*, 2009 WL 1258476 (N.D. Okla. April 24, 2009), the *Tyson* court recognized that discovery is warranted in such a situation:

> "To the extent that Plaintiffs are seeking to secure the publication of articles to use at trial to support their experts' opinions--in effect to manufacture evidence supporting their case—there is nothing inherently unfair or corrupting to the peer review process in allowing Defendants an opportunity to present the journal(s)' editors with the rest of the story. Indeed, peer review seeks to understand all of the relevant scientific data, not just that portion which most supports a desired outcome. And it is hardly fair to the journal(s) in question to prevent them from learning the full context in this work they are asked to publish was prepared.
> *Id.* at *6.

In addition to repeating her claim in nationwide litigation, Moline testified to Congress about her article, even using the Bell case as an example (although not identifying the case by name). [ECF 197]. Further, in February

2021, while being interviewed by the ADAO[1], Moline was asked to talk about her study and what the interviewer claimed would be the risk to Americans if a ban on cosmetic talc is not implemented. Moline repeated that cosmetic talc was the only source of asbestos exposure in the 33 plaintiffs in her study. (ADAO. (2021, February 21). ADAO Conversation with Dr. Jacqueline Moline & Robert Sussman Discuss Asbestos, Talc and Prevention [Video]. YouTube. https://www.youtube.com/watch?v=PUiFlYuajjQ). (Minute 16:55-24:52). Moline's article has implications beyond litigation and has the potential to impact public policy, science, and medicine. Moline should not be permitted to mislead the public.

The Court should thus vacate the preliminary protective order for the reasons as stated herein and in AII's Motion to Vacate the Protective Order [ECF 369], Reply in Support [ECF 380], AII's Opposition to Plaintiff's Motion to Quash AII's Subpoena to Northwell (ECF 188) and AII's Opposition to Plaintiff's Emergency Motion for Protective Order and Sanctions (ECF 197), which AII incorporates herein by reference.

---

[1] Asbestos Disease Awareness Organization.

Case 1:17-cv-00111-WO-JEP   Document 394   Filed 07/11/22   Page 6 of 9

Respectfully submitted this 11th day of July, 2022.

/s/ Robert E. Thackston
Robert E. Thackston, NC Bar No. 36330
Kurt W. Greve, TX Bar No. 24007275
LATHROP GPM, LLP
2101 Cedar Springs Rd., Suite 1400
Dallas, TX 75201-2134
Telephone: (469) 983-6023
Facsimile: (469) 983-6101
Email: Robert.thackston@lathropgpm.com
Kurt.greve@lathropgpm.com

/s/ Timothy Peck
Timothy Peck, NC Bar No. 9991
Richard A. Coughlin, NC Bar No. 19894
FOX ROTHSCHILD LLP
230 North Elm Street, Suite 1200
Greensboro, NC 27401
Telephone: (336) 378-5307
Fax: (336) 378-5400
E-mail: tpeck@foxrothschild.com
rcoughlin@foxrothschild.com

*Counsel for Defendant American International Industries*

## CERTIFICATE OF WORD COUNT

This reply brief complies with Local Rule 7.3(d)(1)'s word count limitation. The word count feature on Microsoft Word states that the word count of the counted portions of this reply brief is 1,285 words, within the 3,125 word limit.

*/s/ Timothy Peck*
Timothy Peck, NC Bar No. 9991
FOX ROTHSCHILD LLP

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that I electronically filed the foregoing document with the Clerk of the United States District Court for the Middle District of North Carolina using the CM/ECF system, which will send notification of this filing and an electronic copy of same to all counsel of record registered with the CM/ECF system, and I hereby certify that I have thereby electronically served the document upon all counsel in this action registered with the CM/ECF system.

This 11th day of July, 2022.

*/s/ Timothy Peck*
Timothy Peck, NC Bar No. 9991
FOX ROTHSCHILD LLP